# United States District Court
## EASTERN DISTRICT OF MISSOURI

GREGORY MCKENNA,

      Plaintiff

      Vs.

THE ST. LOUIS COUNTY POLICE DEPARTMENT,

OFFICERS CHARLES BOSCHERT, KENNETH       Case No. _____

WILLIAMS, UNKNOWN AGENTS OF THE

FEDERAL BUREAU OF INVESTIGATION,

MARK KAPPELHOFF, APPLE INC., A-1

PRIVATE INVESTIGATIONS, TIMOTHY

BONINE, D'ANGELO AUTOMOTIVE,

      Defendants

---

      I, Gregory McKenna, the undersigned complainant state the following is true and correct

to the best of my knowledge and belief. On or about August 15, 2000 and continuing to the

present day, in the Eastern District of Missouri and elsewhere, the Defendants did, (Track Statutory

Language of Offense) conspire to aid, abet, and neglect the stalking, extortion, and torture of

Plaintiff, Gregory McKenna, by members of the Italian Mafia and deprive him of his

Constitutional rights and liberties in violation of Title 42 United States Code 1983, 1985, 1986,

1988, and others. I further state that this complaint is based on the following facts:

(See Attached Complaint).

# United States District Court
# EASTERN DISTRICT OF MISSOURI

GREGORY MCKENNA,

    Plaintiff

    Vs.

THE ST. LOUIS COUNTY POLICE DEPARTMENT,
OFFICERS CHARLES BOSCHERT, KENNETH
WILLIAMS, 8 UNKNOWN AGENTS OF THE
FEDERAL BUREAU OF INVESTIGATION,    **JURY DEMANDED**
MARK KAPPELHOFF, APPLE INC., A-1
PRIVATE INVESTIGATIONS, TIMOTHY
BONINE, D'ANGELO AUTOMOTIVE,

    Defendants

---

## COMPLAINT FOR COMPENSATORY, STATUTORY, AND PUNITIVE DAMAGES,

## CIVIL PENALTIES, RESTITUTION, INJUNCTION, AND OTHER COURT ORDERS

COMES NOW, Plaintiff Gregory McKenna, who makes the following Complaint and for

its cause of action states:

(1) Pro se Plaintiff Gregory McKenna brings this action pursuant to the United State's

statutory, common law, and equitable authority for the purpose of obtaining recovery for

damages, restitution, civil penalties, punitive damages, injunction and other equitable relief

against Defendants, the ST. LOUIS COUNTY POLICE DEPARTMENT (STLPD), officers

CHARLES BOSCHERT (BOSCHERT), KENNETH WILLIAMS (WILLIAMS), UNKNOWN

FBI AGENTS, the United States Department of Justice section chief, MARK KAPPELHOFF (KAPPELHOFF), APPLE INC., A-1 PRIVATE INVESTIGATIONS, TIMOTHY BONINE (BONINE), and D'ANGELO AUTOMOTIVE (D'ANGELO) for their unlawful actions in connection with, among others, conspiring and acting in concert to suppress Plaintiff's Constitutionally protected rights and liberties in furtherance of an Italian Mafia stalking, extortion, and torture conspiracy designed against him.

## SUMMARY OF FACTS

(2) The action arose in St. Louis, Missouri at Plaintiff's 812 Elksforth Court, Florissant, Missouri 63031 residence on or around August 15, 2000 at 7:55 am, the morning after three members of the alleged Italian Mafia proceeded to threaten to murder Plaintiff at a nightclub called Velvet located in St. Louis, Missouri. The alleged motive for the threats was to extort Plaintiff as a fashion model working for a modeling agency in New York City called Bossmodels. After receiving the threats, Plaintiff proceeded to call Defendant the STLPD to file a complaint the following morning.

(3) When Plaintiff returned to St. Louis after interviewing with new modeling agencies in New York City, on or around Saturday, September 9, 2000 at 10:45 am, the three Mafia members arrived at Plaintiff's residence and proceeded to make extortion threatens. The Mafia members stated, "We're going to kill you if you don't model for us in New York." In response,

2

Plaintiff proceeded to call Defendant the STLPD via emergency 911 for assistance. Despite being held at gunpoint and receiving threats of imminent death from the Mafia members, the STLPD officers wrongfully refused to arrest the perpetrators and left the scene of the crime. As a direct and proximate result of Defendant the STLPD's malicious neglect, the 3 male Mafia members were allowed to stalk, make extortion threats, attempt rape, and kidnap Plaintiff.

(4) At approximately 1:45 pm on Sunday, September 10, 2000, the Mafia members returned to Plaintiff's residence and attempted to break and enter his residence. The members proceeded to make extortion threats in an attempt to coerce Plaintiff to comply with their demand for him to continue working as a model. Although Defendant the STLPD were again called via emergency 911, the STLPD operator refused to dispatch an officer.

(5) As a direct and proximate result of the STLPD's malicious neglect, at approximately 1:50 pm on Sunday, September 10, 2000, Plaintiff and his parents, George and Sandra McKenna, proceeded to call the FBI field office located in St. Louis, Missouri for emergency assistance. When the FBI was contacted, Defendant UNKNOWN FBI AGENT proceeded to wrongfully state to Plaintiff and his parents that the Mafia stalking, extortion threats, rape attempts, and kidnapping were an STLPD issue. As a direct and proximate result of Defendant UNKNOWN FBI AGENT's intentional neglect, the Mafia members at Plaintiff's residence were allowed to stalk, threaten, attempt rape, and kidnap Plaintiff.

3

(6) From September of 2000 to the present, Plaintiff made over 53 complaints with

Defendants the STLPD and FBI for the Mafia stalking, extortion, and torture\* that continued as a

result of their malicious neglect. Despite Plaintiff claiming that he was a witness to several rapes

committed by the Mafia, victims and witnesses were threatened to remain quiet, and that he was

being stalked, extorted, and tortured, Defendants the STLPD and FBI willfully and knowingly

allowed the crimes to continue so as to violate Plaintiff's rights. As a direct and proximate result

of Defendants' malicious neglect, Plaintiff has suffered and continues to suffer discomfort, sleep

deprivation, anxiety, invasion of privacy, public humiliation, stalking, extortion, torture,

destruction of career standing, post traumatic stress disorder, and severe emotional distress.

(7) From 2000 to the present, Defendants relied on false pretenses to reject Plaintiff's

complaint despite probable cause based on Plaintiff's testimony and clear and convincing

evidence of crimes being committed. In accord with normal practice and procedures, hearsay

evidence is sufficient to establish probable cause to arrest because it is not offered for its truth,

\*Concurrent with 18 USC 2340 and other statutes, the term "torture" as defined in this Complaint means an act committed by a person specifically intended to inflict severe physical or mental pain or suffering upon another person; whereas "severe mental pain or suffering" means the prolonged mental harm caused by or resulting from, (A) the intentional infliction or threatened infliction of severe physical pain or suffering, (B) the administration or application, or threatened application, of mind-altering substances or other procedures calculated to disrupt profoundly the senses or the personality, (C) the threat of imminent death, or (D) the threat that another person will imminently be subjected to death, severe physical pain or suffering, or the administration or application of mind-altering substances or other procedures calculated to disrupt profoundly the senses or personality.

4

but to explain the basis for a belief that probable cause to arrest existed. State v. Holt, 695 S.W.2d 474, 478 (Mo. App. 1985). Concurrently, Plaintiff's allegations of the Mafia stalking, extortion, and torture were sufficient to establish lawful grounds for the STLPD and FBI to investigate and make arrests. As a direct and proximate result of Defendants' willful decision to reject Plaintiff's complaint despite probable cause, Defendants the STLPD and Unknown FBI Agents wrongfully persisted in their pattern of malicious neglect so as to intentionally aid and abet the Mafia stalking, extortion, torture, and deprive Plaintiff of his Constitutional rights.

(8) The primary means by which Plaintiff alleged to Defendants that he continues to be stalked, extorted, and tortured is through illegal communication devices planted in his home, vehicle, residence, workplace, church, and other places that he publicly frequents. According to RSMo 542.402(2) and 18 USC 2511 (1)(b)(ii) and (4)(a), any person who intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication when such device transmits communications by radio, or interferes with the transmission of such communication, shall be fined or imprisoned not more than five years, or both. Accordingly, the use of illegal communication devices is a felony offense in the State of Missouri and United States.

(9) On June 1, 2006, Plaintiff proceeded to hire a private investigation company, Defendants A-1 PRIVATE INVESTIGATIONS and private investigator TIMOTHY BONINE,

5

to conduct a bug sweep of his St. Louis residence and 1995 Toyota Camry. Plaintiff alleged to Defendant BONINE that he was receiving harassing noise from illegal communication devices planted in his 1995 Toyota Camry and areas of his residence.

(10) During the bug sweep, Defendant BONINE's bug detector proceeded to detect illegal communication devices in areas where Plaintiff stated he was being tortured, particularly in his bedroom, living room, upstairs bathroom, and Toyota Camry. Defendant BONINE proceeded to instruct Plaintiff to inform the STLPD of his bug sweep results.

(11) On June 2, 2006, Defendant BONINE wrote a report to Plaintiff that stated his bug detector verified the existence of radio frequencies indicative to illegal communication devices. Plaintiff proceeded to proffer BONINE's report to the head of the STLPD Intelligence Unit, Defendant BOSCHERT, on or around August of 2005 for a showing of probable cause for an investigation.

(12) When Defendant BONINE was contacted by Defendant BOSCHERT, BONINE proceeded to wrongfully state that Plaintiff's residence and vehicle were not bugged with illegal communication devices. BONINE's malicious statements were made in contravention to his bug sweep results and probable cause. Effectively, Defendant BONINE intentionally prevented the STLPD from proceeding further with an investigation. As a direct and proximate result, the Mafia was allowed to continue stalking, extorting, and torturing Plaintiff.

6

(13) Despite Defendant BONINE's malicious statements, Plaintiff remained in contact with the STLPD to proffer evidence of the continued Mafia stalking, extortion, and torture. As Plaintiff collected additional evidence of bug sweeps, recordings of Mafia harassment, and other evidence, the Mafia crimes continued.

(14) On January of 2007, Plaintiff brought his 1998 Audi A4 Quattro to a mechanic, Defendant D'ANGELO, located in Florissant, Missouri for a diagnosis of a loud noise persisting in the rear passenger side of his vehicle. Defendant D'ANGELO inspected the noise and diagnosed Plaintiff's car as having a loose wheel bearing on the rear passenger side. After D'ANGELO serviced Plaintiff's vehicle, on or around February 14, 2007, Plaintiff proceeded to discover that the loud noise persisting from the rear passenger side persisted despite D'ANGELO's alleged repairs.

(15) No earlier than February 14, 2007, Plaintiff proceeded to hear the loud noise persisting from the rear passenger side in vehicles that carried him **only when he was a passenger,** such as in the cars of his brother Chris in Chicago, sister Clare in Los Angeles, parents George and Sandra in St. Louis, and friend Billy Duran in St. Louis. The aforesaid vehicles were not diagnosed with having a loose wheel bearing at the time they carried Plaintiff as a passenger so as to indicate that the noise in the cars were caused by illegal communication devices being used by the Mafia to stalk, extort, and torture Plaintiff.

7

(16) On or around March of 2007, Plaintiff proceeded to purchase a new bug detector to perform a bug sweep of his Audi, residence, and other areas prior to re-petitioning the Police for help. The bug sweep results disproved BONINE's statements and verified that Plaintiff's Audi and other cars were bugged with illegal communication devices causing the loud sound.

(17) Plaintiff discovered on or around July of 2007 after analyzing his Audi's formerly defective wheel bearing part provided by Defendant D'ANGELO that parts were added by D'ANGELO that did not belong to a 1998 Audi A4 Quattro. Accordingly, Defendant D'ANGELO fraudulently concealed its good condition so as to cover up the Mafia's use of illegal communication devices to stalk, extort, and torture Plaintiff.

(18) Defendant D'ANGELO's fraudulent concealment was done in concert with the wrongs committed by the other Defendants and the Mafia in furtherance of a conspiracy designed to perpetuate the Mafia crimes. As a direct and proximate result of Defendant D'ANGELO'S concealment, Plaintiff was prevented from proffering evidence to law enforcement authorities, the Court, and others so as to perpetuate the Mafia's use of illegal communication devices, stalking, extortion, and torture of Plaintiff.

(19) On or around February 27, 2005, Plaintiff purchased an Apple iPod Shuffle on the website, www.ebay.com, that was manufactured by Defendant APPLE INC. After listening to the iPod on or around March of 2005, Plaintiff discovered that APPLE INC. allegedly

8

manufactured it with an illegal receiver as the Mafia proceeded to transmit extortion threats and audible harassment to it.

(20) On or around April of 2006, Plaintiff opened a new iPod Mini that was purchased at the Apple Store in Santa Monica, California. After Plaintiff opened its sealed container, Plaintiff discovered that it was bugged with an illegal receiver when Mafia members proceeded to generate death threats and harassment to it on or around April of 2006.

(21) Plaintiff obtained additional evidence of Defendant APPLE INC. manufacturing, distributing and selling illegally bugged iPods and other electronic equipment when on or around January 25, 2008 Plaintiff recorded Mafia members generating death threats to his iPod Mini. The threats stated, "I'm about to kill him," in unison with a song. The recordings of death threats and other evidence prove that APPLE INC. conspired with the Mafia and other Defendants to manufacture, distribute, and sell illegally bugged iPods and other electronic equipment to Plaintiff to perpetuate the stalking, extortion, and torture.

(22) On or around March of 2009, Plaintiff proceeded to contact the United States Department of Justice (USDOJ) to complain of criminal civil rights violations committed by the STLPD, FBI, and LAPD for refusing to investigate his complaint and defend his Constitutional rights when probable cause was established so as to abet the Mafia crimes. Plaintiff's complaint included a detailed history of the STLPD, LAPD, and FBI neglect and clear and convincing

9

evidence of official misconduct causing the Mafia crimes to continue for 9 years.

Notwithstanding the blatant criminal neglect, the USDOJ Section Chief, Defendant

KAPPELHOFF, proceeded to maliciously neglect enforcement of federal criminal civil rights

statutes so as to intentionally abet the Mafia crimes. As such, Defendant KAPPELHOFF acted in

concert with the Mafia and other Defendants by violating, neglecting, and depriving Plaintiff of

his rights and allowing the Mafia crimes to continue.

(23) As a direct and proximate result of Defendants' wrongful actions and inactions,

Plaintiff charges Defendants with the following:

- (A) that each of the Defendants are jointly and severally liable for abetting the stalking,

    extortion, and torture of Plaintiff in violation of: 18 USC 2, 18 USC 4, 18 USC 241,

    18 USC 371, 18 USC 2340, 18 USC 2381, 18 USC 2382, 18 USC 2511, 42, USC

    1983, 42 USC 1985, 42 USC 1986, 42 USC 1988, and others;

- (B) that the actions and many non actions of various Defendants violated, neglected, and

    deprived Plaintiff of the right to life, liberty, privacy, property, safety, freedom from

    cruel and unusual punishment, equal protection of the laws, and other rights freely

    granted to him as a US citizen under both the Missouri and United States

    Constitutions;

- (C) that certain of Defendants' actions also injured Plaintiff under state tort law; and;

10

(D) that some or all of these wrongs flowed from a conspiracy or conspiracies among the

Defendants and others in the picture, who shared a wrongful "meeting of the minds,"

"mutual understanding," or "unlawful means" in the illicit oppressing of Plaintiff's

civil rights.

## PARTIES

(24) This action is brought forth by Plaintiff, Gregory McKenna, who is a US citizen who

now resides at 9937 Young Drive, Beverly Hills, California 90212, (310) 213-8851.

(25) The Defendant, the St. Louis County Police Department, is located in St. Louis

County and may be served with process at 7900 Forsyth Boulevard, Clayton, Missouri 63105,

(314) 889-2341.

(26) The Defendant, Charles Boschert, is located in St. Louis County and may be served

with process at 7900 Forsyth Boulevard, Clayton, Missouri 63105, (314) 615-4692.

(27) The Defendant, Kenneth Williams, is located in St. Louis County and may be served

with process at 7900 Forsyth Boulevard, Clayton, Missouri 63105, (314) 615-5340.

(28) The Defendant, Unknown Agents of the FBI, are located in the City of St. Louis

and my be served with process at the US Attorney's Office, 111 South 10th Street, #20.333, St.

Louis, Missouri 63102, (314) 539-2200.

(29) The Defendant, A-1 Private Investigations, is located in St. Louis County and may

be served with process at 8008 Carondelet Avenue, Suite 107, St. Louis, Missouri 63105, (314) 726-1717.

(30) The Defendant, Timothy Bonine, is located in St. Louis County and may be served with process at 8008 Carondelet Avenue, Suite 107, St. Louis, Missouri 63105, (314) 726-1717.

(31) The Defendant, D'Angelo Automotive, is located in St. Louis County and may be served with process at 1104 North Jefferson, Florissant, Missouri 63031, (314) 831-2200.

(32) The Defendant, Apple Incorporated, is located in Cupertino, California and may be served with process at CT Corporation, 818 West 7th Street, Suite 200 in Los Angeles, California 90017-3425, (213) 457-0596.

(33) The Defendant, Mark Kappelhoff, is located in Washington, D.C. and may be served with process at 950 Pennsylvania Avenue, N.W., Washington, D.C. 20530.

## JURISDICTION

(34) The claims hereafter arose in whole in part of St. Louis County in the Eastern District of Missouri by the wrongful acts of Defendants done in perpetuation of an Italian Mafia stalking, extortion, and torture conspiracy.

(35) The named individual Defendants herein are sued individually and in their official capacity in this Court's jurisdiction over the subject matter pursuant to, among other authorities, the Civil Rights Acts. Particularly, 42 U.S.C. 1983, 42 U.S.C. 1985, 42 U.S.C. 1986, 42 U.S.C.

12

1988, and the Judicial Code, 28 U.S.C. 1331 & 1343.

## VENUE

(36) Venue is proper in Federal District Court in the Eastern District of Missouri,

pursuant to, among other authorities, 42 U.S.C. 1983, 42 U.S.C. 1985, 42 U.S.C. 1986, 42

U.S.C. 1988, and the Judicial Code, 28 U.S.C. 1331 & 1343.

## STATEMENT OF FACTUAL ALLEGATIONS

I. Beginning of the Mafia Conspiracy: Plaintiff's First Encounter With the Italian Mafia
and Ensuing Violation of Rights By Defendants the STLPD and Unknown FBI Agents

(37) On or around March of 1999, Plaintiff was approached by a photographer named

Suzy Gorman at a nightclub called Velvet located at 1301 Washington Avenue in St. Louis,

Missouri 63103. After being persuaded by Gorman to model, Plaintiff decided to pursue

modeling opportunities in New York, New York in the fall of 1999.

(38) On or around April of 1999, Kelly Jackowski and Dan O'Brien moved into the

house across the street from Plaintiff. While Plaintiff was inside his residence on or around June

of 1999, he began hearing drilling noises in the outer facade of his residence. When Plaintiff

walked outside his residence to determine the cause of the drilling noise, he observed his

neighbor, Dan O'Brien, holding a drill bit in his hand and small ladder at the outer garage area

where the drilling noises were heard. As Plaintiff proceeded to confront O'Brien, Jackowski

13

ran outside of her house and exclaimed, "If you do what I think you're about to do, I'll shoot you myself!" Plaintiff continued hearing drilling noises on the roof and outer facade of his residence from June to August of 1999.

(39) No later than September of 1999, Plaintiff began working as a model in New York City for an agency called Bossmodels. After 7 months of working for his agency, Plaintiff discovered that Bossmodels was withholding paychecks from him and making demands for him to perform sexual favors.

(40) Bossmodels was allegedly involved in an Italian Mafia bankruptcy scandal. La Cosa Nostra ("LCN"), also known as the "Mafia" or "Our Thing," is a nationwide criminal organization that operates throughout the United States through entities known as "families." The existence of the Mafia was proven in United States v. Salerno, No. 85 Cr. 139 (S.D.N.Y.) (RO), aff*d, 868 F.2d 524 (2d Cir. 1989) (the "Commission Case"), as well as in other cases. The FBI has identified political corruption, extortion, kidnapping, fraud, infiltration of legitimate businesses, prostitution, pornography, and murder as common Mafia activities. Industry experts estimate that their worldwide criminal activity generates $120 billion annually.

(41) According to sources, a Mafia bankruptcy scandal is carried out when an individual is hired by the Mafia to open a business and establish good credit. After good credit is established, the Mafia begins stealing money by not declaring goods sold. As a result of slowed

14

turnover rates caused by the Mafia stealing money, the business declares bankruptcy for inability to generate sufficient revenue. Businesses with high turnover rates of goods sold, such as nightclubs and pubs, are ideal for bankruptcy scandals because the Mafia can acquire large amounts of money when large quantities of goods are sold and undeclared.

