United States District Court
EASTERN DISTRICT OF MISSOURI

GREGORY MCKENNA,
    Plaintiff
    Vs.
THE ST. LOUIS COUNTY POLICE DEPARTMENT,
OFFICERS CHARLES BOSCHERT, KENNETH
WILLIAMS, 8 UNKNOWN AGENTS OF THE
FEDERAL BUREAU OF INVESTIGATION,
MARK KAPPELHOFF, APPLE INC., A-1
PRIVATE INVESTIGATIONS, TIMOTHY
BONINE, D'ANGELO AUTOMOTIVE,
    Defendants

Case No. 4:09cv1113CDP

**JURY DEMANDED**

---

### PLAINTIFF'S MOTION TO PROFFER EVIDENCE IN SUPPORT OF HIS MOTION FOR PRELIMINARY INJUNCTION

COMES NOW, pro se Plaintiff Gregory McKenna, and pursuant to his Motion for Preliminary Injunction, Plaintiff proffers the following evidence as probable cause of continuing statutory violations of the US Crime Victims' Rights Act, Communications Act, and others:

**I. Plaintiff's Sworn Testimony Stated In His Complaint And Hearsay As Probable Cause of Statutory Violations**

In actions for statutory injunctions, moving party need only show that probable cause exists to believe that a statute in question is being violated and that there is some reasonable likelihood of future violation; no specific or immediate showing of precise way in which violations of law will result in public harm is required. U.S. v. Richlyn Laboratories, Inc., 827 F.Supp. 1145, (E.D.Pa. 1992). Probable cause exists when a prudent person would believe that a

crime had been, or was soon to be, committed. U.S. v. Fahsi, 102 F.3d 363 (C.A.8 (Mo.) 1996). Furthermore, probable cause does not require a prima facie showing of criminal activity, but only probability of criminal activity. U.S. v. Henry, 763 F.2d 329 (C.A.8 (Mo.) 1985). A district court may consider hearsay in deciding whether to issue a preliminary injunction. *Republic of the Philippines v. Marcos,* 862 F.2d 1355, 1363 (9th Cir.1988) (en banc); *see also Flynt Distrib. Co. v. Harvey,* 734 F.2d 1389, 1394 (9th Cir.1984).

In Plaintiff's Complaint, he swears in his testimony as a witness to the stalking, extortion, and exaction conspiracy (See Complaint's cover page). Hearsay evidence is sufficient to establish probable cause of a crime because it is not offered for its truth, but to explain the basis for a belief that probable cause to arrest existed. State v. Holt, 695 S.W.2d 474, 478 (Mo. App. 1985). Every person is competent to be a witness except as otherwise provided by the rules, and generally, the court assumes everyone is truthful to their oath of honesty. (Federal Rules of Civil Procedure, Rule 602). Additionally, any evidence such as Plaintiff's testimony having a tendency to make the existence of a fact more probable than it would be without evidence is considered relevant, and, all relevant evidence is considered admissible (F.R.C.P., Rules 401 and 402). Accordingly, Plaintiff's Complaint alleges specific instances when he was maliciously neglected by Defendants the St. Louis County Police and FBI despite evidence of positive confirmations of bug sweeps, audio and video recordings of Mafia death threats, audio and video recordings of Mafia harassment, witness' testimonies to the Mafia harassment, Plaintiff's testimony of the Mafia conspiracy, bugged electronic devices, and other evidence. (Complaint, ¶¶ 1-290, all paragraphs incorporated herein by reference). Since Plaintiff's Complaint contains direct evidence and hearsay evidence of the Mafia's use of illegal communication devices to stalk,

2

extort, and torture him, probable cause exists of statutory violations of the US Crime Victims' Rights Act, Illegal Communications Act, and others. Thus, an injunction is necessary to maintain the status quo.