(42) In addition to Mafia bankruptcy scandals, media sources report that the modeling industry has an infamous "shadow Mafia" that forces models to work for pay after fraudulently putting them into excessive debt, coerces them into the illegal sex trade, and then disposes of them. In addition to Plaintiff being a witness to models being pressured into the illegal sex trade, Plaintiff was harassed and pressured by his agent, John Babin, to perform homosexual favors in exchange for work, which he declined.

(43) On or around April 7, 2000, Plaintiff informed Babin that he intended to quit his agency and return to St. Louis. In response, Babin threatened Plaintiff by stating, "We'll see about [you quitting]. I have a lot more power than you think." Approximately two days after Plaintiff told his agent he was quitting, he was informed that his cousin, Jay Sperrazza, a US Coast Guard in Florida, had his apartment ransacked. Plaintiff felt threatened but nevertheless quit working for Bossmodels in July of 2000.

(44) On or around Monday, August 14, 2000, Plaintiff was confronted by a man named Bill at the nightclub Velvet in the City of St. Louis. Bill alleged that he was a member of the

15

Italian Mafia and threatened to murder Plaintiff by stating, "We're going to kill you if you don't model for us in New York." Although the motive for Bill's threats was allegedly caused by a desire to control Plaintiff's modeling career, the threats were allegedly motivated by Bill and other Mafia members' sociopathic obsession and desire to coerce Plaintiff to perform homosexual favors in exchange for work.

(45) The morning after being threatened by Bill, Plaintiff proceeded to dial emergency 911 on August 15, 2000 at 7:55 am to complain of Bill's extortion threats to Defendant the STLPD. Although Plaintiff attempted to document the incident prior to interviewing with modeling agencies in New York, the STLPD officer neglected to file a police report.

(46) After returning to St. Louis from interviewing with modeling agencies in New York, on or around September 9, 2000 at 10:45 am, Plaintiff was again confronted by Bill at his parent's residence while at home alone. Bill held a gun and threatened to murder Plaintiff if he did not continue working as a model in New York City.

(47) Plaintiff proceeded to shut his door and dial 911 for emergency assistance from Defendant the STLPD. When an STLPD officer arrived at Plaintiff's residence after approximately 5 minutes, Plaintiff spoke with the officer and informed him that an unknown man who alleged he was in the Mafia arrived at his front door holding a gun. The dispatched officer proceeded to search the vicinity for the man but drove away from the scene in less

16

than 90 seconds without prompting Plaintiff so as to wantonly neglect Plaintiff's safety.

(48) After the STLPD officer left the scene, the man Bill proceeded to return to Plaintiff's residence approximately 5 minutes later and threatened to murder Plaintiff for refusing to work for the Mafia as a model in New York City. In response, Plaintiff proceeded to shut his door and call emergency 911. When Bill fled the scene on the second occasion, Plaintiff observed him walk across the street and enter Kelly Jackoswki and Dan O'Brien's residence.

(49) When two STLPD officers arrived at the scene on the second occasion, Plaintiff informed them that Bill was inside his neighbor's house hiding. After watching the Police officers enter his neighbors' residence for approximately 2 minutes to make sure Bill didn't run out the door to try and escape, Plaintiff witnessed the two STLPD officers leave without prompting Plaintiff so as to wantonly neglect arresting Bill and place Plaintiff in danger.

(50) Immediately after the STLPD officers left, Bill returned to Plaintiff's door on a third occasion and proceeded to make extortion threats with 2 of his Mafia counterparts. Plaintiff again dialed emergency 911 on a third occasion to complain that the dispatched officers left the scene of the crime. After a third STLPD officer arrived in 13 minutes, Plaintiff witnessed him drive around his court and leave the scene without prompting Plaintiff so as to recklessly place Plaintiff in risk of danger. As a result of Defendant the STLPD's wanton neglect of Plaintiff's

17

rights and safety, Bill was allowed to return to Plaintiff's residence to make extortion threats, attempt rape, and kidnap him.

(51) Plaintiff proceeded to call the FBI field office in St. Louis for emergency assistance and spoke with Defendant UNKNOWN FBI AGENT #1 at approximately 11:15 am. Defendant UNKNOWN AGENT #1 proceeded to unlawfully impugn Plaintiff's claim by lying and stating that the FBI could not offer help because the issue was a Police matter. When Plaintiff explained that he called the Police and they refused to help, Defendant UNKNOWN FBI AGENT #1 proceeded to hang up the phone on Plaintiff. As a direct and proximate result of Defendant the FBI's intentional neglect of Plaintiff's complaint and violating his rights, Bill was allowed to stalk, threaten, and kidnap Plaintiff.

(52) On or around September 10, 2000 at 1:45 pm, Bill returned to Plaintiff's residence with a gun to coerce Plaintiff to comply with the Mafia demands to work as a model in New York. When Bill arrived on the second day, Plaintiff and his parents, George and Sandra McKenna, proceeded to dial emergency 911 to complain that the Mafia was attempting to break, enter, and kill Plaintiff and his family. Despite the attempts to break and enter Plaintiff's residence and Plaintiff's parents crying for help, the STLPD operator proceeded to maliciously state to Plaintiff and his father that he wasn't going to dispatch an officer.

(53) Approximately 4 minutes after Defendant the STLPD unlawfully denied Plaintiff

18

and his father emergency assistance, Plaintiff's father proceeded to call Defendant the FBI to complain of the Police's intentional neglect. In response to Plaintiff's father's complaint, Defendant UNKNOWN FBI AGENT #2 proceeded to wrongfully impugn Plaintiff's father's complaint. Plaintiff's father proceeded to give the phone to Plaintiff to speak with UNKNOWN FBI AGENT #2 to witness the malicious neglect. As Plaintiff proceeded to state that the STLPD were intentionally neglecting their claim while the Mafia member was at his front door attempting to break and enter with a gun, Defendant UNKNOWN FBI AGENT #2 proceeded to act in concert with the Defendants and the Mafia by unlawfully refusing emergency assistance and unlawfully stating that the FBI did not intend to prevent the Mafia stalking and extortion attempts since the crime of Police misconduct was not a federal offense.

(54) As a result of Defendant the STLPD and FBI's intentional neglect of Plaintiff and family members' requests for emergency assistance from September 9 to 21, 2000, Bill and his fellow Mafia gang members were allowed to return to his residence to coerce him to comply with their demands. Plaintiff was repeatedly kidnapped and forced to witness several rapes of friends for refusing to model in New York City. After performing the rapes, the Mafia demanded that Plaintiff perform homosexual acts in exchange for money and good career standing.

(55) When the Mafia rape and extortion attempts ended on or around September 21, 2000, the Mafia members proceeded to state that they would continue extracting, stalking,

19

punishing, and torturing Plaintiff for refusing to comply with their demands. As a direct and proximate result of the STLPD and FBI acting in concert with each other and the Mafia, the Mafia stalking, extortion, and torture continued and continues to the present day.

## II. Conspiracy to Violate, Neglect and Deprive Plaintiff's Constitutional Rights Involving

### Defendant the STLPD and FBI From 1/01 to 8/03

(56) On or around January 23, 2001, Plaintiff contacted Defendant the FBI in St. Louis from his A.G. Edwards office to complain of the Mafia stalking and extortion threats that occurred in September and that were continuing. Plaintiff proceeded to speak with Defendant UNKNOWN FBI AGENT #3 named Mary to file his complaint. After Plaintiff disclosed that the Mafia threatened to murder and rape him in September of 2000 for refusing to work as a model in New York and that he was receiving death threats, Defendant UNKNOWN FBI AGENT #3 informed Plaintiff that she would get back to him.

(57) After 2 weeks of waiting, Plaintiff contacted the FBI on or around February 6, 2001 to check the status of his complaint. UNKNOWN FBI AGENT #4 proceeded to inform Plaintiff that no complaint was filed yet. When Plaintiff called on a third occasion on or around February 8, 2001 Plaintiff again spoke with Defendant UNKNOWN FBI AGENT #3 named Mary who proceeded to wrongfully impugn Plaintiff's claim by offering a false pretense and stating, "Issues of the Police violating your civil rights are not FBI matters. We can't help you."

20

(58) On or around March 2, 2001, the means by which the Mafia proceeded to stalk, extort, and torture Plaintiff was by using illegal communication devices in his residence, car, workplace, church, and other public venues. The illegal communication devices were allegedly installed by his neighbor, Dan O'Brien. The devices were used to allow the Mafia members to achieve a sense of relationship and control over Plaintiff's life and modeling career by communicating death threats, publicly broadcasting facts about his private life to friends and others, generating harassing noise, and sleep depriving him to the point of death. As a result, Plaintiff was prevented from pursuing work opportunities, developing relationships with others, peacfully assembling at church and other venues, having privacy in his home, and enjoying other rights and liberties afforded him by the Constitution. Plaintiff identified the harassment as originating from the 5 male and 2 female Mafia members from September of 2000.

(59) On or around May 18, 2001, Plaintiff called Defendant the STLPD via emergency 911 because of a suspicious vehicle parked outside his St. Louis County residence. The suspicious vehicle resembled the same dark purple sports utility vehicle with black tinted windows driven by the Mafia members when they arrived at Plaintiff's door in September of 2000. When Plaintiff proceeded to inform the dispatched officer that he was being stalked and receiving extortion threats by Mafia members since September of 2000, the officer proceeded to instruct him to call the STLPD if they arrived at his front door in the future and refused to file a

21

police report. In effect, the officer wrongfully neglected probable cause of the Mafia stalking, extortion, and torture based on Plaintiff's testimony and willfully allowed the crimes to continue.

(60) The Mafia proceeded to continue making extortion threats to Plaintiff for not complying with their demands. On or around April of 2001, Plaintiff attempted to find a new modeling agency in Chicago, Illinois. During his interviews at Elite Model Management and Ford Model Management, the Mafia proceeded to play malicious harassing noise from illegal communication devices during interviews so as to sabotage Plaintiff's interviews and prevent him from getting work. Despite the blatant harassment during the interviews, the modeling agents proceeded to ignore it and reject Plaintiff as a model.

(61) Notwithstanding the extortion threats and attempts to control Plaintiff's career, Plaintiff continued pursuing modeling as an expected business income. As a direct and proximate result of the Mafia's use of illegal communication devices and other methods of extortion at modeling agencies and other companies, the Mafia controlled Plaintiff's modeling career and prevented him from generating income in cities such as New York, Chicago, Miami, and Los Angeles. Where Plaintiff generated approximately $380 per day in 2000 as a New York model in the most competitive modeling city in the world, Plaintiff earned approximately $750 in modeling income in St. Louis and other US cities from 2001 to 2009.

(62) The Mafia's use of illegal communication devices continued when Plaintiff attended

22

Church services. On or around February 14, 2002, Plaintiff met with the St. Louis Catholic

Church's vocations director, Father Michael Butler, to participate in a weekend retreat at Kenrick

Glennon Seminary located at 5200 Glennon Drive in St. Louis, MO 63119. During the retreat,

the Mafia proceeded to bug the seminary with illegal communication devices to stalk, harass, and

torment Plaintiff. As the public harassment and stalking from illegal communication devices

occurred at the retreat and other Catholic services, Plaintiff was forced to stop attending church

to prevent the Mafia persecution of priests and laity. The public harassment of Plaintiff, clergy,

and laity that occurred from 2001 to the present was willfully and knowingly allowed by

Defendants the STLPD and FBI. As a direct and proximate result of Defendants rejecting

Plaintiff's complaint, Plaintiff's First Amendment right to peacefully assemble was violated.

(63) On or around October 19, 2002, Plaintiff contacted Defendant STLPD via

emergency 911 because the sleep deprivement, death threats, and torture from illegal

communication devices became excruciating. Plaintiff proceeded to explain to the dispatched

STLPD officer that he was being stalked, threatened, and tortured by the Mafia. When Plaintiff

informed the officer that the Mafia bugged his property with illegal communication devices to

stalk, extort, and torture him, the officer feigned ignorance of a crime and replied, "Well if you

have bugs you should call an exterminator and not the Police." When Plaintiff alleged that the

devices were in public places being used to harass and torture him, such as at St. Norbert's

23

church and the University of Missouri of St. Louis (UMSL) college campus, the Police officer maliciously impugned Plaintiff's belief in the existence of illegal communication devices and told him to see a doctor for an examination. Effectively, the STLPD officer wrongfully neglected Plaintiff protection of his Constitutional rights to privacy, security in his home, and others so as to violate his rights and allow the Mafia crimes to continue.

(64) Plaintiff called Defendant the STLPD via emergency 911 to complain of the intense Mafia stalking, extortion, and torture from illegal communication devices on or around April 17 and 20, 2003. When the STLPD officers arrived at his residence, the Mafia proceeded to generate harassment and torture from illegal communication devices in the presence of the two officers. Despite witnessing the harassment and torture as Plaintiff complained of the illegal communication devices being used to stalk and torture him, the STLPD officers proceeded to ignore it so as to prove a premeditated plan existed to intentionally impugn Plaintiff's complaint and allow the stalking, extortion, and torture of Plaintiff to continue.

(65) On or around May of 2003, Plaintiff called Defendant the FBI field office in St. Louis to complain of the STLPD's intentional neglect of Plaintiff's rights and the Mafia stalking, extortion, torture. When Plaintiff complained that Defendant the STLPD was not protecting his Constitutional right to privacy, due process, liberty, safety, and others by refusing to investigate, Defendant UNKNOWN FBI AGENT #5 proceeded to state, "No way. The Mafia would only be

24

interested in you if you're making millions of dollars a year. They're only interested in money. That happens to only one in 16 million people." Plaintiff responded by stating that the Mafia was extorting him for refusing to work as a model in New York City, which was worth approximately $500,000 to $1,000,000 a year. Nevertheless, Defendant UNKNOWN FBI AGENT #5 proceeded to unlawfully impugn probable cause of Plaintiff's claim and deprive him of his Constitutional rights by maliciously refusing to investigate. As such, the Mafia crimes were allowed to continue.

(66) From March of 2001 to June of 2003 and dates continuing thereafter, the public places where the stalking, extortion, and torture from illegal communication devices occurred in St. Louis were at St. Norbert's Church, St. Sabina Church, Our Lady of Guadlupe Church, St. Ferdinand Church, St. John and James Church, the St. Louis Cathedral, the UMSL campus, at his workplaces, the Ritz-Carlton and Banana Republic, at his friend Billy Duran's house, and other public venues. Plaintiff alleged to Defendants the STLPD and FBI that the use of illegal communication devices by the Mafia was occurring at these places in every one of his complaints. Nevertheless, Defendants continued to maliciously violate, neglect, and deprive Plaintiff of his rights by refusing to investigate and protect him from pain, suffering, and injury.

(67) Plaintiff proceeded to call the FBI office in Washington, D.C. on or around May 17, 2003 to complain that the Mafia was stalking, threatening, and torturing him and that the FBI

25

in St. Louis was abetting the crimes by neglecting his complaint and not investigating. Notwithstanding Plaintiff's complaint, Defendants UNKNOWN FBI AGENTS #6 and #7 wrongfully denied jurisdiction of the Mafia stalking, extortion, and torture as federal offenses and proceeded to instruct Plaintiff to call the New York Police Department (NYPD).

(68) On or around May 17, 2003, Plaintiff proceeded to call the NYPD and was informed by an unknown officer that the NYPD only accepted local complaints. The unknown officer proceeded to state that the FBI misinformed Plaintiff since the Mafia crimes were occurring in St. Louis. Accordingly, the officer proceeded to instruct Plaintiff to file his complaint with Defendants the STLPD and FBI in St. Louis.

(69) When Plaintiff proceeded to call the STLPD on a non-emergency number on or around May 23, 2003, he was put into contact with the STLPD Crimes Against Persons Unit. Plaintiff proceeded to leave 14 messages with the unit to complain of the Mafia crimes that were occurring but was repeatedly ignored. As a direct and proximate result of the utter impugning of Plaintiff's claim and inaction despite probable cause, Defendants the STLPD and FBI acted in concert with the Mafia to violate, neglect, and deprive Plaintiff of his Constitutional rights.

III. Conspiracy to Violate, Neglect, and Deprive Plaintiff's Rights By Defendant STLPD's

Intelligence Unit and APPLE, INC. From 8/03 to 8/05

(70) Plaintiff contacted the STPD's Intelligence Unit on or around July of 2003 and

26

spoke with detective Len Eckstein (Eckstein) to file a non-emergency complaint. When Plaintiff

spoke to Eckstein, he alleged that the Mafia was extorting and torturing him, making harassing

phone calls, vandalizing his Toyota Camry, controlling his relationships with others, and

preventing him from modeling in New York City. He also alleged that the Mafia was using

annoyance devices to harass him in his residence, car, and public places that he frequented, such

as at St. Norbert's Church, his friend Billy Duran's residence, and his UMSL classrooms. In

response, Eckstein wrongfully stated that there was no crime in the Mafia stalking him and

bugging his property unless the Mafia arrived at his front door. Despite Eckstein's rejection,

Plaintiff remained in contact with Eckstein to report the Mafia crimes after July of 2003.

(71) No later than August of 2003, Plaintiff contacted the United States Prosecuting

Attorney's Office located in St. Louis to complain of Defendants the STLPD and FBI neglecting

his complaint against the Mafia. Plaintiff allegedly spoke with US Attorney, John Bodenhausen,

who proceeded to wrongfully reject Plaintiff's complaint and allow the crimes to continue.

(72) On or around January of 2005, Plaintiff met with the UMSL Dean of Social Welfare,

Lois Pierce, and was informed that he could not continue pursuing his master's degree until the

Mafia stopped stalking, extorting, and torturing him. Pierce and a faculty witness, Joe Pickard,

alleged that they were concerned that the Mafia harassment would affect hospital patients and

children Plaintiff was required to work with in the fall semester of 2005 as part of the UMSL

27

master's degree curriculum. Pickard also stated that he feared that the Mafia was endangering the faculty and staff since Defendants the STLPD and FBI were not helping him. As a direct and proximate result of Defendants the STLPD and FBI wrongfully refusing Plaintiff's claim despite probable cause, Plaintiff was unable to pursue his last two semesters of his master's degree. Concurrently, the Mafia controlling of Plaintiff's career continued.

(73) On or around January 29, 2005, Plaintiff contacted Defendant STLPD via emergency 911 to complain about threats of violence his parents received that were left on his answering machine. One of the threats stated, "You better tell Sandra to put her black dress on George. You better tell her to put her black dress on because you're about to get fucked up." The threats were of the same violent nature directed at Plaintiff and his family members that Plaintiff alleged he was receiving to Defendants STLPD and FBI from September 2000 to January 2005.

(74) Immediately after receiving the threat, Plaintiff proceeded to contact Eckstein on his non-emergency office phone number to file a complaint. Plaintiff was asked by Eckstein to play the threat to Eckstein so he could hear them clearly. After asking Plaintiff to play the threat three times, Eckstein informed Plaintiff he would investigate the matter.

(75) Approximately 2 weeks after the threats were reported to Eckstein, on February 10, 2005, the identity of the young man who left the threats was identified. The alleged perpetrator's name was Clearance Washington, or "Tunky." Plaintiff proceeded to call Eckstein to inform him

28

that he knew the identity of the individual who left the threat of violence. Eckstein heard Plaintiff's testimony and proceeded to inform him that he would contact him later.

(76) On or around February 12, 2005, Plaintiff discovered that Washington died. Plaintiff proceeded to call Eckstein to inform him of Washington's death but Eckstein refused to return Plaintiff's 7 phone calls. As a direct and proximate result of Eckstein's willful avoidance of Plaintiff, on or around February 21, 2005 Plaintiff informed an unknown STLPD officer working in the Intelligence Unit that Washington was allegedly murdered because Plaintiff proffered his name and identity to the Police as proof of the Mafia stalking, extortion, and torture. In response, Eckstein continued to neglect Plaintiff's complaint and refused to return his phone calls.

(77) On or around February 25, 2005, Plaintiff purchased a new Apple iPod Shuffle on the website, www.ebay.com. The iPod Shuffle was sold by the Ebay user, "Fate120." Although the iPod was sold by a third party, its serial number, 5C5063FMRS9, indicated that the item was manufactured and distributed by Defendant, APPLE, INC.

(78) Plaintiff proceeded to use his iPod Shuffle at his gym, Club Fitness, located at 1159 North US Highway 67 in Florissant, Missouri 63031. No later than March of 2005, Plaintiff discovered that his iPod Shuffle was bugged with an illegal receiver while exercising at his gym as threats and harassment were transmitted to the iPod. The contents of the harassment originating from the iPod included the voices of the 7 Mafia members making statements such

29

as, "You're dead," "Your sister is dead," "You're a model," and "I love you." The contents of the harassment also included violent noise, harassing words, and tunes that mimicked songs, such as ones stating, "I'm about to kill him."

(79) On or around May 5, 2005, Eckstein arrived at Plaintiff's residence in response to his Mafia stalking, extortion, and torture complaint. Eckstein stated that he was being pressured to interrogate because Plaintiff was contacting other Police departments, such as the Dallas Police Department, Atlanta Police Department, and others to seek assistance with the Mafia crimes that Defendant the STLPD was maliciously neglecting.