Plaintiff's Complaint is heavily supported with specific instances that prove Defendant the FBI maliciously neglected to enforce the US Crime Victims' Rights Act, Illegal Communications Act, and others. Plaintiff proffers a transcript of UNKNOWN FBI AGENT #10's malicious neglect of his request for emergency assistance. (Complaint, ¶177). After Plaintiff alleged the Mafia was stalking him, threatening him, and bugging his residence, he was denied assistance, hung-up on, and then allowed to be victimized and potentially murdered by the Mafia. *Id.* The FBI's neglect is the exact same type of criminal negelct that Plaintiff experienced when he contacted the FBI when Mafia members arrived at his door and threatened to murder and rape him with guns in September of 2000. (Complaint, ¶¶ 5, 6, 7, 51, 53, 54; See also ¶¶ 56, 57, 65, 67, 100-102, 119, 170, 177, 186, 189). Effectively, probable cause of violations of the US Crime Victims' Rights Act, the Communication Act, and others exists. Therefore, a preliminary injunction is necessary to prevent the statutory violations.

## II. Bug sweeps conducted by Expert Witnesses and the Plaintiff

Plaintiff proffers positive confirmations of bug sweeps conducted by private investigators and himself at his St. Louis and Los Angeles residences that prove probable cause of the existence of illegal communication devices being used to stalk, extort, and torture him. Plaintiff's bug detector package, the CS Pro 25 countersurveillance package, includes the Counter Surveillance Device-21 bug detector (CSD-21), the Silent But Deadly-5H bug detector (SBD-5H), and the DET-2 radio frequency meter. "The CSD-21 is considered 'the world's best

3

selling counter surveillance detector' and is the exact same bug detector used by the LAPD, Dallas Police Department, US Department of Defense, Environmental Protection Agency, United Nations, and many other government agencies and Fortune 500 companies." (Complaint, ¶126). In accord with criminal cases, a positive bug sweep confirmation using the CS Pro 25 countersurveillance package is probable cause of the use of illegal communication devices.

On April 2, 2007, Plaintiff proceeded to conduct a telephone tap test for eavesdropping devices using the CSD-21 bug detector at his St. Louis County residence (See Exhibit 2 incorporated herein by reference). Plaintiff was prompted to administer the test because the Mafia was allegedly interfering with his telephone conversations, eavesdropping on him to know his whereabouts at all times, and harassing him through illegal receivers planted in electronic devices (Complaint ¶¶ 78, 96, 128-129, 179, 190). According to the CSD-21's instruction manual (See Exhibit 3 incorporated herein by reference), "If, AT ANY TIME, the needle noticebly 'bounces' and approaches 5.5, this indicates the presence of a polarity negating telephone recording or telephone transmitting device." *Id*. Concurrently, when Plaintiff performed the telephone tap test while following every step of the instruction manual to precision, the needle proceeded to "bounce" to 5.5 on the meter so as to indicate with 100% certainty that Plaintiff's telephone line was tapped. *Id.* The test proved that Plaintiff's St. Louis telephone line was tapped and that the Mafia was using illegal communication devices to stalk, extort, and exact him. Notwithstanding, the STLPD and FBI persisted in the malicious neglect of Plaintiff's complaint by ignoring the evidence and willfully allowing the US Crime Victims' Rights Act, Communications Act, and other statutory rights violations to continue. (Complaint ¶¶ 132, 133, 135, 145).

4

Plaintiff also proceeded to hire private investigators to conduct professional bug sweeps of his St. Louis and Los Angeles residences. On July 27, 2009, Plaintiff hired Maxum detective agency to perform a professional bug sweep of his Beverly Hills residence. (See Exhibit 4 incorporated herein by reference). According to the private investigator's report, "...a highly significant level of radio frequencies were discovered originating from a non-transient source that verified the existence of low powered covert devices...the verifers' positive readings establish probable cause for the presence of covert devices in the victinity of client's residence." *Id.* The positive bug sweep clearly established probable cause of the existence of illegal communication devices. Accordingly, because probable cause of violations of the Communication Act clearly exists, an injunction is necessary to maintain the status quo.

### III. Recordings of Death Threats and Harassment from Illegal Communication Devices

On January 25, 2008, Plaintiff received death threats from his iPod Mini by Mafia members stalking, harassing, and sleep depriving him while living in Los Angeles. (Complaint ¶155). The death threats repeatedly stated, "I'm about to kill him," as Plaintiff proceeded to record the threats in audio and video format. (See Exhibit 5 and 6 incorporated herein by reference). Plaintiff used his iPod Mini to prevent sleep deprivation from illegal communication devices planted in his residence. (Complaint ¶ 154). After obtaining audio and video recordings of death threats stating, "I'm about to kill him," while listening to the song Cafe Style by the artist Toka Project, the Mafia members proceeded to continue playing the threats in unison with the song in an attempt to deceive Plaintiff and others into believing that the death threats were part of the song. (Complaint ¶ 157).