(80) During the interrogation, Plaintiff re-alleged that the Mafia was extorting him for refusing to work as a model and using illegal communication devices to stalk and torture him so as to confirm probable cause of the Mafia crimes. Plaintiff also alleged damages such as being unable to continue modeling in New York and other major US cities, being kicked out of the UMSL School of Social Welfare for the Mafia conspiracy continuing, and that he was suffering from severe public humiliation, anxiety, emotional distress, sleep deprivation, torture, and trauma caused by the Mafia use of illegal communication devices.

(81) In response to Plaintiff's complaint, Eckstein proceeded to wrongfully impugn Plaintiff's claim and violate his Constitutional right to protection of the laws of the United States and others by stating, "There's not a criminal violation if a person bugs your house. It's your

30

private property." Notwithstanding Eckstein's false pretense, Plaintiff alleged that the

harassment from illegal communication devices was occurring in public places, such as at his

UMSL campus, his workplace, and other public places that Plaintiff frequented. Eckstein

wrongfully responded by demanding more evidence of the Mafia crimes and use of illegal

communication devices before proceeding with an investigation.

(82) When Eckstein demanded more evidence, Plaintiff referred to 911 recordings from

September of 2000 that included his parents screaming in the background for help when the

Mafia member named Bill attempted to break, enter, and murder Plaintiff and his family.

Eckstein proceeded to search through his files and after reading one stated, "I heard that

recording. You mean 'Bill Tremmil' or 'Roach?'"

(83) Plaintiff responded by stating, "I don't know his last name. You have a Police

report that includes his name and identity? I didn't see him get arrested when he was at my

door." In response, Eckstein stated, "Yea, that's him."

(84) When Plaintiff asked, "What happened to Washington? Was there ever an

investigation on his death?" Eckstein responded by feigning ignorance of Washington's alleged

murder and stated, "Greg, there's a lot of things that go on in the City that happen to kids every

day." Effectively, Eckstein wrongfully ignored Washington's death despite it being allegedly

caused by the Mafia conspiracy.

31

(85) At the end of the interview, Eckstein proceeded to wrongfully state that he couldn't investigate further because Plaintiff was required to prove that the Mafia stalking, extortion, and torture was occurring prior to a Police investigation. By denying probable cause of the crimes and maliciously neglecting his duty to discover evidence and investigate, Eckstein willfully and knowingly allowed the stalking, extortion, and torture to continue so as to act in concert with other Defendants and violate, neglect, and deprive Plaintiff of his Constitutional rights.

## IV. The Mafia Conspiracy in Los Angeles, California From 9/05 to 10/05

(86) Plaintiff proceeded to move to Los Angeles, California on September of 2005 to avoid the Mafia crimes being neglected by Defendants the STLPD and FBI. Despite moving to Los Angeles, the Mafia's use of illegal communication devices continued from St. Louis by the Mafia members. The stalking, extortion, and torture from illegal communication devices occurred every day and night at Plaintiff's sister's Venice, California residence, at his modeling agency, Q Model Management, and other public venues so as to prevent Plaintiff from the Mafia stalking, extortion, and torture occurring from St. Louis.

(87) On or around September 7, 2005 at 4:14 am while Plaintiff was sleep deprived and tortured by the Mafia using illegal communication devices at his sister's residence, Plaintiff heard his neighbors, Luke, Victoria, and others get woken up and begin yelling, "What the fuck is that ringing noise!" On or around September 8, 2005, Plaintiff attempted to protect his

32

neighbors from the Mafia use of illegal communication devices by contacting Eckstein in St. Louis on his cellular phone. Plaintiff proceeded to report to Eckstein that the Mafia use of illegal communication devices was continuing from St. Louis and that he intended to use Eckstein as a witness in his complaint to the LAPD for the Mafia crimes happening in Los Angeles.

(88) On or around September 16, 2005 at approximately 10:00 am, Plaintiff attempted to file a complaint at the LAPD Pacific Division's office located in Culver City, California. Plaintiff proceeded to proffer his bugged iPod Shuffle as evidence of the Mafia use of illegal communication devices for the LAPD to analyze. Despite stating to the LAPD policeman working at the front desk, officer Scott, that he and his neighbors were getting harassed, threatened, sleep deprived, and tortured by Mafia members, Scott refused to accept Plaintiff's evidence for examination and denied him an opportunity to speak with a detective. Scott stated, "Don't worry about your neighbors. Just take a long vacation, and everything will be okay." In effect, Scott willfully and knowingly perpetuated the Mafia stalking, extortion, torture.

(89) On or around September 16, 2005, Plaintiff proceeded to stay the night at his friend Matt Johnson's apartment to protect his neighbors from the stalking, sleep deprivement, and torture from illegal communication devices.

(90) When Plaintiff and Johnson returned to his sister's Venice apartment on or around September 17, 2005, they discovered that Plaintiff's sister's doorway was vandalized. The

33

graffiti on the door read, "Losers live here," and had an arrow directing to the inside of the apartment. The ink color and handwriting in photographs of the graffiti matched a letter posted in the apartment on September 17, 2005 by Victoria so as to prove Victoria vandalized the apartment. Concurrent with Plaintiff's complaint to the LAPD, statements heard by Victoria at 4:14 am, pictures of vandalism allegedly done by Victoria, and other evidence, Victoria allegedly vandalized Plaintiff's sister's apartment to retaliate and express her anxiety caused by the Mafia's use of illegal communication devices being used to stalk, extort, and torture Plaintiff.

(91) On or around September 26, 2005, Plaintiff contacted Eckstein via email to inquire about the status of his Mafia complaint in St. Louis. The email read, "Thanks for your referral to the LAPD a couple weeks ago. Just to let you know, I arrived at their office about a week ago and showed them evidence of my claim (one of the speaker/microchips that were planted in my personal property, my iPod). Unfortunately, they discounted it as irrelevant and pretended that they couldn't open an investigation. After refusing to take my claim, he nevertheless gave me his name, badge number, and business card in case I had any further problems... I was wanting to know if you heard anything about the man who was picked up at my house in September of 2000 in response to my 911 call, you know, the man with the gun in his hand from the Italian Mafia, 'Bill Tremmil,' or 'Roach,' who you mentioned in our last conversation at my house in June of this year as being in the police report that was filed..." The email proved that a relationship

34

existed between Plaintiff and Eckstein for the Mafia stalking, extortion, and torture conspiracy and that Eckstein alleged a Police report was filed by Defendant the STLPD for "Bill Tremmil's" extortion attempts in September of 2000. Notwithstanding Plaintiff's email, Eckstein proceeded to wrongfully ignore Plaintiff's inquiry.

(92) As a result of the continued Mafia crimes, Plaintiff purchased a new digital recorder from Best Buy located at 11301 West Pico Boulevard in Los Angeles, California 90064 to record the Mafia extortion from illegal communication devices. Immediately after opening the recorder out of its sealed box on or around September 27, 2005, Plaintiff began recording the Mafia stalking, extortion, and torture from illegal communication devices in his sister's apartment. The harassment in a recording obtained at 7:01 pm states, "I hate you," and originated from an illegal communication device planted in the ceiling of his sister's apartment. The statement was made in response to Plaintiff recording the Mafia members. The female identified in the recording is one of the seven Mafia members from St. Louis who confronted Plaintiff in September of 2000 and participates in stalking, threatening, and torturing Plaintiff throughout his day.

(93) On or around September 28 and 29, and October 2 and 4, 2005, Plaintiff proceeded to record the violent noise and violent ringing from illegal communication devices planted in the floor, walls, and ceiling of his sister's apartment. The violent noise from illegal communication

35

devices confirmed the primary torture method Plaintiff alleged to Defendants the STLPD and FBI in all of his complaints from 2001 to 2005.

(94) Plaintiff also proceeded to record public harassment from the Mafia during a breakfast with his sister Clare at Urth Caffe located at 2327 Main Street in Santa Monica, CA 90405 on or around October 4, 2005. In the recording, two female and two male Mafia members are heard harassing Plaintiff from an alleged illegal communication device stating, "Mafia!" "I love you," "I'm falling in love with you," I'd fuck the shit out of you!" I'd fuck you right now," "Hey, we're listening to the recording," "Oh my God he recorded it!" "The FBI is the Illuminati!" "His face is painted," and "Autrey!" (the last name of a US federal judge in the Eastern District of Missouri). The contents of the statements in the recordings proved Plaintiff's allegation to Defendants the STLPD and FBI that the Mafia was stalking him in public while using illegal communication devices to humiliate, degrade, harass, control, and torture him.

## V. Continued Conspiracy to Neglect, Violate, and Deprive Plaintiff's Rights Involving

## Defendants STLPD and Boschert From 3/06 To 5/06

(95) Plaintiff returned to live at his St. Louis residence on March 3, 2006. On or around March 5, 2006, Plaintiff attended a Catholic mass at Sacred Heart Church located at 751 North Jefferson Street in Florissant, Missouri 63031. Plaintiff proceeded to record Mafia members making extortion harassment from illegal communication devices planted in the walls of the

36

church. In the recoding, FEMALE MAFIA MEMBER #1 is again heard laughing and stating, "Ha! Ha!" in the presence of onlookers in the congregation. Later in the recording, she is again heard during the priest's homily and states, "We're talking!" The recording at Sacred Heart proved that Plaintiff was being publicly stalked and extorted by Mafia members using illegal communication devices planted in the walls of his church to stalk, extort, and torture him.

(96) No later than April of 2006, Plaintiff purchased a bug detector to prove to Defendant the STLPD that he was being stalked, extorted, and tortured by the Mafia. In accord with Plaintiff's allegations to Defendants the STLPD and FBI from 2001 to 2006, bug sweeps were conducted at Plaintiff's residence, in his Toyota Camry, in his mother's Honda Accord, in his father's Chevy Malibu, at the UMSL campus, at St. Norbert's parish, at St. Ferdinand parish, at Sacred Heart parish, at his friend Billy Duran's apartment, and other places where Plaintiff previously alleged to the Defendants that harassment, stalking, and torture from illegal communication devices were occurring.

(97) Concurrently, Plaintiff's bug detector proceeded to detect the presence of illegal communication devices so as to verify their existence in all of the aforesaid locations.

(98) On or around April 18, 2006, Plaintiff filed a written complaint with Defendant the STLPD that demonstrated probable cause of the Mafia's use of illegal communication devices for an investigation. The evidence included: (1) the history of Plaintiff's complaints to the

37

STLPD for stalking, extortion, and torture caused by illegal communication devices from 2000 to 2005, (2) LAPD officer Scott's business card as proof of Plaintiff's attempt to file a complaint with the LAPD for the stalking and torture that continued in Los Angeles in defense of himself and neighbors, (3) pictures of vandalism done to his sister's apartment by his neighbor Victoria in retaliation to the harassment from illegal communication devices, (4) notes obtained by Plaintiff's former attorney, Bill Margulis, of Matt Johnson's testifying to discovering vandalism done to his sister's apartment after Plaintiff spent the night at his residence in September of 2005 and that Plaintiff alleged he was being stalked by the Mafia, (5) audio recordings of the Mafia stalking, extortion, sleep deprivement, and torture from illegal communication devices that were obtained at his sister's Venice apartment, at Urth Caffe in Los Angeles, at Sacred Heart parish, and other places, (6) video recordings of positive bug sweep readings of Plaintiff's residence, Toyota Camry, mother's Honda Accord, UMSL campus, Sacred Heart church, and other places, and (7) other evidence.

(99) When Plaintiff called the STLPD Intelligence Unit to check the status of his complaint on or around April 25, 2006, he was connected to the head of the department, Defendant BOSCHERT. After Plaintiff introduced himself and cordially asked BOSCHERT if he intended to investigate, BOSCHERT became aggravated and maliciously stated, "There's no evidence," and then hung up the phone on Plaintiff so as to intentionally avoid him. Plaintiff

38

immediately attempted to call Defendant BOSCHERT back but BOSCHERT proceeded to avoid Plaintiff's phone calls so as to willfully and knowingly perpetuate the Mafia stalking, extortion, and torture and violate, neglect, and deprive him of his Constitutional rights.

(100) In response to Defendant BOSCHERT's willful neglect and the continuing Mafia crimes, on or around April 25, 2006, Plaintiff called the FBI to file a complaint for Police misconduct and spoke to Defendant UNKNOWN FBI AGENT #3 named Mary. The Defendant again proceeded to intentionally impugn Plaintiff's claim and state, "There is no Mafia in St. Louis," and refused to allow Plaintiff to speak with an Agent.

(101) As a result of Defendant UNKNOWN FBI AGENT #3's wrongful impugnment, Plaintiff was forced to file a complaint with the FBI in person on April 26, 2006. When Plaintiff arrived at the FBI field office to file a complaint, he spoke to Defendant UNKNOWN FBI AGENT #3 named Mary who proceeded to impugn Plaintiff's claim and refused to allow him to speak with an Agent.

(102) As Plaintiff was being impugned by Mary, Defendant UNKNOWN FBI AGENT #8 entered the office with coworkers. Plaintiff began to speak with Defendant UNKNOWN FBI AGENT #8 who referred to himself as "Agent" and proceeded to inform him that he was being stalked, extorted, and tortured by the Mafia. Plaintiff also alleged that bug sweeps, audio recordings of harassment, and witness' testimonies proved that the Mafia crimes were occurring

39

and that the STLPD were unlawfully violating, neglecting, and depriving him of his

Constitutional rights by refusing to open an investigation. In response, Defendant UNKNOWN

FBI AGENT #8 proceeded to act in concert with the Mafia and other Defendants by maliciously

lying to Plaintiff and stating that the FBI did not have jurisdiction over issues of Police

misconduct and Mafia complaints of stalking, extortion, and torture. Specifically, he stated, "The

FBI doesn't police the Police," and, "Mafia stalking across state boundaries is not a federal

offense... It's only a federal offense if your Constitutional rights are violated, such as in cases of

Police brutality." In effect, Defendant UNKNOWN FBI AGENT #8 wrongfully lied to Plaintiff

and willfully allowed the stalking, extortion, and torture to continue.

(103) After 14 attempts to contact Defendant BOSCHERT via telephone and in writing,

Plaintiff finally spoke to Defendant BOSHCERT over the phone on or around May 2, 2006.

Instead of offering emergency assistance for the stalking, death threats, and torture, Defendant

BOSHCERT proceeded to wrongfully state that Plaintiff's video recordings of positive bug

sweep readings, audio recordings of harassment, and other evidence were insufficient to

demonstrate probable cause for an investigation. Rather than defending Plaintiff's rights and

protecting him from injury, Defendant BOSCHERT proceeded to state that he would not

investigate unless Plaintiff hired a private investigator to perform a bug sweep. As such,

Defendant BOSHCERT willfully and knowingly perpetuated the Mafia crimes.

(104) In contravention to Defendant BOSCHERT's scrutiny of Plaintiff's investigative methods, instruments, and evidence he obtained, "probable cause" to arrest involves probabilities which are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. Hawkins v. U.S., 288 F.2d 537, certiorari denied 81 S.Ct. 1943, 366 U.S. 975, 6 L Ed.2d 1264, C.A.8 (Mo.) 1961. Concurrently, since Plaintiff's evidence proved his residence was bugged and that he was being stalked, extorted, and tortured by the Mafia, Defendant BOSCHERT unlawfully impugned Plaintiff's evidence and denied that probable cause existed for an investigation. In effect, Defendant BOSCHERT intentionally violated, neglected, and deprived Plaintiff of his Constitutional rights and allowed the Mafia crimes to continue.

(105) On or around May of 2006, Plaintiff met an off-duty STLPD policeman, officer Fassen, while working-out at his gym, Eagle Fitness, located at 23 Mullanphy Garden Shopping Center in Florissant, Missouri 63031. Plaintiff proceeded to ask officer Fassen if a positive bug sweep reading by a citizen was sufficient to constitute probable cause for an investigation. In response, officer Fassen responded by affirmatively stating, "I would think so." Accordingly, officer Fassen acted as a cautious STLPD officer under the color of law so as to demonstrate Defendant BOSCHERT's reckless carelessness, malice, and imprudence.

## VI. Conspiracy to Neglect, Violate, and Deprive Plaintiff's Rights Involving Defendants the

## STLPD, Boschert, Williams, Bonine, and A-1 Private Investigations from 6/06 to 1/07

(106) In response to Defendant BOSCHERT's wrongful impugnment, on June 1, 2006,

Plaintiff proceeded to hire private investigator, Defendant TIMOTHY BONINE, an employee of

the company, Defendant A-1 PRIVATE INVESTIGATIONS, to conduct a bug sweep of his St.

Louis County residence and 1995 Toyota Camry. During the bug sweep, Defendant BONINE's

bug detector proceeded to activate and signal the presence of illegal communication devices.

Plaintiff proceeded to take pictures of BONINE's bug detector activating to prove to Defendant

BOSHCERT that his residence and vehicle were bugged.

(107) During the bug sweep, Defendant BONINE improperly swept Plaintiff's residence

and vehicle so as to produce false bug detector readings. The improper sweeping methods were

willfully and knowingly done so as to indicate Defendant BONINE attempted to intentionally

conceal the presence of illegal communication devices. Instead of sweeping in a continuous side-

to-side and up-to-down motion, Defendant slowly moved his bug detector along Plaintiff's walls

so as to start and stop the continuous sweeping motion needed to activate his bug detector.

(108) Plaintiff proceeded to ask if he could use Defendant BONINE's bug detector to

correct his improper bug sweeping method by demonstrating the proper side-to-side and up-to-

down motion in areas where Defendant improperly used his bug detector. Accordingly, when

42

Plaintiff used Defendant's bug detector the LED light proceeded to activate and signal the presence of illegal communication devices in every area of his bedroom and bathroom where Defendant improperly swept.

(109) After Plaintiff corrected Defendant BONINE's misuse of his bug detector, BONINE proceeded to employ the proper side-to-side and up-to-down continuous sweeping motions. Concurrently, BONINE's bug detector proceeded to activate and signal the presence of illegal communication devices in areas of Plaintiff's living room, bedroom, upstairs bathroom, and kitchen. Defendant proceeded to use a pink highlighter to mark areas on the wall and ceiling of Plaintiff's bedroom to indicate the areas he believed an illegal communication device was insidiously planted.

(110) After Defendant BONINE's bug detector activated in Plaintiff's car, bedroom, and bathroom, Plaintiff proceeded to ask, "Would you conclude that my house is bugged?" In response, Defendant stated, "Well right now, you are getting signals indicative to low voltage electrical charges, and low voltage electrical charges can mean listening devices, cameras, and a variety of surveillance devices." Plaintiff also asked, "Do you think that's enough to call the Police?" Defendant BONINE responded, "I would certainly call them. I would say that 'this is what [BONINE] told me to do. This is what I've done. This is what we found...'"

(111) On June 2, 2006, Defendant BONINE sent a letter to Plaintiff via US Mail that

43

stated he performed a bug sweep of Plaintiff's residence and Toyota Camry to determine if covert illegal communication devices existed. The letter proceeded to state that Defendant's hand held verifier activated in the aforesaid areas so as to indicate Plaintiff's residence and Toyota Camry were bugged.

(112) Plaintiff proceeded to contact Defendant BOSCHERT on or around June 13, 2006 to inform him of Bonine's results. Defendant BOSCHERT proceeded to neglect Plaintiff's complaint by avoiding 8 phone calls and refusing to return his messages.

(113) Plaintiff called Defendant A-1 PRIVATE INVESTIGATIONS on or around June 29, 2006 to inform Defendant BONINE that he forwarded his bug sweep results to Defendant the STLPD. Plaintiff was informed by the owner of A-1 PRIVATE INVESTIGATIONS that BOSCHERT contacted him. In a recording of the conversation, Plaintiff asked the Defendant, "I would like to know if [BONINE] talked to [BOSCHERT] about the situation and what was said. Because I need to talk to lieutenant BOSCHERT about whether there is probable cause for an investigation to be opened." The owner replied, "Okay. Our procedure is, and I'll tell you exactly what he talked about. The Police department already called me and asked to talk to Tim [BONINE]. And asked me what happened. And I gave Tim instructions on what to talk about. The only thing we are allowed to talk about is what's in that report that we gave to you."

(113) In lieu of Defendants the STLPD, BOSCHERT, BONINE, UNKNOWN FBI

44

AGENTS, and others acting in concert to neglect Plaintiff's complaint and allow the Mafia stalking, extortion, and torture to continue, Plaintiff sought professional counseling from licensed clinical therapist, Jerry Clerc. Concurrent with Plaintiff's symptoms of emotional distress, trauma, sleep deprivation, torture, and others, Clerc proceeded to diagnose Plaintiff with post-traumatic stress disorder.