Plaintiff obtained a new iPod Touch on February 8, 2009 that was subsequently used to

5

prevent the Mafia from using illegal communication devices to stalk, extort, and torture him. (Complaint ¶ 179). On March 24, 2009, Plaintiff proceeded to download the song from the website, Youtube, to determine if the song would continue to play death threats on his iPod Touch. (See Exhibit 7 incorporated herein by reference). Plaintiff contacted the song's artist, Andy, via email on July 30, 2009 to ascertain that the threats were not part of the song. (See Exhibit 8 incorporated herein by reference). The dialogue between Plaintiff and Andy prove that the song was never produced with words stating, "I'm about to kill him." *Id.* Concurrently, the recordings prove with clear and convincing certainty that death threats and harassment are being transmitted to Plaintiff's iPods to stalk, extort, and exact him.

According to Wikipedia, an online encyclopedia, the iPod line can play several audio file formats including MP3, AAC/M4A, Protected AAC, AIFF, WAV, Audible audiobook, and Apple Lossless (See http://en.wikipedia.org/wiki/Ipod). An "audio file format" is a file format for storing audio data on a computer system. A "file format" is a particular way that information is encoded for storage in a computer file. Generally, when an audio file is played by an audio player, the audio player reads encoded data that cannot be manipulated or changed when played.

According to Andy and several witnesses who heard the song Cafe Style, the song does not contain threats sounding like, "I'm about to kill him." Further, since the audio data cannot be altered or changed when played, words sounding like, "I'm about to kill him," "herpes," "You're dead," a man's whistling heard in multiple songs, and other recordings Plaintiff obtained prove the existence of a third party intentionally manipulating the data to make it sound like harassment. Necessarily, the harassment and threats prove the existence of illegal communication devices in the iPods being illegally accessed by a third party to stalk, extort and

6

exact the Plaintiff. The illegal accessing of a computer via interstate communication is a federal criminal offense (18 § 1030(a)(2)(c)). Therefore, because the use of illegal communication devices is a violation of the Communications Act and Plaintiff is a crime victim, an injunction is needed to maintain the status quo.

### IV. STLPD and FBI's Neglect of Plaintiff's Complaints

From 2000 to the present, Plaintiff complained to Defendants the STLPD and FBI for the Mafia conspiracy continuing but was maliciously neglected despite their knowledge of Plaintiff being stalked, extorted, and tortured. (Complaint, ¶¶ 5, 6, 7, 47, 49, 51, 53, 54, 56, 57, 65, 67, 81, 98, 100-102, 117, 119, 170, 177, 186, 189 ). After Plaintiff filed a complaint with Defendant the STLPD on March 29, 2009, Plaintiff sent a follow-up letter to Defendant Boschert on April 18, 2007 to ask him whether he intended to investigate and end the Mafia conspiracy. (See Exhibit 10 incorporated herein by reference; Complaint, ¶¶ 131, 133). Although Plaintiff's letter referred to witnesses who agreed to testify to Plaintiff's complaint, Defendant Boschert persisted in his malicious pattern of neglect and ignored the stalking, extortion, and torture. *Id.*

On March 6 and 7, 2009, Plaintiff was forced to file another complaint with Defendants the STLPD and FBI for the Mafia conspiracy continuing. (Complaint ¶¶ 183-186). On March 6, 2009, Plaintiff proceeded to follow-up with a written letter to Defendant the FBI for the Police neglect and continuing Mafia crimes. (See Exhibit 11 incorporated herein by reference). Plaintiff alleged violations of the US Crime Victims' Rights Act and his Fourteenth Amendment right to freedom from deprivation, Due Process, and equal protection of the laws. *Id.* Notwithstanding knowledge of the Mafia conspiracy continuing and Plaintiff's rights being violated, the STLPD and FBI continued to allow the stalking, extortion, and exaction. The Defendants' neglect of

7

Plaintiff's complaint violated the US Crime Victims' Rights Act, Communications Act, and other statute violations that continue. Thus, an injunction is necessary to maintain the status quo.