(114) On or around July 5, 2006, Plaintiff continued to seek help by calling Defendant the STLPD's Bureau of Professional Responsibilities and spoke with sergeant Steve Hampton to initiate a complaint against Defendant BOSCHERT for criminal neglect. In a recording of the conversation, Plaintiff asked, "Is there a policy or procedure on probable cause or on opening an investigation when probable cause is demonstrated?" In response, Hampton replied, "Yeah, it's called a crime. If it is true a crime, officers are bound by law to investigate. That's what their oath is. The investigation that we'd have to look into is if there is probable cause and if there was an actual crime committed."

(115) Plaintiff attempted to contact Defendant BOSHCERT via telephone on 12 separate attempts but continued being ignored from July 5 to July 30, 2006.

(116) On or around July 31, 2006, Plaintiff proceeded to forward BONINE's report to BOSCHERT to prove that BONINE's bug detector signaled the presence of illegal communication devices. Despite providing proof of BONINE's positive bug sweep results,

45

BOSCHERT avoided 14 phone calls from Plaintiff and refused to return his messages so as to willfully violate, neglect, and deprive Plaintiff's rights and knowingly allow the Mafia stalking, extortion, and torture to continue.

(117) Plaintiff proceeded to file a written complaint with the STLPD's Bureau of Professional Responsibilities on or around August 30, 2006 to complain of Defendant BOSCHERT's neglect of the stalking, extortion, and torture. The complaint included a detailed summary of neglect by STLPD officers from September of 2000 to 2006, video recordings of Plaintiff's bug detector signaling the presence of illegal communication devices in his residence, car, and other places, audio recordings of Mafia harassment from illegal communication devices, and Defendant BONINE's report that stated his bug detector signaled the presence of illegal communication devices. Notwithstanding probable cause of Defendant BOSCHERT's malicious neglect of the Mafia crimes and Plaintiff's rights, the bureau proceeded to ignore Plaintiff and allow the Mafia stalking, extortion, and torture to continue.

(118) On or around September 11, 2006, Plaintiff was informed by his Pretrial Services officer, Deena Siler, that she was contacted by Defendant BOSCHERT. In response, Siler proceeded to instruct Plaintiff to request her consent the next time he intended to complain to the STLPD about the Mafia stalking, extortion, and torture.

(119) As a direct and proximate result of the conspiracy to silence Plaintiff, perpetuate

46

the Mafia crimes, and neglect his Constitutional rights, Plaintiff proceeded to file a written complaint with the FBI's Internal Investigations division located at 11102-935 Pennsylvania Avenue Northwest in Washington, D.C. 20535 on or around October 14, 2006. Plaintiff's complaint included a history of STLPD neglect, Defendant BONINE, BOSCHERT, UNKNOWN FBI AGENTS, and others acting in concert to cover-up the Mafia crimes, and federal statutes on probable cause that proved Plaintiff's Constitutional rights were being violated. Despite Plaintiff's complaint and probable cause, Defendant the FBI's Internal Investigations division proceeded to ignore Plaintiff's complaint so as to willfully and knowingly allow the Mafia crimes to continue.

(120) As part of Plaintiff's enrollment in a Pretrial Diversion program, Plaintiff was instructed to seek professional therapy under the guidance of Siler. On or around November of 2006, Plaintiff met with Dr. Chand of St. Louis University Hospital and proceeded to inform her of the Mafia stalking, extortion, and torture. When Plaintiff was prompted to prove his claim, he proffered video recordings of bug sweeps, audio recordings of harassment, and Defendant BONINE'S bug sweep results.

(121) As part of Dr. Chand's assessment of Plaintiff's mental health, she proceeded to contact Defendant BONINE to authenticate his letter and bug sweep results. In response, Defendant BONINE proceeded to maliciously state that Plaintiff's residence and vehicle were

47

not bugged with illegal communication devices so as to intentionally cause a misdiagnosis. As a direct and proximate result of Bonine's malicious statements, the Mafia was allowed to freely stalk, extort, and torture Plaintiff without help from law enforcement and professionals.

(122) On or around January 14, 2007, Plaintiff proceeded to contact Defendant the STLPD's Bureau of Profession Responsibilities to request a response to his August 30, 2006 complaint. In response, the bureau wrote a letter to Plaintiff that stated, "A review of all pertinent information was conducted by this office along with several interviews, including Ms. Deena Siler of the Federal Pretrial Diversion Unit and Mr. Timothy Bonine of A-1 Private Investigations. I find no apparent violation of any Department Rules or Regulations and will not be conducting any further review. If this Department may be of any further assistance to you in the future, do not hesitate to contact me..." The letter was signed by Defendant KENNETH WILLIAMS and dated January 22, 2007.

(123) Defendant WILLIAMS' wrongful decision to accept BONINE and Siler's testimonies over scientific evidence constituted an improper procedure. According to RSMo 490.065 (3) on the admissibility of expert witness testimony, the facts or data in a particular case upon which an expert bases an opinion or inference must be of a type reasonably relied upon by experts in the field in forming opinions or inferences upon the subject *and must be otherwise reasonably reliable.* In contravention to this statute and others, Defendant WILLIAMS accepted BONINE's irrelevant expert witness testimony that Plaintiff's residence and vehicle were not

48

bugged despite knowing that it was blatantly unreliable since it contradicted BONINE's positive

bug sweep results and no scientific basis existed in support of his testimony. Thus, Defendant

WILLIAMS wrongfully accepted BONINE testimony and Siler's irrelevant hearsay over

Plaintiff's scientific evidence and probable cause so as to constitute an improper procedure. In

effect, Defendants BOSHCERT, WILLIAMS, BONINE, A-1 PRIVATE INVESTIGATIONS,

and others acted in concert by committing wrongful acts in their designated professions so as to

willfully perpetuate the Mafia crimes and violate Plaintiff's Constitutional rights.

## VIII. Continued Conspiracy Involving Defendants the STLPD and Williams of the Bureau of

## Professional Responsibilities From 2/07 to 10/07

(124) After receiving Defendant WILLIAMS' letter, on or around February of 2007,

Plaintiff proceeded to call Defendant the STLPD's Bureau or Professional Responsibilities to

complain about the Mafia stalking, extortion, and torture continuing. In response, officer

Hampton stated that the bureau was responsible only for crimes against officers and that Plaintiff

needed to re-file his complaint with the Intelligence Unit for an investigation.

(125) Prior to re-filing his complaint with Defendant the STLPD's Intelligence Unit, on

or around March of 2007, Plaintiff proceeded to purchase a counter surveillance bug detection

package, the CS Pro 25, to disprove Defendant BONINE's erroneous testimony and verify that

his residence and other property were bugged with the Mafia's illegal communication devices.

(126) The CS Pro 25 is a highly credible counter-surveillance package that includes the

Counter Surveillance Device-21 (CSD-21) bug detector, the Silent But Deadly-5H (SBD-5H) bug detector, and the DET2 radio frequency meter. The CSD-21 is considered "the world's best selling counter surveillance detector" and is the exact same bug detector used by the LAPD, Dallas Police Department, US Department of Defense, Environmental Protection Agency, United Nations, and many other government agencies and Fortune 500 companies. In itself, the CSD-21 is a more credible and technologically advanced bug detector than Defendant BONINE's hand-held verifier in producing reliable results and detecting the presence of illegal communication devices.

(127) No earlier than March of 2007, Plaintiff proceeded to perform an exhaustive bug sweep of his residence, Toyota Camry, and Audi A4 Quattro using his CSD-21, SBD-5H, and DET2. The results indicated that Plaintiff's bedroom, upstairs bathroom, areas of his living room, Toyota Camry, Audi A4 Quattro, sister Clare's Venice, California apartment, and other locations were bugged with illegal communication devices.

(128) Plaintiff also proceeded to use the CSD-21 to conduct a telephone tap test on or around March of 2007. The CSD-21 contains an ultra-sophisticated telephone tap test that detects the latest developments in technology for covert telephone eavesdropping devices. According to the CSD-21's instruction manual, "If, AT ANY TIME, the needle noticeably 'bounces' and approaches 5.5, this indicates the presence of a polarity negating telephone recording or

50

telephone transmitting device." Concurrently, when Plaintiff performed the telephone tap test, the needle proceeded to "bounce" to 5.5 on the meter so as to indicate with clear and convincing certainty that Plaintiff's telephone line was tapped. Plaintiff proceeded to video record his results to proffer to law enforcement proof of the Mafia conspiracy.

(129) After obtaining positive results that indicated with 100% certainty that his telephone landline was tapped, on or around March 19, 2007 Plaintiff proceeded to dial emergency 911 to file a complaint for the Mafia use of illegal communication devices to stalk, extort, and torture him.

(130) When an STLPD officer named Smith arrived at Plaintiff's residence, Plaintiff proceeded to demonstrate that his residence and telephone were bugged with illegal communication devices by conducting a telephone tap test while Smith supervised. Smith proceeded to read the CSD-21 instruction manual and perform the test himself to verify that the test was correctly performed. Concurrent with Plaintiff's former test results, the telephone tap test proceeded to play back recorded sounds entered into the telephone after a brief 20 to 30 second delay so as to prove with 100% certainty that Plaintiff's telephone line was tapped with an illegal recording device. In lieu of probable cause of the Mafia use of illegal communication devices, officer Smith instructed Plaintiff to report his results to Defendant BOSCHERT for an investigation.

51

(131) On or around March 29, 2007, Plaintiff proceeded to file a complaint with the STLPD's Intelligence Unit. Plaintiff's complaint included: (1) video recordings of his positive bug sweep results and telephone tap tests using the CSD-21, (2) video recordings of positive bug sweep results using the SBD-5H, (3) photos of wall and ceiling areas that Defendant BONINE marked with a highlighter to indicate his bug detector signaled the presence of illegal communication devices, (4) audio recordings of public harassment from the Mafia, (5) allegations of Defendant BONINE stating he believed Plaintiff's residence was bugged, (6) names and contact information of witnesses willing to testify to Plaintiff's credibility, and (7) other evidence that proved the Mafia was stalking, extorting, and torturing Plaintiff.

(132) Notwithstanding clear and convincing evidence and probable cause of the Mafia stalking, extortion, and torture, Defendant BOSCHERT proceeded to avoid Plaintiff by ignoring 5 of his phone calls. Effectively, Defendant BOSHCERT willfully and knowingly allowed the Mafia stalking, extortion, and torture to continue.

(133) As a result of Defendant BOSCHERT neglecting Plaintiff, or around April 18, 2007 Plaintiff wrote a letter to BOSCHERT to ask if he intended to investigate his complaint. Plaintiff asked in his letter, "In regards to my last letter I sent you on March 27, 2007, could you please inform me whether you intend to speak with John Anderson, the advisor from the counter surveillance company for the bug detector I purchased (i.e., the CSD-21), or Jerry Clerc, my

52

licensed clinical counselor? The individuals have testified to my claim's credibility and have informed me that they are willing to speak with you." Despite referring to witnesses and professionals who stated that they would testify to the credibility of Plaintiff's positive CSD-21 results and post-traumatic stress disorder being caused by the intentional neglect of the Defendants ignoring Plaintiff's Mafia stalking, extortion, and torture complaint, Defendant BOSCHERT continued avoiding Plaintiff's complaint so as to willfully and knowingly allow the Mafia crimes to continue.

(134) Plaintiff proceeded to file a second complaint with Defendant the STLPD's Bureau of Professional Responsibilities on or around May 2, 2007 for Defendant BOSCHERT's alleged criminal neglect of the Mafia stalking, extortion, and torture. Plaintiff's complaint included his complaint letter to Defendant BOSCHERT and other clear and convincing evidence of the Mafia crimes. Notwithstanding probable cause of Defendant BOSCHERT's malicious neglect, the bureau proceeded to act in concert with Defendant BOSCHERT by avoiding Plaintiff's phone calls, refusing to respond to his contact attempts, and maliciously neglecting and depriving Plaintiff of his rights so as to willfully and knowingly allow the Mafia stalking, extortion, and torture to continue.

(135) On or around July 5, 2007, Plaintiff filed a third complaint with Defendant the STLPD's Bureau of Professional Responsibilities to proffer additional evidence of the Mafia

stalking, extortion, and torture. The new evidence included: (1) an abbreviated transcript of

Defendant BONINE stating that he believed Plaintiff's residence was bugged and Plaintiff

should go the Police, (2) video recordings of bug sweeps using Plaintiff's CSD-21 at his St.

Louis County residence, (3) audio recordings of harassment from illegal communication devices

obtained in Plaintiff's Audi A4 Quattro, father's Chevy Malibu, brother's Dodge Saturn, and

sister's Mini Cooper, (4) video recordings of positive readings obtained from bug sweeps using

the CSD-21 and other bug detectors that confirmed the presence of illegal communication

devices at his sister's Venice, California apartment where, (5) audible recordings of harassment

from the areas where the positive bug sweep readings indicated the presence of illegal

communication devices at his sister's Venice, California residence, (6) photos of patched dry

wall over 1 inch holes in areas where illegal communication devices were detected by Plaintiff's

bug detectors that demonstrated entry points of the installment of the devices, (7) pictures of

vandalism done by Victoria caused by the Mafia sleep depriving and torturing Plaintiff, (8) a

video of a positive bug sweep confirmation using the SBD-5H in his Audi A4 Quattro, (9) a

video of a positive telephone tap test using the CSD-21 that proved with clear and convincing

certainty that Plaintiff's landline was tapped, and (10) other evidence. Despite probable cause of

the Mafia using illegal communication devices to stalk, extort, and torture Plaintiff, the bureau

willfully and knowingly violated, neglected, and deprived Plaintiff of his rights by avoiding

54

Plaintiff's phone calls, refusing to respond to his complaint, and denying him assistance.

(136) Plaintiff proceeded to file a fourth complaint with Defendant the STLPD's Bureau of Professional Responsibility on or around August 22, 07 to provide additional evidence of Defendant BOSCHERT's alleged criminal neglect and Mafia crimes occurring. Notwithstanding Plaintiff's fourth complaint, the bureau persisted in acting in concert with the Mafia and Defendants the STLPD, BOSCHERT, WILLIAMS, the FBI, BONINE, and others by maliciously neglecting, violating, and depriving Plaintiff of his Constitutional rights and refusing to investigate so as to perpetuate the Mafia stalking, extortion, and torture.

(137) On or around August 27, 2007, Plaintiff contacted the STLPD County Counselor, Luke Meiners, to obtain records of the STLPD's history of complaints against organized crime groups, stalkers, and users of illegal communication devices. In violation of the Missouri Sunshine Law, Meiners refused to provide Plaintiff with records so as to act in concert with the Defendants in abetting the Mafia criminal conspiracy.

(138) Plaintiff proceeded to contact the Bureau of Professional Responsibilities via telephone on or around September of 2007 and spoke with Sergeant Hampton to ask whether the bureau intended to investigate the Mafia conspiracy and Defendant BOSCHERT's alleged official misconduct. When Plaintiff stated that Defendant BONINE allegedly lied to conceal the Mafia's use of illegal communication devices, Hampton replied, "People lie to the Police all the

55

time." When Plaintiff asked for help despite Hampton knowing that BONINE was lying, Hampton proceeded to state that Plaintiff needed to file a civil lawsuit to sue BONINE for making reckless statements to the Police and obstructing justice. As a direct and proximate result of Defendant the STLPD's malicious neglect and violating Plaintiff's rights, the Mafia crimes continued.

## IX. Conspiracy To Neglect, Violate, and Deprive Plaintiff's Rights Involving Defendant

## D'Angelo Automotive

(139) While Plaintiff remained in contact with Defendant the STLPD to proffer evidence of the continued Mafia stalking, extortion, and torture from illegal communication devices, no earlier than December of 2006, Plaintiff began hearing a loud noise originating from the rear of his 1998 Audi A4 Quattro. To determine the cause of the loud noise, on or around January 17, 2007, Plaintiff brought his car to Defendant D'ANGELO AUTOMOTIVE (D'ANGELO) located at 1104 North Jefferson Street in Florissant, Missouri 63031 for an inspection.

(140) After inspecting Plaintiff's Audi, Defendant D'ANGELO stated that the cause of the loud noise was a loose wheel bearing on the rear passenger side. Plaintiff proceeded to accept D'ANGELO's diagnosis in good faith and agreed to pay D'ANGELO for 3 1/2 hours of labor to install the new part. Plaintiff believed that an end to the harassing noise coupled with a visual inspection of the defective loose wheel bearing part provided by D'ANGELO would

56

prove that the harassing noise in his Audi was caused by the alleged loose wheel bearing.

(141) On February 14, 2007, Plaintiff picked up his Audi from Defendant D'ANGELO. Plaintiff proceeded to request the defective wheel bearing part from a mechanic named Rick who began to act erratic by talking fast, raising his voice, and pressuring Plaintiff to leave so as to avoid further questions. Despite Defendant D'ANGELO's alleged repairs, approximately 10 seconds after leaving the shop the loud buzzing noise from the rear of Plaintiff's car persisted.

(142) No earlier than February 14, 2007, Plaintiff began hearing the same loud buzzing noise in vehicles that carried him **only when he was a passenger** so as to indicate that the cause of the loud sound was the illegal communication devices being used by the Mafia to stalk, extort, and torment Plaintiff. The harassing noise from the rear of the cars was heard in his father's Chevy Malibu in St. Louis, his mother's Honda Accord in St. Louis, his brother's Dodge Saturn in Chicago, his sister's Mini Cooper in Los Angeles, his friend Billy Duran's Chevrolet in St. Louis, and other vehicles that carried Plaintiff. The vehicles were not diagnosed as having loose wheel bearings at the time they carried Plaintiff. Additionally, the owners of the said vehicles stated that they never heard the loud noise until Plaintiff was a passenger.

(143) No earlier than February 21, 2007, Plaintiff began receiving harassment and taunts from Mafia members using illegal communication devices planted in his Audi. The contents of the threats included statements from the Mafia such as, "Ha! Ha!" "Fucker!" "I fucking hate

56

you!" and others. The Mafia members' proceeded to harass and taunt Plaintiff by intermittently playing the loud buzzing noise for periods of time, laughing at him when it stopped, and then continuously playing it again so as to prove the illegal communication devices were being used to stalk, extort, and torture Plaintiff.

(144) On or around February 21, 2007, Plaintiff inspected the loose wheel bearing part given to him in a box provided by Defendant D'ANGELO. The part included a wheel bearing hub with 16 wheel bearing balls inside the hub, 1 defective washer, and one loose wheel bearing ball freely rolling around the box. Plaintiff proceeded to take pictures to document the condition of the parts provided by the Defendant on or around February 21, 2007.

(145) Plaintiff proceeded to conduct a bug sweep of his Audi on or around April of 2007 using the Counter Surveillance Pro-25 package that he purchased in March of 2007. During the bug sweeps, the CSD-21 meter proceeded to increase by 2 points near the rear bumper area, roof area, rear fender areas, and front fender areas so as to prove Plaintiff's Audi was emitting malicious radio frequencies indicative to illegal communication devices. In addition to the CSD-21 results, the SBD-5H bug detector's LED light activated near the driver's side dashboard so as to indicate the Mafia was using illegal communication devices to stalk, extort, and torture Plaintiff while driving his Audi.

(146) On or around June 30, 2007, Plaintiff closely examined the contents of the wheel

58

bearing provided by Defendant D'ANGELO by opening the wheel bearing hub. On close inspection, Plaintiff discovered that the size of the loose wheel bearing hub was significantly smaller than a 1998 Audi A4 Quattro wheel bearing hub. Additionally, the loose wheel bearing ball freely rolling around in the box was a different size than the other 16 wheel bearing balls so as to prove Defendant D'ANGELO attempted to make the part appear defective. Concurrent with the evidence, Defendant D'ANGELO willfully and knowingly concealed the Audi's true condition and made the part appear defective so as to prevent Plaintiff and law enforcement from obtaining evidence of illegal communication devices being used to stalk, extort, and torture Plaintiff.

(147) Generally, if either party to a transaction conceals some fact which is material, which fact is within his knowledge, and which it is his duty to disclose, he is guilty of fraud, and if in addition to the party's silence there is any statement, word, or act on his part, which tends affirmatively to a suppression of truth, to a covering up or disguising the truth, or to a withdrawal or distraction of the other party's attention or observations from the real facts, the concealment becomes fraudulent. Feeney v. Cook, 242 S.W.2d 524 (Mo. 1951).

(148) On or around September of 2005, Rick from D'ANGELO proceeded to call Plaintiff at his residence to confess for defrauding Plaintiff. Rick stated to Plaintiff's mother, "We're sorry for what we did. We didn't think it was a lot of money." Concurrently, Defendant

59

D'ANGELO admitted to intentionally misdiagnosing Plaintiff's vehicle and defrauding him.

(149) Defendant D'ANGELO's alleged fraudulent concealment, misdiagnosis, and perpetuation of the Mafia's use of illegal communication devices was done in concert with the actions and inactions of Defendants the STLPD, BOSCHERT, WILLIAMS, UNKNOWN FBI AGENTS, BONINE, A1 PRIVATE INVESTIGATIONS, and others who used unlawful means or shared a common goal to perpetuate the Mafia stalking, extortion, and torture. As a direct and proximate result of D'ANGELO'S alleged fraudulent concealment, Plaintiff suffered and continues to suffer from the Mafia stalking, extortion, and torture from illegal communication devices in his Audi and other places to the present day.