### V. Expert Witness Testimony To Damages Caused By the Mafia Conspiracy

Plaintiff sought medical assistance in July of 2006 for the Mafia stalking, extortion, and torture being neglected by the Defendants. (Complaint ¶ 116). On October 26, 2009, Plaintiff's therapist, Jerry Clerc, wrote a letter to testify to medical damages being incurred for the continuing Mafia stalking, extortion, and torture. (See Exhibit 12 incorporated herein by reference). Jerry Clerc's letter and diagnosis of post traumatic stress disorder proved Plaintiff currently suffers as a victim of the Mafia crimes. Therefore, probable cause exists of violations of the US Crime Victims' Rights Act and an injunction is necessary.

### CONCLUSION: An Emergency Injunction Is Needed To Protect Plaintiff and the Public

Plaintiff is not an attorney and is a continuing victim of Mafia stalking, extortion, and exaction. When a plaintiff represents himself *pro se*, he is subject to very liberal standards not afforded to attorneys because attorneys are presumed to have a knowledge of the legal system and need less protections from the court." Richards v. Duke University, 480 F. Supp. 2d 222, 234 (D.D.C. 2007). Since the Court's refusal to offer a TRO, Plaintiff has continued to experience death threats, sleep deprivement, torture, and witness tampering of friends and family members. A decision to allow the crimes to continue would only subject the Plaintiff and the public to the dangers of the Mafia conspiracy.

When Plaintiff moved to Los Angeles in October of 2007, one of his sisters was allegedly forced by the Mafia to feign symptoms of an illness to impugn her testimony as a witness. Her symptoms dramatically increased when Plaintiff filed his lawsuit in July of 2009. In lieu of her

feigned behavior, the Malibu and Beverly Hills Police Departments were called for emergency assistance in September and October of 2009. She was then voluntarily admitted to a hospital where she was allegedly coerced to continue feigning symptoms of an illness. Plaintiff wrote letters to inform her doctors of probable cause of the Mafia conspiracy causing his sister's feigned illness. Plaintiff cannot contact the Police or FBI to inform them of the witness tampering since they have refused to protect Plaintiff and have allowed the conspiracy to continue. To date, the doctors have refused to contact the Plaintiff, Police, or FBI and have neglected their responsibility to report the crimes to authorities.

Plaintiff's motion for preliminary injunction alleges continuing statute violations of the US Crime Victims' Rights Act, Communications Act, the First, Fourth, Eighth, and Fourteenth Amendments, and other statues and laws of the United States. Plaintiff has clearly met his burden of establishing probable cause of statutory rights violations and the Defendants would not be affected by an injunction. If an injunction is not granted, the Government would perpetuate the criminal acts happening to Plaintiff, his family, friends, and the public. Therefore, an injunction is just and appropriate to maintain the status quo.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court accept Plaintiff's evidence in support of his Emergency Motion for Preliminary Injunction. Plaintiff also requests that his motion be granted to end statutotry rights violations of the US Crime Victims' Rights Act, the Communications Act, and other laws and statutes of the United States. Plaintiff also requests any other relief that this Court deems just and proper.

Date: October 29, 2009.

Respectfully Submitted,

*Gregory McKenna*

Gregory McKenna

Pro Se Plaintiff

9937 Young Drive, H

Beverly Hills, CA 90212

(310) 213-8851

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 29 day of October, 2009, a true and accurate copy of Plaintiff's Motion To Proffer Evidence In Support Of His Motion For Preliminary Injunction will be forwarded to the Defendants, via first-class mail, postage prepaid, to:

1) Defendants the St. Louis County Police Department, Officers Charles Boschert, & Kenneth Williams, 7900 Forsyth Boulevard, Clayton, Missouri 63105;

2) Defendant the FBI, US Attorney's Office, 111 South 10th Street, #20.333, St. Louis, MO 63102;

3) Defendant Apple Inc. represented by Thompson Coburn LLP, Kathy A. Wisniewski & John W. Rogers, One Bank Plaza, St. Louis, MO 63101;

4) Defendant D'Angelo Automotive represented by Childress Ahlheim Cary, 1010 Market St., Suite 500, St. Louis, MO 63101.

(NOTE: Defendants Mark Kappelhoff and A-1 Private Investigations have defaulted. An issuance of an alias summons is pending for Defendant Bonine. A copy of this motion will be sent to Defendant Bonine when an alias summons is issued.)