## X. Plaintiff's Return to Los Angeles on 10/07 and the Continued Mafia Conspiracy

(150) Plaintiff proceeded to move back to Los Angeles to avoid the violating, neglect, and depriving of his Constitutional rights by law enforcement and Defendants in St. Louis on or around October 19, 2007.

(151) On or around October 21, 2007, Plaintiff proceeded to obtain audio and video recordings of the Mafia stalking, extortion, and torture from illegal communication devices planted in his Audi. As Plaintiff listened to a song entitled, "Still Tippin,'" by the artist Mike Jones, the word "herpes" was repeatedly played by the Mafia to humiliate, degrade, and cause emotional distress to Plaintiff. In accord with Plaintiff's complaints to Defendants the STLPD

61

and FBI, the word "herpes" was maliciously used by the Mafia to publicly humiliate Plaintiff in an attempt to control his life and relationships with others.

(152) In the audio and video recording of the song, "Still Tippin,'" the song states, "Tippin' on four fours, wrapped in four vogues, **HERPES**. Tippin' on four fours, wrapped in four vogues. Tippin' on four fours, wrapped in four vogues, **AHH**." When Plaintiff listened to the song on his friend Chelsea Ricci's computer on or around November 5, 2007, the word "herpes" and "ahh" were not heard.

(153) In accord with other recordings, the Mafia proceeded to play the word "herpes" and "ahh" in tune with the song, "Still Tippin," when Plaintiff listened to the song from February of 2007 to the present day in his 1998 Audi, 1995 Toyota Camry, Mother's Honda Accord, on his Apple iBook G4 computer, Apple PowerBook G4, Apple iPods, and other music players. The harassing words were continuously played in tune with the song by the Mafia to deceive Plaintiff and others into believing that the words were part of the original contents of the song.

(154) When Plaintiff arrived at his sister's Venice, California apartment to live in Los Angeles on or around October 23, 2007, he proceeded to use his Apple iPod Mini headphones to prevent the sleep deprivation from illegal communication devices planted in the walls, ceiling, and floor of his sister's apartment. The Apple iPod Mini was used to defend himself, his sister Clare, and his neighbors from the Mafia stalking, extortion, and torture attempts.

(155) On or around January 25, 2008, Plaintiff proceeded to receive Mafia death threats

60

generated from an illegal communication device planted in his Apple iPod Mini headset. The death threats that woke Plaintiff in the morning stated, "I'm about to kill him. I'm about to kill him. I'm about to kill him..." and were played in tune with a song entitled, "Cafe Style 1," by the artist, Toka Project. Plaintiff proceeded to record the death threats on his cellular phone's video camera and digital recorder to prove that illegal communication devices were being used to stalk, extort, and torture Plaintiff in Los Angeles.

(156) On or around February 1, 2008, Plaintiff asked his sister Clare if she ever heard death threats on any of the songs on the mixed album that included "Cafe Style 1." In response, Clare stated that she never heard death threats on any of the songs on the album.

(157) Plaintiff proceeded to listen to the song again on his Apple iPod Shuffle, Apple iBook G4, and Sony entertainment system that he brought with him from his residence in St. Louis. Accordingly, on or around February of 2008, the Mafia members continued playing the death threats in tune with the song "Cafe Style 1" in an attempt to deceive Plaintiff and others to believe that the death threats were part of the song.

(158) On or around February 3, 2008, Plaintiff moved from his sister's residence into his 1 bedroom apartment located at 9937 Young Drive in Beverly Hills, California 90212. No earlier than February 7, 2008, Plaintiff began receiving harassment and sleep deprivation from illegal communication devices planted in the walls, ceiling, and floor of his apartment.

61

(159) Plaintiff proceeded to conduct a bug sweep of his apartment using his CSD-21 on or around February 14, 2008. During the bug sweep, the CSD-21 bug detector's deflection meter significantly increased by 3 points on the scale when it was swept across the ceiling and wall so as to confirm the presence of illegal communication devices. Plaintiff proceeded to record the bug sweep using his cellular phone's video camera to proffer to law enforcement. Taken together, the bug sweeps and recordings of death threats proved that the Mafia conspiracy to stalk, extort, and torture Plaintiff using illegal communication devices continued from St. Louis to Los Angeles.

## XI. Continued Mafia Conspiracy to Stalk, Extort, and Torture Plaintiff and the D'Angelo Lawsuit in St. Louis

(160) Prior to moving to Los Angeles, Plaintiff filed a civil lawsuit in the Missouri Circuit Court against Defendant D'ANGELO on or around August of 2007. Plaintiff's six count pro se Petition included counts of aiding and abetting, civil conspiracy, fraudulent misrepresentation and omissions, Missouri Merchandising Practices Act (MMPA), unjust enrichment/restitution, and negligence. Plaintiff's Petition alleged that D'ANGELO intentionally conspired to misdiagnose his Audi to abet the Mafia stalking, extortion, and torture.

(161) No earlier than November of 2008, Plaintiff began receiving threats from Mafia members who proceeded to taunt Plaintiff by saying, "Throw it out!" "We bribed Judge Sherry!"

63

and others. The threats indicated a plot existed to bribe Judge Sherry and have her wrongfully dismiss the case to perpetuate the Mafia stalking, extortion, and torture.

(162) Prior to attending a scheduled hearing on or around February 14, 2008, Judge Sherry allegedly attempted to prevent Plaintiff from attending the hearing to cause a default judgement in favor of Defendant D'ANGELO. On or around January 26, 2008, a notice of hearing was sent via US Mail to Plaintiff's Los Angeles address that indicated Sherry changed the date of a hearing from February 14 to February 4, 2008. According to the Court's website, http://www.courts.mo.gov/casenet/base/welcome.do, on January 21, 2008, the hearing was scheduled for February 14, 2008. The hearing date of February 14, 2008 was confirmed via telephone by Court Clerk Mary Spurgeons on or around January 24, 2008.

(163) When Plaintiff received the notice in the mail on or around January 29, 2008, the penmanship indicated that the hearing date was altered and changed to February 4, 2008. Concurrent with the Court's website and Spurgeons' confirmation of the hearing, the altered notice of hearing proved Judge Sherry instructed the Court Clerk to set the hearing date for February 14th, 2008 on or around January 18, 2008, but kept the Notice of Hearing in her possession and did not mail it until after she altered it on or around January 25, 2008. Thus, Judge Sherry allegedly delayed mailing the Notice of Hearing to intentionally cause default judgement in favor of Defendant D'ANGELO.

(164) When Plaintiff attended a hearing on motions on February 25, 2008, Judge Sherry proceeded to wrongfully state that Plaintiff did not have a cause of action despite clear and

64

convincing evidence of Defendant D'Angelo's alleged wrongful actions and Plaintiff's well

plead Counts. In accord with threats from the Mafia, Judge Sherry proceeded to order Plaintiff to

amend his Petition or else have it dismissed.

(165) Judge Sherry proceeded to ignore clear and convincing evidence of the Mafia's use

of illegal communication devices that was presented to the Court in Plaintiff's Motion for

Continuance filed on or around March of 2008. In Plaintiff's Motion, he proceeded to proffer

recordings of death threats being generated from illegal communication devices planted in

Plaintiff's iPod Mini stating, "I'm about to kill him." The recordings proved Plaintiff's life was

in danger and that he was being stalked, extorted, and tortured by the Mafia. Despite Plaintiff's

evidence of the Mafia's use of illegal communication devices, Judge Sherry willfully neglected

taking action on her own authority to protect Plaintiff so as to constitute Misprision of Felony.

(166) On or around April of 2008, Plaintiff proceeded to file a motion to amend and

motion to transfer his case to the Federal District Court in the Eastern District of Missouri.

Where the former Petition named Defendant D'ANGELO as the only conspirator in the Mafia

stalking, extortion, and use of illegal communication devices conspiracy, the motion to transfer

was made to present the case to the Court in its proper scope and magnitude, add evidence, and

list other Defendants who wrongfully acted in concert to perpetuate the Mafia crimes.

(167) Despite Plaintiff's motion to transfer, on or around May of 2008 Judge Sherry

65

proceeded to dismiss Plaintiff's Petition. The motion to transfer was wrongfully denied in contravention to RSMo 476.410, which states, a circuit court in which a pleading was erroneously filed has limited jurisdiction and shall transfer the case to a court in which the legislature has deemed venue proper. As a direct and proximate result of Judge Sherry's erroneous ruling to dismiss Plaintiff's case, wrongful attempts to ignore his motion to transfer, and wrongful neglect of his safety, the Mafia stalking, extortion, and torture continued.

## XII. Continued Conspiracy to Violate, Neglect, and Deprive Plaintiff's Constitutional

### Rights in Los Angels Involving Defendant Unknown Agents of the FBI

(168) While the D'ANGELO lawsuit was in proceedings, Plaintiff proceeded to file a complaint with the LAPD on or around March 20, 2008 to end the Mafia crimes that were continuing. The complaint included a history of complaints that were neglected by the STLPD and clear and convincing evidence of the Mafia conspiracy continuing in Los Angeles. The evidence included: (1) recordings of torture from illegal communication devices, such as ones originating from his iPod stating, "I'm about to kill him," (2) video recordings of bug sweeps using the LAPD bug detector, the CSD-21, (3) pictures of patched dry wall in areas where the CSD-21 indicated the existence of illegal communication devices, and (4) other evidence that established probable cause.

(169) Despite probable cause of the Mafia crimes, the LAPD proceeded to wrongfully

neglect Plaintiff's complaint by not answering their phone, refusing to return Plaintiff's phone calls, and alleging that they lost Plaintiff's complaint.

(170) As a result of the LAPD's wanton neglect of Plaintiff's rights, Plaintiff proceeded to file a complaint at Defendant the FBI's field office in Los Angeles on or around April 9, 2008 for the Mafia conspiracy continuing. Although the conspiracy crossed state boarders, Defendant UNKNOWN FBI AGENT #9 proceeded to erroneously impugn the existence of a connection between the Mafia conspiracy in St. Louis and the Mafia conspiracy in Los Angels. Defendant also proceeded to carelessly refuse to accept Plaintiff's written complaint and evidence and instructed him to wait until the LAPD submitted his complaint to the FBI. In the meantime, the stalking, extortion, and torture continued.

(171) On or around April 18, 2008, Plaintiff proceeded to file a complaint with the Beverly Hills Police Department (BHPD) to complain of the Mafia crimes occurring in Beverly Hills. Prior to the interview, the Mafia proceeded to bug the BHPD interview room with illegal communication devices to publicly harass and stalk Plaintiff as he was being interviewed. In accord with the wrongful actions of Defendant the STLPD when officers maliciously neglected Plaintiff's complaint when illegal communication devices were used by the Mafia in their presence to stalk, extort, and torture Plaintiff, the interviewing BHPD officer, detective Chilson, proceeded to intentionally ignore the public stalking and harassment from illegal communication

67

devices so as to demonstrate the Mafia's control over the BHPD.

(172) Plaintiff proceeded to record the BHPD interview and harassment from illegal communication devices. The harassment heard in the recording consisted of the same violent noise and ringing harassment Plaintiff recorded originating from illegal communication devices in his sister's Venice apartment, his Beverly Hills apartment, his workplace at Saks Fifth Avenue, and other public venues.

(173) During the interview, Chilson proceeded to wrongfully deny Plaintiff's complaint by stating, "The thing is, directly from our standpoint as Police we determine whether a crime has been committed... until a section of the California Penal Code is violated, that's when we go in and investigate. But at this time I don't know if there's anything else we can do for you as a police department. But I encourage you to look at your other avenues that you have available to you, whether it be continued vigilance on your part or hire a private investigator."

(174) When Plaintiff responded by handing detective Chilson his packet of evidence that included bug sweeps and recordings of harassment that proved the Mafia conspiracy was occurring in Beverly Hills, Chilson proceeded to leave the room to examine the evidence. As Plaintiff waited, he continued being harassed by illegal communication devices planted in the walls of the complaint room.

(175) When Chilson returned after reviewing Plaintiff's evidence he proceeded to refer

68

him back to Defendant the FBI by stating, "At this time, there's nothing I can do for you... Have you contacted the FBI?... That's who I'd refer you to at this point. They can call me if they want. Tell them to give me a call if they need to." In effect, the BHPD denied responsibility of protecting Plaintiff's Constitutional rights and deferred responsibility to Defendant the FBI.

(176) On or around September 9, 2009, Plaintiff proceeded to forward his complaint that was originally filed with the FBI to the US Prosecuting Attorney's Office in Los Angeles. The complaint was made in anticipation of Defendant the FBI's criminal neglect of Plaintiff's complaint and willful perpetuation of the Mafia crimes.

(177) On or around September 23, 2008, Plaintiff proceeded to call the FBI field office in Los Angeles to follow up on his written complaint. When Plaintiff alleged that members of the Mafia were making death threats and bugging his residence, car, and workplace, Defendant UNKNOWN FBI AGENT #10 proceeded to act in concert with the Mafia and other Defendants by maliciously impugning Plaintiff's complaint so as to abet the Mafia stalking, extortion, and torture. The following exchange of words reveal the conversation after Plaintiff stated the Mafia was stalking him, threatening him, and bugging his residence and other public places:

UNKNOWN AGENT #10: "That's not something that the FBI is going to look into."

PLAINTIFF: "What do you mean?"

UNKNOWN AGENT #10: "That's basically an invasion of privacy but it's not a federal

offense."

PLAINTIFF, "That is a federal offense."

UNKNOWN AGENT #10, "No it's not."

PLAINTIFF, "There's a statute. It's 18 USC 2511 on the use of illegal communications.

That's a federal offense."

UKNOWN AGENT #10, "In what way is that a federal offense."

PLAINTIFF, "The fact that it's under the United States Code makes it a federal offense.

It's also an interstate stalking claim.

UKNOWN AGENT #10, "Interstate? Do you know who's doing the stalking?"

PLAINTIFF, "This person who is an alleged Mafia figure."

UNKNOWN AGENT #10, "Excuse me? Oh it is? And who are you referring to?"

PLAINTIFF, "I don't know the guy's name. I'm not a Mafia member. I don't know

everyone of their names like the back of my hand. This guy came to me and threatened me, said

he was going to kill me if I didn't continue modeling for an agency in New York City, and I quit

anyway..."

UKNOWN AGENT #10, "...So what did the Beverly Hills PD tell you?"

PLAINTIFF, "They said they don't have the technology to help me. 'It sounds like it's

something the FBI can take care of'... (UNKNOWN AGENT begins laughing at the Plaintiff)...

And the LAPD, I just got off the phone with them and they said the same thing."

UNKNOWN AGENT #10, "Umm, sorry to tell you but they basically just told you that to get you off the phone."

PLAINTIFF, "I'm sorry?"

UNKNOWN AGENT #10, "They basically just told you that to get you off the phone."

PLAINTIFF, "How do you know? Can you read their mind?"

UKNOWN AGENT #10, "That's basically something that the FBI is not going to look into..."

PLAINTIFF, "Wait a second, how do you know that's what they said because I was actually in front of them in person. This is just a case of me having my civil rights impugned over and over again."

UNKNOWN AGENT #10, "That happens everyday, but unfortunately that doesn't mean it's a federal violation."

PLAINTIFF, "I told you there are like 6 federal violations that have been committed here: interstate stalking, illegal communications, conspiracy..."

UNKNOWN AGENT #10, "When you spoke to an agent a week ago, what information did you provide them?"

PLAINTIFF, "I just told them that I filed a complaint via a letter. And he said, 'It takes

71

about 2 weeks for us to process it,' and he said, 'Call us back in a week.'"

UNKNWON AGENT #10, "Okay, actually it takes longer than that. Depending on the severity of your case, if they already read your complaint and they felt that there are no FBI guidelines, they are not going to look, do an investigation on that."

PLAINTIFF, "Yeah, well that's in the event that there's nothing that falls within the FBI guidelines. This is a clear and convincing case... (UNKNOWN AGENT begins laughing at the Plaintiff) ...where it is blatantly a federal offense to stalk somebody especially when the person is in the alleged Italian Mafia."

UKNOWN AGENT #10, "And who are you referring to? You keep saying the Mafia, but who???"

PLAINTIFF, "Look, I don't know. His name's Bill. That was one of the guys who came to me and approached me. I don't think that is a very smart question to ask somebody because people just aren't members of..."

UNKNOWN AGENT #10, "You know what sir? I think you basically need to look into a physician. Good-bye" (hangs up on the phone on the Plaintiff).

(178) After Defendant UNKNOWN FBI AGENT #10 hung up on Plaintiff, Plaintiff proceeded to contact his licensed clinical counselor, Jerry Clerc, to receive counseling for the intentional infliction of emotional distress and neglect of his Constitutional rights. Plaintiff

remained in contact with his counselor to seek therapy for the post traumatic stress disorder

caused by Defendants' malicious neglect. In the meantime, Plaintiff continued being stalked,

extorted, and tortured by members of the Mafia.

XIII. Conspiracy to Violate Plaintiff's Constitutional Rights Involving Defendant Apple, Inc.

(179) On or around January of 2009, Plaintiff obtained a new iPod Touch that was

purchased at the Apple Store located at 1248 Third Street in Santa Monica, California 90401.

Immediately after recording the opening of the iPod Touch on or around February 24, 2009,

Plaintiff proceeded to upload the song, "Cafe Style 1." Concurrent with death threats originating

from illegal communication devices planted in his iPod Mini, Shuffle, and other Apple products,

the iPod Touch proceeded to generate death threats stating, "I'm about to kill him."

(180) Plaintiff proceeded to write Defendant APPLE, INC. on or around March 20, 2009

to complain about APPLE, INC. selling him the bugged iPod Touch. The complaint included

evidence such as the original sales receipt of the iPod Touch, pictures of the unopened iPod

Touch taken on 2/24/09, video recordings of the iPod generating death threats in tune with the

song, "Cafe Style 1," and the song's original contents without the threats. In response to

Plaintiff's complaint, Defendant APPLE, INC. proceeded to ignore Plaintiff's complaint.

(181) Plaintiff proceeded to purchase an iPod Nano on March 23, 2009 to prevent the

Mafia's use of illegal communication devices planted in his iPod and other Apple equipment.

The iPod Nano was purchased at the Apple Store located in the Beverly Center in Los Angeles, California. After recording the opening of the iPod Nano, Plaintiff discovered that Defendant APPLE, INC. bugged the iPod Nano as death threats were transmitted to an illegal communication device planted in it. The iPod Nano was bugged prior to its sale at the Apple Store as associates allegedly conspired with the Italian Mafia to sell it to Plaintiff.

(182) On or around April 28, 2009, Plaintiff proceeded to write Defendant APPLE, INC. via US Mail to settle the issue of Defendant APPLE, INC. abetting the Mafia stalking, extortion, and torture. Plaintiff requested a non-bugged iPod to replace his bugged iPods he purchased in an attempt to end the Mafia sleep deprivation, stalking, extortion, and torture from illegal communication devices at all times in his life. Notwithstanding Plaintiff's request, Defendant APPLE, INC. proceeded to act in concert with the Mafia and other Defendants by intentionally ignoring Plaintiff's complaint so as to perpetuate damages and injury suffered by Plaintiff.

XIV. Continued Conspiracy to Violate, Neglect, and Deprive Plaintiff's Rights Involving

Defendant STLPD and USDOJ Section Chief Mark Kappelhoff

(183) In lieu of Defendant the FBI stating that the Mafia conspiracy was a state Police matter, on or around March 5, 2009, Plaintiff proceeded to file a complaint with Defendant the STLPD for the Mafia illegal communication device transmissions originating from St. Louis. In accord with all of his complaints to law enforcement since September of 2000 to the present, the

use of illegal communication devices began in St. Louis and continued when Plaintiff travelled and moved to different US cities.

(184) The STLPD complaint included audio and video recordings of death threats and other harassment transmitted by St. Louis Italian Mafia members allegedly using satellite radio to transmit illegal communications such as ones stating, "I'm about to kill him," "You're a fag," "Herpes," and others.

(185) Plaintiff also alleged in his complaint that a recent break-in of his Toyota Camry that occurred at his parent's St. Louis residence on or around August of 2008 was caused by Mafia members attempting to prevent Plaintiff from obtaining evidence of illegal communication devices. During the break-in, an alleged Mafia conspirator stole the radio's detachable face so as to prevent Plaintiff from obtaining recordings of death threats from illegal communication devices in his Toyota Camry. The crime occurred in lieu of the pending lawsuit against Defendant D'ANGELO and the other Defendants in the Federal District Court.

(186) On or around March 6, 2009, Plaintiff proceeded to forward his STLPD complaint to Defendant the FBI. Although Plaintiff's complaint included clear and convincing evidence of death threats and other harassment being generated from illegal communication devices, Defendants the STLPD and FBI proceeded to continue in their malicious pattern of neglect of Plaintiff's complaint and deprivation of his Constitutional rights.

(187) On or around March 7, 2009, Plaintiff proceeded to forward his complaint to the LAPD, United States Department of Justice (USDOJ), US Representative Henry Waxman, American Civil Liberties Union, and other political offices to seek action against the Mafia, the LAPD, and Defendants the STLPD and FBI for violating, neglecting, and depriving him of his Constitutional rights.

(188) Plaintiff received a response to his complaint from Defendant KAPPELHOFF, Section Chief of the USDOJ, on or around May 1, 2009. The letter stated that the USDOJ's Criminal Section of the Civil Rights Division did not intend to enforce criminal civil rights statutes regarding the alleged misconduct of STLPD, FBI, and LAPD law enforcement officials who maliciously neglected Plaintiff's rights and allowed the Mafia stalking, extortion, and torture to continue. As a direct and proximate result of Defendant KAPPELHOFF's decision to not correct the officials' misconduct, Defendant KAPPELHOFF maliciously and intentionally allowed the Mafia crimes to continue so as to act in concert with the other Defendants and violate Plaintiff's Constitutional rights in furtherance of the conspiracy.

(189) As a direct and proximate result of Defendants' intentional neglect and violating of Plaintiff's rights, on or around June 17, 2009, Plaintiff filed another complaint with the FBI on the website, www.fbi.gov, for bomb threats he received from Mafia members attempting to prevent him from flying to Chicago from Los Angeles for a family reunion. In Plaintiff's

complaint, he re-alleged that the Mafia was threatening to murder him and blow-up his American

Airlines flight. Notwithstanding the severity of Plaintiff's complaint and the lives of hundreds of

passengers being at stake, the FBI continued to maliciously violate, neglect, and deprive Plaintiff

of his rights by refusing to investigate and prevent the Mafia stalking, extortion, and torture.

(190) On June 22, 2009, Plaintiff proceeded to record video of Mafia death threats

transmitted to an illegal communication device planted in his Apple PowerBook G4 while flying

300,000 feet in the air in route from Chicago to Los Angeles on his American Airlines flight.

The death threats from Plaintiff's Apple PowerBook G4 were generated in unison with the song,

"Cafe Style 1," and repeatedly stated, "I'm about to kill him." The death threats proved that the

Mafia is using satellite radio to stalk, extort, and torture Plaintiff at all times in his life, and after

9 years, the Mafia conspiracy continues to the present day.

## CAUSES OF ACTION

## COUNT I: 42 USC 1983: CONSPIRACY TO VIOLATE CONSTITUTIONAL RIGHTS: AMENDMENT 1 and 14: (Plaintiff vs. Defendants the STLPD, BOSCHERT, WILLIAMS, UNKNOWN FBI AGENTS, and KAPPELHOFF).

(191) Plaintiff re-alleges and incorporates by reference paragraphs 1 through 190 of the

Complaint as if fully set forth herein. Plaintiff also incorporates into this cause of action every

allegation set forth in every paragraph of this Complaint, except those that are inconsistent with a

77

cause of action for violation of conspiracy to violate Constitutional rights.

(192) Plaintiff charges that the violations and injuries complained of were a direct and proximate result of some or all of the Defendants' actions whom intentionally and willfully combined, conspired and agreed with each other for the purpose of accomplishing the unlawful ends alleged or accomplishing lawful ends unlawfully as alleged in all Counts of this Complaint, all of which are incorporated by this reference, and for the purposes of performing the acts, among others, set forth above in the Factual Allegations.

(193) Such concerted conduct of the said STLPD, BOSCHERT, WILLIAMS, UNKNOWN FBI AGENTS, KAPPELHOFF, and other Defendants in connection with suppressing evidence, obstructing justice, and willfully refusing to prevent the stalking, extortion, and torture for 9 years was intended and did chill, disrupt, punish, neutralize, and otherwise infringe upon Plaintiff's lawful, protected right to peacefully assemble, life, liberty, privacy, due process, and other rights, privileges, and immunities secured to him by the First, Fourth, Eighth, and Fourteenth Amendments and laws of the United States, thus entitling Plaintiff to judgement as prayed for below.

(194) Defendants the STLPD, BOSCHERT, WILLIAMS, UNKNOWN FBI AGENTS, KAPPELHOFF, and other Defendants are also charged with liability in this Count ONE, in that their suppressing of evidence, obstructing justice, willful refusal to prevent the Mafia stalking,

78

extortion, torture, and wanton disregard for the injuries and damages sustained by Plaintiff amounted to an unconstitutional, tacit and willful violation of Plaintiff's right to peacefully assemble, life, liberty, privacy, safety, due process, and others afforded him by the First, Fourth, Eighth, and Fourteenth Amendments and laws of the United States.

(195) Thus it was the object of conspiracy:

(A) To unlawfully impugn, deny, chill, punish, and suppress Plaintiff's complaints, his evidence, his credibility, other witness' testimonies, probable cause, and other evidence so as to willfully obstruct the due course of justice and knowingly cause, allow, and perpetuate the Mafia stalking, extortion, torture, and other crimes that violated Plaintiff's Constitutional right to peacefully assemble, freedom from cruel and unusual punishment, liberty, privacy, and others enumerated in the First, Fourth, Eighth, Fourteenth Amendments and laws of the United States.

(B) To operate under the color of law so as to unlawfully imitate lawful authority and cast the State of Missouri and US Government into a false light of it being under Mafia control so as to defraud the United States of America and its citizens, perpetuate the Mafia crimes in society, and cause pain, suffering, injury and damages to Plaintiff.

(C) To unlawfully deny responsibility for their actions and inactions and defer it to other Defendants and third parties so as to shift liability to others, obstruct Plaintiff from taking action, and perpetuate the Mafia stalking, extortion, and torture.

(196) Overt acts by members of the conspiracy include, but are not limited to:

(A) Refusing to investigate, correct official misconduct, and denying for 9 years Plaintiff's complaint of Mafia stalking, extortion, and torture despite evidence, probable cause, and a lawful duty to investigate. Defendants had a lawful duty to investigate and protect Plaintiff's Constitutional rights as officers acting under the color of law in the State of Missouri and for the United States when probable cause was established based on Plaintiff's testimony, positive bug sweep confirmations, witness' testimonies of damages and injuries caused by the Mafia crimes, recordings of death threats, audio and video recordings of harassment from illegal communication devices, bugged equipment, and other evidence. Notwithstanding probable cause, Defendants continued in their wanton, unlawful, and malfeasant pattern of neglect by refusing to defend Plaintiff's Constitutional rights so as to knowingly perpetuate the Mafia stalking, extortion, and torture in a evil and malevolent plot designed against Plaintiff. Defendants acted in concert with each other, the Mafia, and other Defendants by employing unlawful means to accomplish their mutual understanding or common goal of allowing the Mafia stalking, extortion, and torture to continue.

(B) Defendants knew of the consequent Mafia stalking, extortion, and torture that would continue as a result of their wanton actions and non-actions. The utter impugning of Plaintiff's evidence and unlawful decision to allow the stalking, extortion, and torture was reckless, wanton,

80

and malicious so as to shock the conscious and not comport with traditional beliefs of human decency.

(C) In addition to violating Plaintiff's Constitutional rights, Defendants violated multiple federal criminal statutes including but not limited to: 18 USC 1, 2, 3, 4, 5 and 6; 18 USC 3771, the US Crime Victims' Rights Act; 18 USC 241; 18 USC 242; 18 USC 2511, and others.

(D) Other communications and joint actions in aid of these measures and furtherance of the ends of disruption, neutralization, and perpetuation of wrongful acts committed against Plaintiff.

(197) As a direct and proximate result of the aforesaid conduct, the Plaintiff has suffered and continues to suffer discomfort, sleep deprivation, anxiety, invasion of privacy, humiliation, stalking, extortion, torture, destruction of community standing, destruction of career standing, post traumatic stress disorder and emotional distress, and will continue to suffer serious emotional distress in the future.

(198) Plaintiff is informed and believes that the wrongful acts and/or conduct alleged herein which was perpetuated by Defendants was done maliciously, oppressively, and/or fraudulently and with a wrongful intent of harming and injuring Plaintiff and did in fact harm Plaintiff with an improper evil motive amounting to malice in conscious disregard for the Plaintiff's rights. As a direct and proximate result, Plaintiff is entitled to recover punitive damages from said Defendants.

## COUNT II: SECTION 1985, CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS:

### AMENDMENT 1 and 14: (Plaintiff vs. All Defendants).

(199) Plaintiff re-alleges and incorporates by reference paragraphs 1 through 190 of the Complaint as if fully set forth herein. Plaintiff also incorporates into this cause of action every allegation set forth in every paragraph of this Complaint, except those that are inconsistent with a cause of action for violation of conspiracy to interfere with civil rights.

(200) Plaintiff charges that the violations and injuries complained of were a direct and proximate result of some or all of the Defendants' actions whom intentionally and willfully conspired to deter by force, intimidation, and wanton malice in their respective professions, Plaintiff from attending, presenting, or testifying to the Court and other officials incidents regarding the Mafia stalking, extortion, and torture, so as to perpetuate the commission of the wrongs, injure his person and property, obstruct and defeat justice, violate his First, Fourth, Eighth, and Fourteenth Amendment rights to peacefully assemble, freedom from cruel and unusual punishment, life, liberty, privacy, due process, and other rights enumerated in the Constitution and laws of the United States.

(201) Thus it was the object of conspiracy:

(A) To act in concert with the Mafia and other Defendants so as to prevent, obstruct, and otherwise deter Plaintiff from obtaining protection, influence or defeat the presentment,

82

testimony, and verdict against the Mafia and other Defendants, and disrupt, obstruct, deny, and otherwise infringe on, Plaintiff's First, Fourth, Eighth, and Fourteenth Amendment rights to peacefully assemble, freedom from cruel and unusual punishment, life, liberty, privacy, protection of the laws, and other rights listed in the Constitution and laws of the United States.

(202) Overt acts by members of the conspiracy would include, but are not limited to:

(A) Acting in concert with the Mafia and other Defendants by refusing to investigate, correct official misconduct, and defend Plaintiff's Constitutional rights for 9 years despite a lawful duty to act so as to render Plaintiff helpless against the wrongful actions of the Mafia, prolong the stalking, extortion, torture, and violate Plaintiff's First, Fourth, Eighth and Fourteenth Amendment rights to peacefully assemble, privacy, freedom from cruel and unusual punishment, liberty, due process, equal protection of the laws, and other rights enumerated in the Constitution. Defendants used unlawful means or shared an unlawful purpose with other Defendants to perpetuate the Mafia stalking, extortion, and torture. Defendants' wrongful actions and non-actions were wanton and malicious so as to not comport with traditional standards of human decency. (Plaintiff v. Defendants STLPD, BOSCHERT, WILLIAMS, UNKNOWN FBI AGENTS, and KAPPELHOFF)

(B) Acting in concert with the Mafia and other Defendants by concealing facts and making reckless statements to the STLPD and others so as to obstruct a Police investigation of

the Mafia stalking, extortion, and torture. The Defendants willfully stated that Plaintiff's residence and vehicle were not bugged despite obtaining positive bug sweep results and probable cause of the presence of illegal communication devices. Defendants used unlawful means or shared an unlawful purpose with the other Defendants to perpetuate the Mafia stalking, extortion, and torture. (Plaintiff v. Defendant BONINE and A1 PRIVATE INVESTIGATIONS)

(C) Acting in concert with the Mafia and other Defendants by willfully and intentionally concealing facts and misdiagnosing Plaintiff's 1998 Audi as having a loose wheel bearing so as to further the Mafia crimes. The intentional concealment of facts and misdiagnsosis impugned and casted a shadow of doubt on the existence of illegal communication devices being used by the Mafia to stalk, extort, and torture Plaintiff. Defendant's malicious concealment and misdiagnosis prevented Plaintiff from discovering the origin of harassment coming from illegal communication devices, suppressed evidence of the stalking and harassment, and obstructed an investigation so as to perpetuate the Mafia crimes. (Plaintiff v. Defendant D'ANGELO)

(D) Acting in concert with the Mafia and other Defendants by willfully and knowingly manufacturing and selling an iPod Shuffle, Mini, Touch, Nano, and other Apple equipment that were bugged with illegal communication devices so as to maliciously abet the stalking, extortion, and torture. Defendant used unlawful means or shared an unlawful purpose with the Mafia and other Defendants to perpetuate a common goal of furthering the Mafia stalking, extortion, and

84

torture. (Plaintiff v. Defendant APPLE, INC.)

(E) Other communications and joint actions in aid of these measures and furtherance of the ends of disruption, neutralization, and perpetuation of wrongful acts committed against Plaintiff.

(203) As a direct and proximate result of the aforesaid conduct, the Plaintiff has suffered and continues to suffer discomfort, sleep deprivation, anxiety, invasion of privacy, humiliation, stalking, extortion, torture, destruction of community standing, destruction of career standing, post traumatic stress disorder and emotional distress, and will continue to suffer serious emotional distress in the future.

(204) Plaintiff is informed and believes that the wrongful acts and/or conduct alleged herein which was perpetuated by Defendants was done maliciously, oppressively, and/or fraudulently and with a wrongful intent of harming and injuring Plaintiff and did in fact harm Plaintiff with an improper evil motive amounting to malice in conscious disregard for the Plaintiff's rights. As a direct and proximate result, Plaintiff is entitled to recover punitive damages from said Defendants.

## COUNT III: SECTION 1986, ACTION FOR NEGLECT TO PREVENT: AMENDMENT 1 and

### 14: (Plaintiff vs. All Defendants).

(205) Plaintiff re-alleges and incorporates by reference paragraphs 1 through 190 of the Complaint as if fully set forth herein. Plaintiff also incorporates into this cause of action every allegation set forth in every paragraph of this Complaint, except those that are inconsistent

with a cause of action for violation of neglect to prevent.

(206) Defendants willfully neglected to prevent or aided in the preventing the commission of the Mafia stalking, extortion, and torture conspired to be done so as to violate Plaintiff's First, Fourth, Eighth, and Fourteenth Amendment rights to peacefully assemble, freedom from cruel and unusual punishment, life, liberty, privacy, due process, equal protection of the laws, and other rights afforded him by the Constitution and laws of the United States. Plaintiff charges that the violations and injuries complained of were a direct and proximate result of some or all of the Defendants' wrongful actions and inactions. Defendants knew or ought to have known that a duty to act existed but nevertheless proceeded in their wanton and reckless disregard for Plaintiff's rights, health, and safety.

(207) Thus it was the object of Defendants' neglect to prevent:

(A) To willfully and carelessly neglect their duty to prevent or aid in the preventing Plaintiff from injury when knowledge of wrongs conspired to be done was obtained so as to prevent Plaintiff, Government officials, and others from discovering evidence, reporting the crime, and ending the Mafia stalking, extortion, and torture. Defendants' actions and inactions were intended to and did violate Plaintiff's First, Fourth, Eighth, and Fourteenth Amendment rights and other rights enumerated in the Constitution and laws of the United States.

(208) Overt acts of Defendants include, but are not limited to:

86

(A) Willfully refusing to investigate, correct official misconduct, and denying Plaintiff's

complaint for 9 years after knowledge of the wrongs conspired to be done was obtained so as to

intentionally allow the wrongs to continue and cause damages to Plaintiff. Defendants owed a

responsibility to prevent Plaintiff from injury by investigating the stalking, extortion, and torture

after a relationship existed and probable cause was established based on Plaintiff's testimony,

bug sweeps, audio and video recordings of death threats, audio and video recordings of

harassment, witness' testimonies, bugged electronic devices, and other evidence. Despite their

duty to prevent or aid in the preventing of the crimes, the Defendants willfully allowed the Mafia

stalking, extortion, and torture of Plaintiff so as to violate his First, Fourth, Eighth, and

Fourteenth Amendment rights and other rights enumerated in the Constitution and laws of the

United States. The wanton neglect of Plaintiff's rights was done without regard for traditional

standards of human decency so as to shock the conscience and constitute an independent tort.

(Plaintiff v. Defendants the STLPD, BOSCHERT, WILLIAMS, UNKNOWN FBI AGENTS,

and KAPPELHOFF)

(B) Willfully neglecting to prevent or aiding in the preventing the violating of Plaintiff's

Constitutional rights by concealing evidence and making reckless statements to the STLPD and

others so as to cast a shadow of doubt on the belief that Plaintiff's residence, vehicle, and other

property were bugged with illegal communication devices. Defendants owed a duty to report

87

their results to the STLPD when knowledge of the wrongs conspired to be done was obtained

from positive bug sweep readings and when the Police contacted Defendants. Despite probable

cause of the wrongs conspired to be done, Defendants intentionally and maliciously neglected to

prevent or aided in the preventing the commission of the Mafia stalking, extortion, torture, and

violating of Plaintiff's Constitutional rights. (Plaintiff v. Defendants BONINE and A1 PRIVATE

INVESTIGATIONS)

(C) Willfully misdiagnosing Plaintiff's Audi A4 Quattro as having a loose wheel bearing

and concealing the car's condition despite knowledge of the presence of illegal communication

devices or knowledge of some wrong about to be committed. By acting in concert with the Mafia

and other Defendants by using unlawful means to perpetuate the Mafia stalking, extortion, and

torture, Defendant knew of the wrongs conspired to be done or about to be committed.

Notwithstanding his duty to prevent or aid in the preventing bas, Defendant breached his duty

when he wrongfully concealed facts relating to the condition of Plaintiff's vehicle and

perpetuated the Mafia stalking, extortion, and torture so as to cause injury and damages to

Plaintiff for which Defendant is joint and severally liable. (Plaintiff v. Defendant D'ANGELO)

(D) Manufacturing and selling Apple iPods and other Apple equipment bugged with

illegal communication devices despite knowledge of wrongs conspired to be done or about to be

committed so as to willfully perpetuate the Mafia stalking, extortion, and torture. Defendant

owed a duty to prevent or aid in the preventing and breached that duty when they manufactured and sold Plaintiff Apple products that were advertised as safe and reliable. As a direct and proximate result of Defendant's breach of duty, Defendant neglected to prevent the stalking, extortion, and torture and Plaintiff's rights were violated. (Plaintiff v. Defendant APPLE, INC.)

(E) Other communications and joint actions in aid of these measures and furtherance of the ends of disruption and perpetuation of wrongful acts committed against Plaintiff.

(209) As a direct and proximate result of the aforesaid conduct, the Plaintiff has suffered and continues to suffer discomfort, sleep deprivation, anxiety, invasion of privacy, humiliation, stalking, extortion, torture, destruction of community standing, destruction of career standing, post traumatic stress disorder and emotional distress, and will continue to suffer serious emotional distress in the future.

(210) Plaintiff is informed and believes that the wrongful acts and/or conduct alleged herein which was perpetuated by Defendants was done maliciously, oppressively, and/or fraudulently and with a wrongful intent of harming and injuring Plaintiff and did in fact harm Plaintiff with an improper evil motive amounting to malice in conscious disregard for the Plaintiff's rights. As a direct and proximate result, Plaintiff is entitled to recover punitive damages from said Defendants.

COUNT IV: VIOLATION OF US CRIME VICTIMS' RIGHTS ACT, 18 USC 3771:
(Plaintiff v. Defendants STLPD, BOSCHERT, WILLIAMS, UNKNOWN FBI AGENTS, and KAPPELHOFF).

(211) Plaintiff re-alleges and incorporates by reference paragraphs 1 through 190 of this

Complaint as if fully set forth herein. Plaintiff also incorporates into this Complaint every allegation set forth in every paragraph, except those that are inconsistent with rights granted to the Plaintiff under the US Crime Victims' Rights Act, which provides:

(A) A crime victim has the following rights: (1) the right to be reasonably protected from the accused, (2) the right to reasonable, accurate, and timely notice of any public court proceeding, or any parole proceeding, involving the crime or of any release or escape of the accused, (3) the right not to be excluded from any such public court proceeding, unless the court, after receiving clear and convincing evidence, determines that testimony by the victim would be materially altered if the victim heard other testimony at that proceeding, (4) the right to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding, (5) the reasonable right to confer with the attorney for the Government in the case, (6) the right to full and timely restitution as provided in law, (7) the right to proceedings free from unreasonable delay, and (8) the right to be treated with fairness and with respect for the victim's dignity and privacy.

(B) In general, in any court proceeding involving an offense against a crime victim, the Court shall ensure that the crime victim is afforded the rights described in the aforesaid subsection. Before making a determination described in the aforesaid subsection, the Court shall make every effort to permit the fullest attendance possible by the victim and shall consider reasonable alternatives to the exclusion of the victim from the criminal proceeding. The reasons for any decision denying relief under this chapter shall be clearly stated on the record.

(C) The crime victim or the crime victim's lawful representative, and the attorney for the Government may assert the rights described in the aforesaid subsection.

(212) Defendants wrongfully denied Plaintiff his rights enumerated by the US Crime

Victims' Rights Act and maliciously denied Plaintiff his rights, among others, the right to be

reasonably protected from the accused and the right to be treated with fairness and with respect

for the victim's dignity and privacy.

(213) As a crime victim of the Mafia first-degree assault, stalking, extortion, torture, and

other serious crimes, Plaintiff hereby asserts every right granted him by the US Crime Victims'

Rights Act and prays for relief as warranted by law.

### COUNT V: VIOLATION OF 18 USC 2520, RECOVERY OF CIVIL DAMAGES AUTHORIZED (FOR INTERCEPTION AND DISCLOSURE OF ILLEGAL COMMUNICATIONS): (Plaintiff v. All Defendants).

(214) Plaintiff re-alleges and incorporates by reference paragraphs 1 through 190 of this

Complaint as if fully set forth herein. Plaintiff also incorporates into this cause of action every

allegation set forth in every paragraph of this Complaint, except those that are inconsistent with a

cause of action for violation of 18 USC 2520, which provides:

(A) In general, except as provided in section 2511 (2)(a)(ii), any person whose wire, oral,

or electronic communication is intercepted, disclosed, or intentionally used in violation of this

chapter may in a civil action recover from the person or entity, other than the United States,

which engaged in that violation such relief as may be appropriate.

(B) In an action under this section, appropriate relief includes: (1) such preliminary and

other equitable or declaratory relief as may be appropriate; (2) damages under subsection (c) and

punitive damages in appropriate cases; and (3) a reasonable attorney's fee and other litigation

costs reasonably incurred.

(C) If a Court or appropriate department or agency determines that the United States or any of its departments or agencies has violated any provision of this chapter, and the Court or appropriate department or agency finds that the circumstances surrounding the violation raise serious questions about whether or not an officer or employee of the United States acted willfully or intentionally with respect to the violation, the department or agency shall, upon receipt of a true and correct copy of the decision and findings of the court or appropriate department or agency, promptly initiate a proceeding to determine whether disciplinary action against the officer or employee is warranted. If the head of the department or agency involved determines that disciplinary action is not warranted, he or she shall notify the Inspector General with jurisdiction over the department or agency concerned and shall provide the Inspector General with the reasons for such determination.

(215) 18 USC 2511 states that a violation of this chapter occurs when: (1) any person who (a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication; (b) intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication when (i) such device is affixed to, or otherwise transmits a signal through, a wire, cable, or other like connection used in wire communication; or (ii) such device transmits communications by radio, or interferes with the transmission of such communication.

(216) Plaintiff re-alleges that violations of 18 USC 2511 occurred as incorporated by every allegation of every paragraph set forth in this Complaint. In their wrongful conduct, Defendants violated 18 USC 2511 in their official capacities and as individual citizens.

(217) As a direct and proximate result of the aforesaid conduct, Plaintiff has suffered and continues to suffer discomfort, sleep deprivation, anxiety, invasion of privacy, humiliation, stalking, extortion, torture, destruction of community standing, destruction of career standing, post traumatic stress disorder and emotional distress, and will continue to suffer serious emotional distress in the future for which Defendants are joint and severally liable.

(218) Plaintiff is informed and believes that the wrongful acts and/or conduct alleged herein which was perpetuated by Defendants was done maliciously, oppressively, and/or fraudulently and with a wrongful intent of harming and injuring Plaintiff and did in fact harm Plaintiff with an improper evil motive amounting to malice in conscious disregard for the Plaintiff's rights. As a direct and proximate result, Plaintiff is entitled to recover punitive damages from said Defendants.

## COUNT VI: SECTION 1988, PROCEEDINGS IN VINDICATION OF CIVIL RIGHTS:

### (Plaintiff vs. All Defendants).

(219) The Plaintiff re-alleges paragraphs 1 through 190 above, as if fully set forth herein.

(220) An additional basis for liability and recovery of damages against the Defendants arise herein, and is subject to the Court's pendant jurisdiction, under Missouri tort law, as a matter of negligence, conspiracy, aiding and abetting, intentional infliction of emotional distress, Missouri Merchandising and Practices Act, tortious interference of expected business income, fraudulent misrepresentations and omissions, negligent infliction of emotional distress, unjust enrichment/restitution, injunction, and other civil wrongs that entitle Plaintiff to relief. The

Plaintiff charges that the violations and injuries complained of were a direct and proximate result of some or all of Defendants' actions whom wrongfully caused injuries and damages to Plaintiff.

<u>COUNT VII: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS:</u> (Plaintiff v. Defendants BOSCHERT, WILLIAMS, UNKNOWN AGENTS OF THE FBI, KAPPELHOFF, BONINE, A-1 PRIVATE INVESTIGATIONS, D'ANGELO).

(221) Plaintiff re-alleges and incorporates by reference paragraphs 1 through 190 of this Complaint as if fully set forth herein. Plaintiff also incorporates into this cause of action and every allegation set forth in every paragraph of this Complaint, except those that are inconsistent with a cause of action for violation of negligent infliction of emotional distress.

(222) The elements of negligent infliction of emotional distress are as follows: (1) a legal duty to protect Plaintiff from injury, (2) breach of the duty, (3) proximate cause, and (4) injury to Plaintiff.

(223) By engaging in the conduct set forth herein, the Defendants have breached their duty of care in the conduct alleged.

(224) Overt acts of negligent infliction of emotional distress by the Defendants include but are not limited to:

(A) Refusing to investigate, correct official misconduct, and denying Plaintiff's complaint for 9 years. Defendants willfully allowed the Mafia stalking, extortion, and torture despite probable cause, a reasonable duty to protect Plaintiff from injury, rights enumerated in the Constitution, and other laws and statutes in support of Plaintiff's rights. Defendants'

94

wrongful actions and non-actions subjected Plaintiff to unreasonable risk of causing severe

emotional distress and injury. As a direct and proximate result of Defendants' actions and many

non-actions, Plaintiff suffered discomfort, sleep deprivation, anxiety, invasion of privacy, torture,

destruction of community standing, destruction of career standing, post traumatic stress

disorder and emotional distress, and will continue to suffer emotional distress in the future.

(Plaintiff v. BOSHCERT, WILLIAMS, UNKNOWN FBI AGENTS, and KAPPELHOFF)

(B) Employing bug sweeping methods, measures, and instruments that confirmed the

presence of illegal communication devices in Plaintiff's residence and vehicle and then wantonly

denying their validity and neglecting probable cause to the Police and others so as to wrongfully

conceal evidence, perpetuate the commission of the Mafia stalking, extortion, torture, and cause

severe emotional distress. Plaintiff relied on Defendants' methods, measures, and instruments

that were represented as being safe and reliable to Plaintiff and third parties. Defendants owed a

reasonable duty to act prudently and cautiously in protecting Plaintiff from injury but neglected

their duty by denying the reliability of their bug sweeping methods, measures, and results to the

Police and third parties. As a direct and proximate result of Defendants' actions and non-actions,

Plaintiff suffered and will continue to suffer discomfort, severe emotional distress, torture, post

traumatic stress disorder, and other emotional distress distress for which Defendants are joint and

severally liable. (Plaintiff v. Defendants BONINE and A1 PRIVATE INVESTIGATIONS)

(C) Misdiagnosing, concealing, and omitting to disclose facts about the condition of Plaintiff's Audi A4 Quattro despite a reasonable duty to protect Plaintiff from injury and emotional distress. Defendant breached his duty to act cautiously and prudently when he misdiagnosed Plaintiff's vehicle and omitted facts so as to conceal the presence of illegal communication devices and perpetuaute the Mafia stalking, extortion, and torture. As a direct and proximate result of Defendants' actions and non-actions, Plaintiff suffered and will continue to suffer discomfort, severe emotional distress, stalking, extortion, torture, post traumatic stress disorder and other emotional distress for which Defendant is joint and severally liable. (Plaintiff v. Defendant D'ANGELO)

(D) Manufacturing and selling Apple iPods and other Apple equipment that were bugged with illegal communication devices despite a reasonable duty to act cautiously and prudently in protecting Plaintiff from injury and severe emotional distress. Defendant breached its duty when it wrongfully sold Plaintiff Apple products bugged with illegal communication devices that the Mafia proceeded to use to stalk, extort, and torture Plaintiff. Defendant knew or should have known that their conduct involved an unreasonable risk of causing severe emotional distress. As a direct and proximate result of Defendant's wrongful actions and non-actions, Plaintiff suffered discomfort, severe emotional distress, stalking, extortion, torture, post traumatic stress disorder and other emotional distress that he will continue to suffer in the future

96

for which Defendant is joint and severally liable. (Plaintiff v. Defendant APPLE, INC.)

(E) Other communications and joint actions in aid of these measures and furtherance of the ends of disruption, neutralization, and perpetuation of wrongful acts committed against Plaintiff.

(225) Plaintiff is informed and believes that the wrongful acts and/or conduct alleged herein which was perpetuated by Defendants was done maliciously, oppressively, and/or fraudulently and with a wrongful intent of harming and injuring Plaintiff and did in fact harm Plaintiff with an improper evil motive amounting to malice in conscious disregard for the Plaintiff's rights. As a direct and proximate result, Plaintiff is entitled to recover punitive damages from said Defendants.

COUNT VIII: MISSOURI TORT LAW: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS: (Plaintiff v. Defendants BOSCHERT, WILLIAMS, UNKNOWN AGENTS OF THE FBI, KAPPELHOFF, BONINE, A-1 PRIVATE INVESTIGATIONS, D'ANGELO).

(226) Plaintiff re-alleges and incorporates by reference paragraphs 1 through 190 of this Complaint as if fully set forth herein. Plaintiff also incorporates into this cause of action and every allegation set forth in every paragraph of this Complaint, except those that are inconsistent with a cause of action for violation of intentional infliction of emotional distress.

(227) The elements of intentional infliction of emotional distress are: (A) extreme and outrageous conduct by a person who; (B) intentionally or recklessly causes; (C) severe emotional distress to another person.

97

(228) The conduct set forth herein above by Defendants was extreme and outrageous. Said conduct was intended to cause and did cause severe emotional distress, or was done in conscious disregard of the probability of causing such distress.

(229) Overt acts of intentional infliction of emotional distress by Defendants include but are not limited to:

(A) Willfully and knowingly refusing to investigate, correct official misconduct, and denying Plaintiff's complaint so as to prevent the stalking, extortion, and torture for 9 years despite owing a reasonable duty to protect Plaintiff from injury. Defendants' actions and inactions were done so as to constitute an intentional tort that directly or indirectly allowed the Mafia stalking, extortion, and torture to continue. Defendants' wrongful refusal to investigate and intentional neglect of his Constitutional rights caused Plaintiff to suffer severe emotional distress and injury for which Defendants are joint and severally liable. (Plaintiff v. Defendant BOSCHERT, WILLIAMS, UNKNOWN FBI AGENTS, and KAPPELHOFF)

(B) Employing bug sweeping methods, measures, and instruments that confirmed the presence of illegal communication devices and then willfully and knowingly denying their validity, concealing evidence, and causing the Mafia crimes to continue by stating to the Police and others that Plaintiff's residence and vehicle were not bugged so as to intentionally cause severe emotional distress. Defendants owed a reasonable duty to protect Plaintiff from

98

injury and breached their duty when they intentionally impugned the methods, measures, and instruments that they relied on to establish probable cause indicating Plaintiff's residence and vehicle were bugged with illegal communication devices. Defendants' wrongful actions and non-actions subjected Plaintiff to an unreasonable risk of severe emotional distress and injury for which they are joint and severally liable. (Plaintiff v. Defendant BONINE and A1 PRIVATE INVESTIGATIONS)

(C) Willfully and knowingly misdiagnosing, concealing, and omitting to disclose facts regarding the condition of Plaintiff's vehicle and the presence of illegal communication devices so as to cause injury and severe emotional distress to Plaintiff. Defendant owed a duty to protect Plaintiff from injury and emotional distress and breached its duty when it willfully and knowingly misdiagnosed Plaintiff's vehicle and omitted to disclose facts about its condition so as to intentionally conceal the harassing noise caused by illegal communication devices. Defendant's actions and non-actions were done in concert with other Defendants so as to cause severe injury, suffering, and damages thus constituting intentional infliction of emotional distress. (Plaintiff v. Defendant D'ANGELO)

(D) Manufacturing and selling to Plaintiff Apple iPods and other Apple equipment that Defendant bugged with illegal communication devices to intentionally cause severe emotional distress to Plaintiff. Defendant owed a reasonable duty to protect Plaintiff from injury, but

99

nevertheless, breached its duty when it sold Plaintiff bugged iPods and other Apple products. Defendant knew or should have known that their conduct involved an unreasonable risk of causing emotional distress. As a direct and proximate a result of Defendants' outrageous conduct, Plaintiff suffered severe emotional distress, injury, and damages for which Defendant is liable. (Plaintiff v. Defendant APPLE, INC.)

(E) Other communications and joint actions in aid of these measures and furtherance of the ends of disruption, neutralization, and perpetuation of wrongful acts committed against Plaintiff.

(230) As a direct or proximate result of the aforesaid conduct of Defendants, Plaintiff suffered and continues to suffer discomfort, anxiety, humiliation, sleep deprivation, stalking, extortion, torture, destruction of community, destruction of career, post traumatic stress disorder, and will continue to suffer serious emotional distress in the future.

(231) Plaintiff is informed and believes that the wrongful acts and/or conduct alleged herein which was perpetuated by Defendants was done maliciously, oppressively, and/or fraudulently, and with a harmful intent of harming and injuring Plaintiff and did in fact harm Plaintiff with an improper and evil motive amounting to malice and a conscious disregard for the Plaintiff's rights. As a direct and proximate result, Plaintiff is entitled to recover punitive damages from the Defendants.

COUNT IX: MISSOURI TORT LAW: NEGLIGENCE: (Plaintiff vs. All Defendants).

(232) Plaintiff re-alleges and incorporates by reference paragraphs 1 through 190 of this Complaint as if fully set forth herein. Plaintiff also incorporates into this cause of action every allegation set forth in every paragraph of this Complaint, except those that are inconsistent with a cause of action for a violation of negligence.

(233) The elements of negligence are: (A) Defendant had a duty to protect Plaintiff from injury; (B) breach of that duty; and (C) an injury suffered by Plaintiff which was proximately caused by Defendant's breach of duty.

(234) Defendants had a reasonable duty to exercise reasonable care in their professions to protect Plaintiff from injury. By engaging in the conduct set forth herein, Defendants have breached their duty so as to cause severe emotional distress, damages, and injury to Plaintiff.

(235) Overt acts of negligence by Defendants include but are not limited to:

(A) Willfully refusing to investigate and prevent the Mafia stalking, extortion, and torture of Plaintiff for 9 years despite owing a duty to act as reasonable and prudent men in protecting Plaintiff from injury and defending his rights. Defendants breached their duty to protect Plaintiff from injury by refusing Plaintiff an investigation and preventing the crimes from occurring despite probable cause, policies, Constitutional rights of Plaintiff, and other standards and statutes in support of human decency. As a direct and proximate result, Plaintiff suffered and continues to suffer injury, damages, and severe emotional distress for which Defendants' are

101

joint and severally liable. (Plaintiff v. Defendant BOSCHERT, WILLIAMS, UNKNOWN FBI AGENTS, and KAPPELHOFF)

(B) Willfully employing bug sweeping methods, measures, and instruments that produced positive bug sweep results that indicated Plaintiff's residence and car were bugged with illegal communication devices and then wrongfully concealing their results to the Police and others so as to willfully and knowingly perpetuate the Mafia stalking, extortion, and torture of Plaintiff. The Defendants breached their duty to act as reasonable, cautious, and prudent men in protecting Plaintiff from injury by making reckless statements to investigators and concealing facts. The wreckless statements and concealment were willfully made despite probable cause so as to demonstrate malicious neglect of Plaintiff's health, rights, and safety. As a direct and proximate result of Defendants' wrongful actions and inactions, Plaintiff suffered and continues to suffer damages, injury, and severe emotional distress for which Defendants are joint and severally liable. (Plaintiff v. Defendant BONINE and A1 PRIVATE INVESTIGATIONS)

(C) Wrongfully misdiagnosing, concealing, and omitting to disclose facts about Plaintiff's Audi A4 Quattro despite owing a duty to protect Plaintiff from injury. Defendant breached their duty to act as reasonable, cautious, and prudent men when they proceeded to misdiagnose, conceal, and omit facts about Plaintiff's vehicle so as to deceive him, perpetuate the Mafia's use of illegal communication devices, and prevent Plaintiff from reporting the Mafia

102

wrongs to the Police and others. As a direct and proximate result of Plaintiff's wrongful actions and non-actions, Plaintiff suffered and continues to suffer injury, damages, and severe emotional distress for which Defendant is joint and severally liable. (Plaintiff v. Defendant D'ANGELO)

(D) Wrongfully manufacturing Apple iPods and other Apple equipment with illegal communication devices so as to perpetuate the Mafia stalking, extortion, and torture. Defendant owed a duty to act prudently and cautiously in protecting Plaintiff from injury in the manufacturing of their iPods and other equipment that they manufactured and sold to Plaintiff. As a direct and proximate result of Defendant's breach of duty, Plaintiff suffered and continues to suffer injury, damages, and severe emotional distress for which Defendant is joint and severally liable. (Plaintiff v. Defendant APPLE, INC.)

(E) Other communications and joint actions in aid of these measures and furtherance of the ends of disruption, neutralization, and perpetuation of wrongful acts committed against Plaintiff.

(236) As a direct or proximate result of the said conduct of Defendants, Plaintiff has suffered and continues to suffer discomfort, emotional distress, anxiety, invasion of privacy, stalking, extortion, torture, humiliation, destruction of community standing, destruction of career standing, post traumatic stress disorder and emotional distress, and will continue to suffer serious emotional distress in the future.

103

(237) Plaintiff is informed and believes that the wrongful acts and/or conduct alleged herein which was perpetuated by the Defendants was done maliciously, oppressively, and/or fraudulently and with a wrongful intent of harming and injuring Plaintiff and did in fact harm Plaintiff with an improper evil motive amounting to malice in conscious disregard for the Plaintiff's rights. As a result, Plaintiff is entitled to recover punitive damages from said Defendants.

## COUNT X: MISSOURI TORT LAW: MISSOURI MERCHANDISING PRACTICES

## ACT: (Plaintiff vs. Defendants BONINE, A1 PRIVATE INVESTIGATIONS, and

## D'ANGELO).

(238) Plaintiff re-alleges and incorporates by reference paragraphs 1 through 190 of this Complaint as if fully set forth herein. Plaintiff also incorporates into this cause of action every allegation set forth in every paragraph of this Complaint, except those that are inconsistent with a cause of action for violation of Missouri Merchandising Practices Act (MMPA).

(239) The MMPA, Section 407.020, RSMo 1994, provides as follows:

(A) The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, as defined in section 407.452, in or from the State of Missouri, is declared to be an unlawful practice. The use by any person, in connection with the sale or advertisement of any merchandise in trade or commerce or

104

the solicitation of any funds for any charitable purpose, as defined in section 407.453, in or from

the State of Missouri of the fact that the attorney general has approved any filing required by this

chapter as the approval, sanction or endorsement of any activity, project or action of such person,

is declared to be an unlawful practice. Any act, use or employment declared unlawful by this

subsection violates this subsection whether committed before, during or after the sale,

advertisement or solicitation.

(240) Section 407.010, RSMo 1994 defines "merchandise" as any object, wares, goods,

commodities, intangibles, real estate or service.

(241) Section 407.100, RSMo 1994 authorizes the Plaintiff to seek injunctive relief,

restitution, civil penalties and other relief against persons who have engaged in or are engaging

in violations of the MMPA.

(242) Section 407.130, RSMo 1994 provides that Plaintiff may recover as costs, in

addition to normal Court costs, the cost of the investigation and prosecution of any action

brought pursuant to the MMPA.

(243) Defendants have violated the MMPA by engaging in the unlawful practices

specified in § 407.020 in connection with the wrongful conduct alleged in every paragraph of

this Complaint.

(244) Overt acts by Defendants include but are not limited to:

(A) Misrepresenting, directly or by implication, a professional bug sweep that Plaintiff

could rely on to produce reliable results. Defendants employed bug sweeping methods,

measures, and instruments that produced bug sweep results that indicated Plaintiff's St. Louis

County residence and Toyota Camry were bugged with illegal communication devices. Plaintiff

relied on Defendants' methods, measures, and instruments that were purposely represented as

being safe and reliable to Plaintiff and third parties. Defendant proceeded to deny their methods,

measures and instruments so as to conceal facts and misrepresent their services and ability to

perform a bug sweep. (Plaintiff v. Defendants BONINE and A1 PRIVATE INVESTIGATIONS)

(B) Misrepresenting, directly or by implication, repairs performed on an Audi A4 Quattro

by wrongfully misdiagnosing, concealing, and omitting to disclose facts relating to the condition

of Plaintiff's vehicle. Defendants' wrongful actions and non-actions included proffering to

Plaintiff a non-Audi wheel bearing part as proof of services rendered so as to maliciously

deceive Plaintiff into believing his Audi had a loose wheel bearing. Plaintiff relied on Defendant

and had a right to rely on Defendant's representations. As a direct and proximate result of

Defendant's wrongful actions and non-actions, Defendant violated the MMPA. (Plaintiff v.

Defendant D'ANGELO)

(C) Misrepresenting, directly or by implication, by advertising Apple iPods and other

Apple equipment as safe, harmless, and non-defective products and then manufacturing them

with illegal communication devices. Defendant maliciously concealed and omitted material facts about risks associated with using Apple iPods so as to promote Apple products in a false light of being harmless and safe. Plaintiff relied on and had a right to rely on Defendant's representations. As a direct and proximate result of Defendant's wrongful actions and non-actions, Plaintiff suffered damages and injury for which Defendant is joint and severally liable. (Plaintiff v. Defendant APPLE, INC.)

(D) Other communications and joint actions in aid of these measures and furtherance of the ends of disruption, neutralization, and perpetuation of wrongful acts committed against Plaintiff.

(245) As a direct or proximate result of the said conduct of Defendants, Plaintiff has suffered and continues to suffer discomfort, emotional distress, anxiety, invasion of privacy, stalking, extortion, torture, humiliation, destruction of community standing, destruction of career standing, post traumatic stress disorder and emotional distress, and will continue to suffer serious emotional distress in the future.

(246) Plaintiff is informed and believes that the wrongful acts and/or conduct alleged herein which was perpetuated by the Defendants was done maliciously, oppressively, and/or fraudulently and with a wrongful intent of harming and injuring Plaintiff and did in fact harm Plaintiff with an improper evil motive amounting to malice in conscious disregard for the Plaintiff's rights. As a result, Plaintiff is entitled to recover punitive damages from said Defendants.

107

COUNT XI: MISSOURI TORT LAW: CIVIL CONSPIRACY: (Plaintiff vs. All Defendants).

(247) Plaintiff re-alleges and incorporates by reference paragraphs 1 through 190 of this Complaint as if fully set forth herein. Plaintiff also incorporates into this cause of action every allegation set forth in every paragraph of this Complaint, except those that are inconsistent with a cause of action for violation of civil conspiracy.

(248) In the State of Missouri, the elements of conspiracy are: (A) two or more persons, (B) with an unlawful objective or unlawful means, (C) after a meeting of the minds, agreement, or mutual understanding, (D) committed at least one act in furtherance of the conspiracy, and (E) the plaintiff was thereby damaged.

(249) Overall agreement to commit an illegal act, which establishes single conspiracy, can be inferred when participants shared a common aim or purpose and mutual dependence and assistance existed. U.S. v. Morales, 113 F.3d 116, C.A.8 (Mo.) 1997. Additionally, a conspiracy may be shown by circumstantial evidence; it is not necessary to prove by direct evidence an agreement to commit a crime in order to establish conspiracy. State v. Menz, 106 S.W.2d 440, 341 (Mo.) 75, (Mo.) 1937.

(250) Thus it was the object of conspiracy by the Defendants:

(A) To intentionally and willfully combine, conspire and agree with one another for the purpose of accomplishing the unlawful ends alleged or accomplishing lawful ends unlawfully as alleged in all other Counts of this Complaint, all of which are incorporated by this reference, and for the purposes of performing the acts, among others, set forth above in the Factual Allegations.

108

(251) Overt acts by the Defendants in furtherance of conspiracy include but are not limited to:

(A) Acting in concert with the Mafia and other Defendants by refusing to investigate, correct official misconduct, and denying Plaintiff's complaint of stalking, extortion, and torture for 9 years despite a duty to protect Plaintiff's rights and prevent him from injury. Defendants used unlawful means or shared an unlawful purpose with the Mafia and other Defendants by denying him protection of his rights after testimony and evidence was proffered that established probable cause of him being stalked, extorted, and tortured. The perpetuation of the stalking, extortion, and torture was a common goal shared by all of the Defendants. As a direct and proximate result of Defendants' wrongful actions and inactions, Plaintiff suffered and continues to suffer damages for which Defendants are joint and severally liable. (STLPD, Boschert, Williams, 6 Unknown FBI Agents, Kappelhoff)

(B) Acting in concert with the Mafia and other Defendants by intentionally making false and malicious statements to the STLPD and others so as to willfully and knowingly perpetuate the Mafia stalking, extortion, and torture. Defendants unlawfully stated to Police and others that Plaintiff's residence and vehicle were not bugged despite probable cause so as to obstruct an investigation and perpetuate the Mafia stalking, extortion, and torture. Defendant shared an unlawful purpose and mutual understanding with other Defendants to perpetuate the

109

Mafia crimes. As a direct and proximate result of Defendants' conspiring to perpetuate the Mafia stalking, extortion, and torture, Plaintiff suffered and continues to suffer severe damages for which Defendants are joint and severally liable. (Plaintiff v. Defendant BONINE and A1 PRIVATE INVESTIGATIONS)

(C) Acting in concert with the Mafia and other Defendants by willfully and knowingly concealing facts relating to the condition of Plaintiff's 1998 Audi and presence of illegal communication devices. In accord with the actions and inactions of other Defendants and the Mafia, Defendant's unlawful conduct was done so as to perpetuate the stalking, extortion, and torture. Accordingly, Defendant shared a meeting of the minds, common goal, or mutual understanding with the other Defendants and the Mafia. As a direct and proximate result, Plaintiff suffered and continues to suffer unreasonable pain, suffering, and injury for which Defendant is joint and severally liable. (Plaintiff v. Defendant D'ANGELO)

(D) Acting in concert with the Mafia and other Defendants by willfully and knowingly manufacturing an iPod Shuffle, Mini, Touch, Nano, and other Apple equipment with illegal communication devices so as to maliciously abet the stalking, extortion, and torture. Defendant shared an unlawful purpose with the Mafia and other Defendants or used unlawful means to inflict severe emotional distress and perpetuate the Mafia stalking, extortion, and torture. Accordingly, Defendant shared a common goal or mutual understanding with the Mafia and

110

other Defendants. As a direct and proximate result of the Defendant's wrongful actions and inactions, Plaintiff suffered and continues to suffer damages for which Defendant is joint and severally liable. (Plaintiff v. Defendant APPLE, INC.)

(E) Other communications and joint actions in aid of these measures and furtherance of the ends of disruption, neutralization, and perpetuation of wrongful acts committed against Plaintiff.

(252) As a direct or proximate result of the wrongful conduct of Defendants, Plaintiff has suffered and continues to suffer discomfort, emotional distress, anxiety, invasion of privacy, stalking, extortion, torture, humiliation, destruction of community standing, destruction of career standing, post traumatic stress disorder and emotional distress, and will continue to suffer serious emotional distress in the future.

(253) Plaintiff is informed and believes that the wrongful acts and/or conduct alleged herein which was perpetuated by the Defendants was done maliciously, oppressively, and/or fraudulently and with a wrongful intent of harming and injuring Plaintiff and did in fact harm Plaintiff with an improper evil motive amounting to malice in conscious disregard for the Plaintiff's rights. As a result, Plaintiff is entitled to recover punitive damages from said Defendants.

## COUNT XII: MISSOURI TORT LAW: AIDING AND ABETTING: (Plaintiff vs. All

### Defendants).

(254) Plaintiff re-alleges and incorporates by reference paragraphs 1 through 190 of this Complaint as if fully set forth herein. Plaintiff also incorporates into this cause of action every

111

allegation set forth in every paragraph of this Complaint, except those that are inconsistent with a cause of action for violation of aiding and abetting.

(255) Defendants knowingly aided and abetted each other and outside sources in furtherance of the Mafia stalking, extortion, torture, and other law violations described in all other Counts of this Complaint.

(256) Plaintiff has been damaged and continues to suffer damages by the wrongful conduct of Defendants.

(257) The wrongful actions of Defendants were willful and in reckless disregard for the Plaintiff's health, safety, and rights so as to cause damages and injury for which Defendants are joint and severally liable.

# COUNT XIII: MISSOURI TORT LAW: TORTIOUS INTERFERENCE OF AN EXPECTED BUSINESS INCOME: (Plaintiff vs. Defendants BOSCHERT, WILLIAMS, UNKNOWN FBI AGENTS).

(258) Plaintiff re-alleges and incorporates by reference paragraphs 1 through 190 of the Complaint as if fully set forth herein. Plaintiff also incorporates into this cause of action every allegation set forth in every paragraph of this Complaint, except those that are inconsistent with a cause of action for violation of tortious interference of an expected business income.

(259) The elements of tortious interference of an expected business income are: (A) a

112

contract or business relationship or expectancy in existence, (B) Defendant's knowledge of that contract or relationship, (C) Defendant intentionally induced or caused the breach of contract, (D) Defendant's acts were not justified, and (E) Plaintiff sustained damages as a result of Defendant's conduct.

(260) Plaintiff had a material relationship or reasonable business expectancy from 1999 to the present as a model and actor in New York City, New York and other US cities that was proven in his modeling and acting contracts with Bossmodels in New York City, Arlene Wilson Management in Chicago, Centro Models in St. Louis, West Model and Talent Management in St. Louis, Q Model Management in Los Angeles, and Pacific Talent and Model Management in Los Angeles.

(261) Plaintiff's material relationship or reasonable business expectancy was also demonstrated in his loss of income and attempts to continue modeling and acting since the time prior to the Mafia conspiracy and dates continuing thereafter.

(262) Overt acts of tortious interference of an expected business income include, but are not limited to:

(A) Refusing to investigate and denying for 9 years Plaintiff's complaint of Mafia stalking, extortion, and torture. Defendants knew or should have known from Plaintiff's complaints that the wrongs committed by the Mafia were attempts to control Plaintiff's

113

modeling, acting, and professional career. As demonstrated in Plaintiff's loss of modeling

income caused by Defendants acting outside their official capacities in allowing the Mafia

extortion, Defendants wrongfully induced a breach in Plaintiff's contractual relationship or

business expectancy as a model and actor. As a direct and proximate result, Plaintiff lost

modeling and acting income, job stability, community standing, and career standing for which

Defendants are joint and severally liable.

(B) Other communications and joint actions in aid of these measures and furtherance of

the ends of disruption, neutralization, and perpetuation of wrongful acts committed against

Plaintiff.

(263) As a direct or proximate result of Defendants who intentionally allowed the Mafia

stalking, extortion, and torture, Plaintiff lost modeling and acting income from 2000 to

2009. Plaintiff's estimated annual income was $550,000 per each year, or $4,950,000.00 for 9

years.

(264) Plaintiff has suffered and will continue to suffer injury and damages as set forth

above for which Defendants are joint and severally liable. Defendants acted with malice and with

willful, wanton, and reckless disregard for Plaintiff's rights, safety, and loss of income to the

extent that punitive damages are justified and appropriate.

## COUNT XIV: MISSOURI TORT LAW: FRAUDULENT MISREPRESENTATION AND

## OMISSION: (Plaintiff vs. Defendants BONINE, A1 PRIVATE INVESTIGATIONS,

## D'ANGELO, and APPLE, INC.).

(265) Plaintiff re-alleges and incorporates by reference paragraphs 1 through 190 of this Complaint as if fully set forth herein. Plaintiff also incorporates into this cause of action every allegation set forth in every paragraph of this Complaint, except those that are inconsistent with a cause of action for violation of fraudulent misrepresentation and omission.

(266) The elements of fraudulent misrepresentation are: (A) a representation; (B) its falsity; (C) its materiality; (D) the speaker's knowledge of its falsity, or ignorance of the truth; (E) the speaker's intent that the representation be acted on; (F) the hearer's ignorance of the falsity of the representation; (G) the hearer's reliance on the truth of the representation; (H) the hearer's right to rely on the representation; and (I) the hearer's consequent and proximate injury. (Herber v. Shell Oil Co., 744 S.W.2d 441, 443 (Mo. Banc 1988).

(267) Thus it was the object of fraudulent misrepresentations and omissions:

(A) The Defendants through verbal communications, actions, and inactions, willfully made material representations with the intent that Plaintiff rely on them. Defendants' representations were knowingly false or they were ignorant of their falsity, and, Plaintiff had a right to rely on these representations.

(268) Overt actions by Defendants include but are not limited to:

115

(A) Misrepresenting, directly or by implication, a professional bug sweep that could produce reliable results. Defendants employed bug sweeping methods, measures, and instruments that produced bug sweep results indicating Plaintiff's residence and vehicle were bugged and then wrongfully denyied them by stating to the STLPD and others that Plaintiff's residence and vehicle were not bugged. Defendants' representations were intentionally made so that Plaintiff, Police, and others rely on them. The Defendant was ignorant of the truth or knew of the falsity of their representations. As a direct and proximate results of Defendants' misrepresentation, Plaintiff incurred damages, suffering, and injury for which Defendants are joint and severally liable. (Plaintiff v. Defendant BONINE, and A1 PRIVATE INVESTIGATIONS)

(B) Misrepresenting, directly or by implication, honest services that Defendant could successfully perform on Plaintiff's Audi. Defendant diagnosed Plaintiff's Audi as having a loose wheel bearing and proceeded to omit material facts about services performed so as to conceal its condition and presence of illegal communication devices being used to stalk, extort, and torture Plaintiff. Defendant was ignorant of the truth of his representation or knew of its falsity. Plaintiff was unaware of the falsity of Defendant's misrepresentation and had a right to rely on it. As a direct and proximate result of Defendant's misrepresentation, Plaintiff incurred damages, suffering, and injury for which Defendant is liable. (Plaintiff v. Defendant D'ANGELO)

116

(C) Misrepresenting, directly or by implication, Apple iPods and other Apple equipment as being safe and reliable products and then manufacturing and selling them with illegal communication devices to sell them to Plaintiff so as to abet the Mafia stalking, extortion, and torture. Plaintiff was unaware that the iPods and other Apple equipment were bugged with illegal communication devices and had a right to rely on Defendant's representation. As a direct and proximate result of Defendant's misrepresentation, Plaintiff incurred damages, suffering, and injury for which Defendant is joint and severally liable. (Plaintiff v. Defendant APPLE, INC.)

(D) Other communications and joint actions in aid of these measures and furtherance of the ends of disruption, neutralization, and perpetuation of wrongful acts committed against Plaintiff.

(269) As a direct or proximate result of the said conduct, Plaintiff has suffered and continues to suffer discomfort, sleep deprivation, anxiety, invasion of privacy, stalking, extortion, torture, humiliation, destruction of community standing, destruction of career standing, post traumatic stress disorder and emotional distress, and will continue to suffer serious emotional distress in the future.

(270) Plaintiff is informed and believes that the wrongful acts and/or conduct alleged herein which was perpetuated by the Defendants was done maliciously, oppressively, and/or fraudulently and with a wrongful intent of harming and injuring Plaintiff and did in fact harm Plaintiff with an improper evil motive amounting to malice in conscious disregard for the Plaintiff's rights. As a result, Plaintiff is entitled to recover punitive damages from said

117

Defendants.

## COUNT XV: MISSOURI TORT LAW: UNJUST ENRICHMENT/RESTITUTION:

(Plaintiff vs. Defendants BONINE, D'ANGELO, APPLE INC.).

(271) Plaintiff re-alleges and incorporates by reference paragraphs 1 through 190 of the Complaint as if fully set forth herein. Plaintiff also incorporates into this cause of action every allegation set forth in every paragraph of this Complaint, except those that are inconsistent with a cause of action for violation of unjust enrichment/restitution.

(272) Defendants, through their wrongful conduct, as described in the foregoing allegations and all of the Counts of this Complaint, have reaped unjust rewards for their wrongful conduct. As a direct and proximate result, Defendants have caused Plaintiff to suffer substantial economic loss and other costs directly attributable to the Counts alleged herein.

(273) In equity and good conscience, it would be unjust for Defendants to enrich themselves at the expense of Plaintiff. Further, in equity and in fairness, Defendants, and not the Plaintiff, should bear the costs associated as a direct and proximate cause of their wrongful actions and have a duty to do so. Defendants have wrongfully forced Plaintiff to pay additional costs for their wrongful actions alleged in every paragraph of this Complaint.

(274) Defendants' unlawful conduct will continue unless the relief prayed for is granted.

118

COUNT XVI: PRELIMINARY INJUNCTION: (Plaintiff vs. All Defendants).

(275) Plaintiff re-alleges and incorporates by reference paragraphs 1 through 190 of the Complaint as if fully set forth herein. Plaintiff also incorporates into this cause of action every allegation set forth in every paragraph of this Complaint, except those that are inconsistent with a cause of action for injunctive relief.

(276) Pursuant to the rights afforded Plaintiff by the Constitution, US Crime Victims' Rights Act, and other laws and statutes of the United States, Plaintiff is entitled to preliminary relief to end the Mafia stalking, extortion, torture, and other wrongs that continue to violate his Constitutional rights to the present day.

(277) Plaintiff will continue to suffer irreperable injury as a direct and proximate result of the wrongful conduct detailed in the foregoing allegations and Counts of this Complaint in that the Mafia stalking, extortion, torture, and controlling of Plaintiff will continue so long as Defendants continue in their malicious and wanton rejection of his complaint and Constitutional rights. In the event that injunction is not granted, Plaintiff will continue to suffer discomfort, emotional distress, anxiety, invasion of privacy, stalking, extortion, torture, humiliation, destruction of community standing, destruction of career standing, post traumatic stress disorder, serious emotional stress in the future, and possibly death.

(278) The continued Mafia conspiracy and wrongs committed by Defendants will also expose citizens of the United States, the Court, and others to its dangers so as to perpetuate in

119

epidemic numbers the widespread corruption of individuals coerced or enticed to participate in the conspiracy so as to subject them to criminal and civil liability in multiple lawsuits.

(279) Plaintiff has suffered and will continue to suffer substantial injuries and damages for which he is entitled preliminary injunction and other Court orders necessary to protect his safety and Constitutional rights.

## PRAYER FOR RELIEF

(280) WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for compensatory damages in the amount of One Million Dollars from each Defendant for each violation of his Constitutional rights. Plaintiff reserves the right to augment his prayer for these damages if any Defendant is found to have helped proximately cause the stalking, extortion, and torture itself;

(281) Plaintiff prays in addition against Defendants, jointly and severally, for statutory damages in proper amounts for the Defendants' aiding and abetting the Mafia conspiracy and use of illegal communication devices, which in accord with 18 U.S.C. 2511 is $100 each day or $10,000, whichever is greater, since the beginning of the conspiracy on or around August 15, 2000 to the present and continuing.

(282) Plaintiff also prays against Defendants, jointly and severally, for compensatory damages for lost income and wages in the amount of $550,000 per each year since the time when

120

the Mafia conspiracy began in August, 15 2000 and continuing to the present and future.

(283) Plaintiff prays in addition against Defendants, jointly and severally, for punitive damages in proper amounts found by the Jury against each of the individual Defendants found to have participated in impugning, neglecting, violating, oppressing, conspiring, or denying his Constitutional rights and abetting the Mafia stalking, extortion, torture, and other wrongs committed by Defendants.

(284) Plaintiff prays in addition against Defendants, jointly and severally, for treble damages in proper amounts found by the Jury against each of the individual Defendants found to have participated in impugning, neglecting, violating, oppressing, conspiring, or denying his Constitutional rights and abetting the Mafia stalking, extortion, torture, and other wrongs committed by Defendants;

(285) Plaintiff also prays for preliminary injunction enjoining Defendants the STLPD, BOSCHERT, WILLIAMS, UNKNOWN FBI AGENTS, KAPPELHOFF, and their agents, employees, representatives, successors, assigns and all other persons acting in concert with or participating with Defendants, who have actual or constructive notice of the Court's injunction, an investigation into the conduct of Defendants. Plaintiff prays that the investigation include the employment of all techniques for an aggressive investigation, including but not limited to: interrogation of witnesses and Defendants, search warrants, bug sweeps, traces of illegal satellite

communications, imprisonment, protection of witnesses, the application of all US laws and statutes, and other methods designed to bring forth an action, punish conspirators, and end the Mafia stalking, extortion, torturing, and violating of Plaintiff's Constitutional rights.

(286) Plaintiff also prays for preliminary injunction enjoining all Defendants and their agents, employees, representatives, successors, assigns and all other persons acting in concert with or participating with Defendants, who have actual or constructive notice of the Court's injunction, from engaging in any of the unlawful practices alleged in all other counts of this Petition;

(287) Order all Defendants, jointly and severally, to provide full restitution to Plaintiff to whom they collected monies and who aggrieved Plaintiff by the unfair, unlawful and deceptive practices alleged herein;

(288) Award the costs of this action, including costs of investigation, reasonable attorney fees, and the costs associated with filing the lawsuits under 42 USC 1983, 1985, 1986, 1988 and the cases; and;

(289) Award such further relief as is warranted by the facts and the law that the Court deems equitable.

(290) Plaintiff demands Trial By Jury and respectfully asks the Court for such other relief as may be just, including but not limited to declaratory relief, as aforesaid.

Respectfully submitted,

Gregory McKenna
Pro Se Plaintiff
9937 Young Drive, H
Beverly Hills, CA 90212
(310) 213-8851

123