**RECEIVED BY MAIL**

NOV 2 0 2009

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

**United States District Court**

**EASTERN DISTRICT OF MISSOURI**

GREGORY MCKENNA,

    Plaintiff

    Vs.

THE ST. LOUIS COUNTY POLICE DEPARTMENT,

OFFICERS CHARLES BOSCHERT, KENNETH        Case No. 4:09cv1113CDP

WILLIAMS, UNKNOWN AGENTS OF THE

FEDERAL BUREAU OF INVESTIGATION,

MARK KAPPELHOFF, APPLE INC., A-1           **JURY DEMANDED**

PRIVATE INVESTIGATIONS, TIMOTHY

BONINE, D'ANGELO AUTOMOTIVE,

    Defendants

---

    I, Gregory McKenna, the undersigned complainant state the following is true and correct

to the best of my knowledge and belief. On or about August 15, 2000 and continuing to the

present day, in the Eastern District of Missouri and elsewhere, the Defendants did, (Track Statutory

Language of Offense) conspire to aid, abet, and neglect the stalking, extortion, and torture of

Plaintiff, Gregory McKenna, by members of the Italian Mafia and deprive him of his

Constitutional rights and liberties in violation of Title 42 United States Code 1983, 1985, 1986,

1988, and others. I further state that this complaint is based on the following facts:

(See Attached Complaint).

# United States District Court
## EASTERN DISTRICT OF MISSOURI

GREGORY MCKENNA,

    Plaintiff

    Vs.

THE ST. LOUIS COUNTY POLICE DEPARTMENT,    Case No. 4:09cv1113CDP

OFFICERS CHARLES BOSCHERT, KENNETH

WILLIAMS, 8 UNKNOWN AGENTS OF THE

FEDERAL BUREAU OF INVESTIGATION,    **JURY DEMANDED**

MARK KAPPELHOFF, APPLE INC., A-1

PRIVATE INVESTIGATIONS, TIMOTHY

BONINE, D'ANGELO AUTOMOTIVE,

    Defendants

---

## COMPLAINT FOR COMPENSATORY, STATUTORY, AND PUNITIVE DAMAGES, CIVIL PENALTIES, RESTITUTION, INJUNCTION, AND OTHER COURT ORDERS

COMES NOW, Plaintiff Gregory McKenna, who makes the following Complaint and for

its cause of action states:

(1) Pro se Plaintiff Gregory McKenna brings this action pursuant to the United State's

statutory, common law, and equitable authority for the purpose of obtaining recovery for

damages, restitution, civil penalties, punitive damages, injunction and other equitable relief

against Defendants, the ST. LOUIS COUNTY POLICE DEPARTMENT (STLPD), officers

CHARLES BOSCHERT (BOSCHERT), KENNETH WILLIAMS (WILLIAMS), UNKNOWN

FBI AGENTS, the United States Department of Justice section chief, MARK KAPPELHOFF

(KAPPELHOFF), APPLE INC., A-1 PRIVATE INVESTIGATIONS, TIMOTHY BONINE

(BONINE), and D'ANGELO AUTOMOTIVE (D'ANGELO) for their unlawful actions in

connection with, among others, conspiring and acting in concert to suppress Plaintiff's

Constitutionally protected rights and liberties in furtherance of an Italian Mafia stalking,

extortion, and torture conspiracy designed against him.

## PARTIES

(2) This action is brought forth by Plaintiff, Gregory McKenna, who is a US citizen who

now resides at 9937 Young Drive, Beverly Hills, California 90212, (310) 213-8851.

(3) The Defendant, the St. Louis County Police Department, is located in St. Louis

County and may be served with process at 7900 Forsyth Boulevard, Clayton, Missouri 63105,

(314) 889-2341.

(4) The Defendant, Charles Boschert, is located in St. Louis County and may be served

with process at 7900 Forsyth Boulevard, Clayton, Missouri 63105, (314) 615-4692.

(5) The Defendant, Kenneth Williams, is located in St. Louis County and may be served

with process at 7900 Forsyth Boulevard, Clayton, Missouri 63105, (314) 615-5340.

(6) The Defendant, Unknown Agents of the FBI, are located in the City of St. Louis

and my be served with process at the US Attorney's Office, 111 South 10th Street, #20.333, St.

Louis, Missouri 63102, (314) 539-2200.

2

(7) The Defendant, A-1 Private Investigations, is located in St. Louis County and may be served with process at 8008 Carondelet Avenue, Suite 107, St. Louis, Missouri 63105, (314) 726-1717.

(8) The Defendant, Timothy Bonine, is located in St. Louis County and may be served with process at 8008 Carondelet Avenue, Suite 107, St. Louis, Missouri 63105, (314) 726-1717.

(9) The Defendant, D'Angelo Automotive, is located in St. Louis County and may be served with process at 1104 North Jefferson, Florissant, Missouri 63031, (314) 831-2200.

(10) The Defendant, Apple Incorporated, is located in Cupertino, California and may be served with process at CT Corporation, 818 West 7th Street, Suite 200 in Los Angeles, California 90017-3425, (213) 457-0596.

(11) The Defendant, Mark Kappelhoff, is located in Washington, D.C. and may be served with process at 950 Pennsylvania Avenue, N.W., Washington, D.C. 20530.

JURISDICTION

(12) The claims hereafter arose in whole in part of St. Louis County in the Eastern District of Missouri by the wrongful acts of Defendants done in perpetuation of an Italian Mafia stalking, extortion, and torture conspiracy.

(13) The named individual Defendants herein are sued individually and in their official capacity in this Court's jurisdiction over the subject matter pursuant to, among other authorities,

3

the Civil Rights Acts. Particularly, 42 U.S.C. 1983, 42 U.S.C. 1985, 42 U.S.C. 1986, 42 U.S.C. 1988, and the Judicial Code, 28 U.S.C. 1331 & 1343.

## VENUE

(14) Venue is proper in Federal District Court in the Eastern District of Missouri, pursuant to, among other authorities, 42 U.S.C. 1983, 42 U.S.C. 1985, 42 U.S.C. 1986, 42 U.S.C. 1988, and the Judicial Code, 28 U.S.C. 1331 & 1343.

## FACTUAL ALLEGATIONS

### I. Beginning of the Mafia Conspiracy: Plaintiff's First Encounter With the Italian Mafia and Ensuing Constitutional Rights Violations By Defendants the STLPD and Unknown FBI Agents

(15) This action arose in St. Louis, Missouri at Plaintiff's 812 Elksforth Court, Florissant, Missouri 63031 residence on or around August 15, 2000 at 7:55 am, the morning after three members of the alleged Italian Mafia proceeded to threaten to murder Plaintiff at a nightclub called Velvet located in St. Louis, Missouri. The alleged motive for the threats was to extort Plaintiff as a fashion model working for a modeling agency in New York City. After receiving the threats, Plaintiff proceeded to call Defendant the STLPD to file a complaint the following morning.

(16) When Plaintiff returned to St. Louis after interviewing with new modeling agencies in New York City, on or around Saturday, September 9, 2000 at 10:45 am, the three Mafia

4

members arrived at Plaintiff's residence and proceeded to make extortion threatens. The Mafia

members stated, "We're going to kill you if you don't model for us in New York." In response,

Plaintiff proceeded to call Defendant the STLPD via emergency 911 for assistance. Despite

being held at gunpoint and receiving threats of imminent death from the Mafia members, the

STLPD officers wrongfully refused to arrest the perpetrators and left the scene of the crime. As a

direct and proximate result of Defendant the STLPD's malicious neglect, the 3 male Mafia

members were allowed to stalk, make extortion threats, attempt rape, and kidnap Plaintiff.

(17) At approximately 1:45 pm on Sunday, September 10, 2000, the Mafia members

returned to Plaintiff's residence and attempted to break and enter his residence. The members

proceeded to make extortion threats in an attempt to coerce Plaintiff to comply with their

demand for him to continue working as a model. Although Defendant the STLPD were again

called via emergency 911, the STLPD operator refused to dispatch an officer.

(18) As a direct and proximate result of the STLPD's malicious neglect, at approximately

1:50 pm on Sunday, September 10, 2000, Plaintiff proceeded to call the FBI field office located

in St. Louis, Missouri for emergency assistance. When the FBI was contacted, Defendant

UNKNOWN FBI AGENT #1 proceeded to wrongfully state to Plaintiff that the Mafia stalking,

extortion threats, rape attempts, and kidnapping were an STLPD issue. As a direct and proximate

result of Defendant UNKNOWN FBI AGENT's intentional neglect, the Mafia members at

5

Plaintiff's residence were allowed to stalk, threaten, attempt rape, and kidnap Plaintiff.

(19) From September of 2000 to the present, Plaintiff made over 53 complaints with Defendants the STLPD and FBI for the Mafia stalking, extortion, and torture[1] that continued as a result of their malicious neglect. Despite Plaintiff claiming that several rapes were committed by the Mafia, victims and witnesses were threatened to remain quiet, and that he was being stalked, extorted, and tortured, Defendants refused to file a police report to conceal the Mafia crimes. Effectively, Defendants the STLPD and FBI willfully and knowingly allowed the crimes to continue and violated Plaintiff's constitutional rights. As a direct and proximate result of Defendants' malicious neglect, Plaintiff has suffered and continues to suffer discomfort, sleep deprivation, anxiety, invasion of privacy, public humiliation, stalking, extortion, torture, destruction of career standing, post traumatic stress disorder, and severe emotional distress.

(20) From 2000 to the present, Defendants relied on false pretenses to reject Plaintiff's complaint despite probable cause based on Plaintiff's testimony and clear and convincing evidence of crimes being committed. In accord with normal practice and procedures, hearsay evidence is sufficient to establish probable cause to arrest because it is not offered for its truth,

6

[1] *Concurrent with 18 USC 2340 and other statutes, the term "torture" as defined in this Complaint means an act committed by a person specifically intended to inflict severe physical or mental pain or suffering upon another person; whereas "severe mental pain or suffering" means the prolonged mental harm caused by or resulting from, (A) the intentional infliction or threatened infliction of severe physical pain or suffering, (B) the administration or application, or threatened application, of mind-altering substances or other procedures calculated to disrupt profoundly the senses or the personality, (C) the threat of imminent death, or (D) the threat that another person will imminently be subjected to death, severe physical pain or suffering, or the administration or application of mind-altering substances or other procedures calculated to disrupt profoundly the senses or personality.

but to explain the basis for a belief that probable cause to arrest existed. State v. Holt, 695

S.W.2d 474, 478 (Mo. App. 1985). Concurrently, Plaintiff's allegations of the Mafia stalking,

extortion, and torture established probable cause and were sufficient to establish lawful grounds

for the STLPD and FBI to investigate and make arrests. In effect, Defendants the STLPD and

UNKNOWN FBI AGENTS wrongfully persisted in their pattern of malicious neglect so as to

willfully and knowingly and intentionally aid and abet the Mafia stalking, extortion, torture, and

deprive Plaintiff of his Constitutional rights.

## II. Conspiracy to Neglect, Violate, and Deprive Plaintiff's Rights Involving Defendants the STLPD and Boschert from 4/06 to 6/06

(21) No later than April of 2006, Plaintiff purchased a bug detector to prove to Defendant

the STLPD that he was being stalked, extorted, and tortured by the Mafia. In accord with

Plaintiff's allegations to Defendants the STLPD and FBI from 2001 to 2006, bug sweeps were

conducted at Plaintiff's residence, in his Toyota Camry, in his mother's Honda Accord, in his

father's Chevy Malibu, at the UMSL campus, at St. Norbert's parish, at St. Ferdinand parish, at

Sacred Heart parish, at his friend Billy Duran's apartment, and other places where Plaintiff

previously alleged to the Defendants that harassment, stalking, and torture from illegal

communication devices were occurring.

(22) Concurrently, Plaintiff's bug detector proceeded to detect the presence of illegal

7

communication devices so as to verify their existence in all of the aforesaid locations.

(23) On or around April 18, 2006, Plaintiff filed a written complaint with Defendant the STLPD that demonstrated probable cause of the Mafia's use of illegal communication devices for an investigation. The evidence included: (1) the history of Plaintiff's complaints to the STLPD for stalking, extortion, and torture caused by illegal communication devices from 2000 to 2005, (2) audio recordings of the Mafia stalking, extortion, sleep deprivement, and torture from illegal communication devices that were obtained at his sister's Venice apartment, at Urth Caffe in Los Angeles, at Sacred Heart parish, and other places, (3) video recordings of positive bug sweep readings of Plaintiff's residence, Toyota Camry, mother's Honda Accord, UMSL campus, Sacred Heart church, and other places, and (4) other evidence.

(24) When Plaintiff called the STLPD Intelligence Unit to check the status of his complaint on or around April 25, 2006, he was connected to the head of the department, Defendant BOSCHERT. After Plaintiff introduced himself and cordially asked BOSCHERT if he intended to investigate, BOSCHERT became aggravated and maliciously stated, "There's no evidence," and then hung up the phone on Plaintiff to intentionally avoid him. Plaintiff immediately attempted to call Defendant BOSCHERT back but BOSCHERT proceeded to avoid Plaintiff's phone calls to willfully and knowingly perpetuate the Mafia stalking, extortion, and torture and deprive him of his constitutional rights to protection, due process, and others.

(25) In response to Defendant BOSCHERT's willful neglect and the continuing Mafia crimes, on or around April 25, 2006, Plaintiff called the FBI to file a complaint for Police misconduct and spoke to Defendant UNKNOWN FBI AGENT #2 named Mary. The Defendant proceeded to intentionally impugn Plaintiff's claim and state, "There is no Mafia in St. Louis," and refused to allow Plaintiff to speak with an Agent.

(26) As a result of Defendant UNKNOWN FBI AGENT #2's wrongful impugnment, Plaintiff was forced to file a complaint with the FBI in person on April 26, 2006. When Plaintiff arrived at the FBI field office to file a complaint, he spoke to Defendant UNKNOWN FBI AGENT #2 named Mary who proceeded to impugn Plaintiff's claim and refused to allow him to speak with an Agent.

(27) As Plaintiff was being impugned by Mary, Defendant UNKNOWN FBI AGENT #3 entered the office with coworkers. Plaintiff began to speak with Defendant UNKNOWN FBI AGENT #3 who referred to himself as "Agent" and proceeded to inform him that he was being stalked, extorted, and tortured by the Mafia. Plaintiff also alleged that bug sweeps, audio recordings of harassment, and witness' testimonies proved that the Mafia crimes were occurring and that the STLPD were unlawfully violating, neglecting, and depriving him of his Constitutional rights by refusing to open an investigation. In response, Defendant UNKNOWN FBI AGENT #3 proceeded to act in concert with the Mafia and other Defendants by maliciously

9

lying to Plaintiff and stating that the FBI did not have jurisdiction over issues of Police

misconduct and Mafia complaints of stalking, extortion, and torture. Specifically, he stated, "The

FBI doesn't police the Police," and, "Mafia stalking across state boundaries is not a federal

offense... It's only a federal offense if your Constitutional rights are violated, such as in cases of

Police brutality." In effect, Defendant UNKNOWN FBI AGENT #3 wrongfully lied to Plaintiff

and willfully allowed the stalking, extortion, and torture to continue.

(28) After 14 attempts to contact Defendant BOSCHERT via telephone and in writing,

Plaintiff finally spoke to Defendant BOSHCERT over the phone on or around May 2, 2006.

Instead of offering emergency assistance for the stalking, death threats, and torture, Defendant

BOSHCERT proceeded to wrongfully state that Plaintiff's video recordings of positive bug

sweep readings, audio recordings of harassment, and other evidence were insufficient to

demonstrate probable cause for an investigation. Rather than defending Plaintiff's rights and

protecting him from injury, Defendant BOSCHERT proceeded to state that he would not

investigate unless Plaintiff hired a private investigator to perform a bug sweep. As such,

Defendant BOSHCERT willfully and knowingly perpetuated the Mafia crimes.

(29) In contravention to Defendant BOSCHERT's denial of Plaintiff's investigative

methods, instruments, and evidence he obtained, "probable cause" to arrest involves probabilities

which are the factual and practical considerations of everyday life on which reasonable and

10

prudent men, not legal technicians, act. Hawkins v. U.S., 288 F.2d 537, certiorari denied 81 S.Ct. 1943, 366 U.S. 975, 6 L Ed.2d 1264, C.A.8 (Mo.) 1961. Concurrently, since Plaintiff's evidence proved his residence was bugged and that he was being stalked, extorted, and tortured by the Mafia, Defendant BOSCHERT wrongfully impugned Plaintiff's evidence and denied that probable cause existed for an investigation. In effect, Defendant BOSCHERT intentionally violated, neglected, and deprived Plaintiff of his Constitutional rights and allowed the Mafia crimes to continue.

(30) The Fourteenth Amendment to the United States Constitution provides that a State shall not "deprive any person of life, liberty, or property, without due process of law." Amdt. 14, ß 1. While the Supreme Court has not attempted to define with exactness the liberty interests guaranteed by the Fourteenth Amendment, the term ". . . denotes not merely freedom from bodily restraint but also the right of an individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men." *Meyer v. Nebraska, supra.* In contravention to this fundamental right, Defendants the STLPD, UNKOWN FBI AGENTS, BOSCHERT, and others willfully and knowingly acted under the color of law to deprive Plaintiff as he was prevented from contracting, establishing relationships, attending religious services, pursuing a career, and enjoying other freedoms granted by the Constitution.

11

### III. Conspiracy to Neglect, Violate, and Deprive Plaintiff's Rights Involving Defendants the STLPD, Boschert, Williams, Bonine, and A-1 Private Investigations from 6/06 to 1/07

(31) In response to Defendant BOSCHERT's wrongful impugnment, on June 1, 2006, Plaintiff proceeded to hire private investigator, Defendant TIMOTHY BONINE, an employee of the company, Defendant A-1 PRIVATE INVESTIGATIONS, to conduct a bug sweep of his St. Louis County residence and 1995 Toyota Camry. During the bug sweep, Defendant BONINE's bug detector proceeded to activate and signal the presence of illegal communication devices. Plaintiff proceeded to take pictures of BONINE's bug detector activating to prove to Defendant BOSHCERT that his residence and vehicle were bugged.

(32) After Defendant BONINE's bug detector activated in Plaintiff's car, bedroom, and bathroom, Plaintiff proceeded to ask, "Would you conclude that my house is bugged?" In response, Defendant stated, "Well right now, you are getting signals indicative to low voltage electrical charges, and low voltage electrical charges can mean listening devices, cameras, and a variety of surveillance devices." Plaintiff also asked, "Do you think that's enough to call the Police?" Defendant BONINE responded, "I would certainly call them. I would say that 'this is what [BONINE] told me to do. This is what I've done. This is what we found...'"

(33) On June 2, 2006, Defendant BONINE sent a letter to Plaintiff via US Mail that stated he performed a bug sweep of Plaintiff's residence and Toyota Camry to determine if

12

covert illegal communication devices existed. The letter proceeded to state that Defendant's hand held verifier activated in the aforesaid areas so as to indicate Plaintiff's residence and Toyota Camry were bugged.

(34) Plaintiff proceeded to contact Defendant BOSCHERT on or around June 13, 2006 to inform him of Bonine's results. Defendant BOSCHERT proceeded to neglect Plaintiff's complaint by avoiding 8 phone calls and refusing to return his messages.

(35) Plaintiff called Defendant A-1 PRIVATE INVESTIGATIONS on or around June 29, 2006 to inform Defendant BONINE that he forwarded his bug sweep results to Defendant the STLPD. Plaintiff was informed by the owner of A-1 PRIVATE INVESTIGATIONS that BOSCHERT contacted him. In a recording of the conversation, Plaintiff asked the Defendant, "I would like to know if [BONINE] talked to [BOSCHERT] about the situation and what was said. Because I need to talk to lieutenant BOSCHERT about whether there is probable cause for an investigation to be opened." The owner replied, "Okay. Our procedure is, and I'll tell you exactly what he talked about. The Police department already called me and asked to talk to Tim [BONINE]. And asked me what happened. And I gave Tim instructions on what to talk about. The only thing we are allowed to talk about is what's in that report that we gave to you."

(36) In lieu of Defendants the STLPD, BOSCHERT, BONINE, UNKNOWN FBI AGENTS, and others acting in concert to neglect Plaintiff's complaint and allow the Mafia

13

stalking, extortion, and torture to continue, Plaintiff sought professional counseling from licensed

clinical therapist, Jerry Clerc. Concurrent with Plaintiff's symptoms of emotional distress,

trauma, sleep deprivation, torture, and others, Clerc proceeded to diagnose Plaintiff with post-

traumatic stress disorder.

(37) On or around July 5, 2006, Plaintiff continued to seek help by calling Defendant the

STLPD's Bureau of Professional Responsibilities and spoke with sergeant Steve Hampton to

initiate a complaint against Defendant BOSCHERT for criminal neglect. In a recording of the

conversation, Plaintiff asked, "Is there a policy or procedure on probable cause or on opening an

investigation when probable cause is demonstrated?" In response, Hampton replied, "Yeah, it's

called a crime. If it is true a crime, officers are bound by law to investigate. That's what their

oath is. The investigation that we'd have to look into is if there is probable cause and if there was

an actual crime committed."

(38) Plaintiff attempted to contact Defendant BOSHCERT via telephone on 12 separate

attempts but continued being ignored from July 5 to July 30, 2006.

(39) On or around July 31, 2006, Plaintiff proceeded to forward BONINE's report to

BOSCHERT to prove that BONINE's bug detector signaled the presence of illegal

communication devices. Despite providing proof of BONINE's positive bug sweep results,

BOSCHERT avoided 14 phone calls from Plaintiff and refused to return his messages so as to

14

willfully violate, neglect, and deprive Plaintiff's rights and knowingly allow the Mafia stalking, extortion, and torture to continue.

(40) Plaintiff proceeded to file a written complaint with the STLPD's Bureau of Professional Responsibilities on or around August 30, 2006 to complain of Defendant BOSCHERT's neglect of the stalking, extortion, and torture. The complaint included a detailed summary of neglect by STLPD officers from September of 2000 to 2006, video recordings of Plaintiff's bug detector signaling the presence of illegal communication devices in his residence, car, and other places, audio recordings of Mafia harassment from illegal communication devices, and Defendant BONINE's report that stated his bug detector signaled the presence of illegal communication devices. Notwithstanding probable cause of Defendant BOSCHERT's malicious neglect of the Mafia crimes and Plaintiff's rights, the bureau proceeded to ignore Plaintiff and allow the Mafia stalking, extortion, and torture to continue.

(41) On or around September 11, 2006, Plaintiff was informed by his Pretrial Services officer, Deena Siler, that she was contacted by Defendant BOSCHERT. In response, Siler proceeded to instruct Plaintiff to request her consent the next time he intended to complain to the STLPD about the Mafia stalking, extortion, and torture.

(42) As a direct and proximate result of the conspiracy to silence Plaintiff, perpetuate the Mafia crimes, and neglect his Constitutional rights, Plaintiff proceeded to file a written

15

complaint with the FBI's Internal Investigations division located at 11102-935 Pennsylvania

Avenue Northwest in Washington, D.C. 20535 on or around October 14, 2006. Plaintiff's

complaint included a history of STLPD neglect, Defendant BONINE, BOSCHERT,

UNKNOWN FBI AGENTS, and others acting in concert to cover-up the Mafia crimes, and

federal statutes on probable cause that proved Plaintiff's Constitutional rights were being

violated. Despite Plaintiff's complaint and probable cause, Defendant the FBI's Internal

Investigations division proceeded to ignore Plaintiff's complaint so as to willfully and knowingly

allow the Mafia crimes to continue.

(43) As part of Plaintiff's enrollment in a Pretrial Diversion program, Plaintiff was

instructed to seek professional therapy under the guidance of Siler. On or around November of

2006, Plaintiff met with Dr. Chand of St. Louis University Hospital and proceeded to inform her

of the Mafia stalking, extortion, and torture. When Plaintiff was prompted to prove his claim, he

proffered video recordings of bug sweeps, audio recordings of harassment, and Defendant

BONINE'S bug sweep results.

(44) As part of Dr. Chand's assessment of Plaintiff's mental health, she proceeded to

contact Defendant BONINE to authenticate his letter and bug sweep results. In response,

Defendant BONINE proceeded to maliciously state that Plaintiff's residence and vehicle were

not bugged with illegal communication devices so as to intentionally cause a misdiagnosis. As a

16

direct and proximate result of Bonine's malicious statements, the Mafia was allowed to freely

stalk, extort, and torture Plaintiff without help from law enforcement and professionals.

(45) On or around January 14, 2007, Plaintiff proceeded to contact Defendant the

STLPD's Bureau of Profession Responsibilities to request a response to his August 30, 2006

complaint. In response, the bureau wrote a letter to Plaintiff that stated, "A review of all pertinent

information was conducted by this office along with several interviews, including Ms. Deena

Siler of the Federal Pretrial Diversion Unit and Mr. Timothy Bonine of A-1 Private

Investigations. I find no apparent violation of any Department Rules or Regulations and will not

be conducting any further review. If this Department may be of any further assistance to you in

the future, do not hesitate to contact me..." The letter was signed by Defendant KENNETH

WILLIAMS and dated January 22, 2007.

(46) Defendant WILLIAMS' wrongful decision to accept BONINE and Siler's

testimonies over scientific evidence constituted an improper procedure and false pretense to

perpetuate the Mafia crimes. According to RSMo 490.065 (3) on the admissibility of expert

witness testimony, the facts or data in a particular case upon which an expert bases an opinion or

inference must be of a type reasonably relied upon by experts in the field in forming opinions or

inferences upon the subject *and must be otherwise reasonably reliable.* Concurrently, Defendant

WILLIAMS consciously ignored this statute and wrongfully accepted BONINE's testimony

despite knowledge of BONINE's testimony being unreliable since it contradicted his positive

bug sweep results and no scientific basis existed in support of his testimony. Defendant

17

WILLIAMS was also conscious of the continuing crimes that would result because of his decision to deny Plaintiff's claim. Effectively, Defendant WILLIAMS willfully and knowingly denied Plaintiff's complaint to allow the Mafia stalking, extortion, torture and use of illegal communication devices to continue.

(47) Pursuant to Missouri Revised Statutes (RSMo 562.016), a person is guilty of an offense if he acts with a culpable mental state, that is, if he acts "purposely" or "knowingly" or "recklessly" or with "criminal negligence." A person "acts purposely" when it is his conscious object to engage in that conduct or to cause that result. A person "acts knowingly", or with knowledge, when he is aware of the nature of his conduct or that those circumstances exist; or when he is aware that his conduct is practically certain to cause that result. A person "acts recklessly" or is reckless when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation. Finally, a person "acts with criminal negligence" or is criminally negligent when he fails to be aware of a substantial and unjustifiable risk that circumstances exist or a result will follow, and such failure constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation.

(48) In accord with RSMo 562.016, Defendant WILLIAMS' willful denial of probable cause of Plaintiff's claim despite knowledge of the continuing crimes constituted a purposeful, intentional, reckless, or criminally negligent act. In effect, Defendants BOSHCERT, WILLIAMS, BONINE, A-1 PRIVATE INVESTIGATIONS, UNKNOWN FBI AGENTS, and

18

others acted in concert by committing wrongful acts in their designated professions so as to willfully perpetuate the Mafia crimes and violate Plaintiff's Constitutional rights.

## IV. Continued Conspiracy Involving Defendants the STLPD and Boschert From 2/07 to 10/07

(49) After receiving Defendant WILLIAMS' letter, on or around February of 2007, Plaintiff proceeded to call Defendant the STLPD's Bureau or Professional Responsibilities to complain about the Mafia stalking, extortion, and torture continuing. In response, officer Hampton stated that the bureau was responsible only for crimes against officers and that Plaintiff needed to re-file his complaint with the Intelligence Unit for an investigation.

(50) No earlier than March of 2007, Plaintiff proceeded to perform an exhaustive bug sweep of his residence, Toyota Camry, and Audi A4 Quattro using his CSD-21, SBD-5H, and DET2. The results indicated that Plaintiff's bedroom, upstairs bathroom, areas of his living room, Toyota Camry, Audi A4 Quattro, sister Clare's Venice, California apartment, and other locations were bugged with illegal communication devices.

(51) Plaintiff also proceeded to use the CSD-21 to conduct a telephone tap test on or around March of 2007. The CSD-21 contains an ultra-sophisticated telephone tap test that detects the latest developments in technology for covert telephone eavesdropping devices. According to the CSD-21's instruction manual, "If, AT ANY TIME, the needle noticeably 'bounces' and

19

approaches 5.5, this indicates the presence of a polarity negating telephone recording or

telephone transmitting device." Concurrently, when Plaintiff performed the telephone tap test,

the needle proceeded to "bounce" to 5.5 on the meter so as to indicate with clear and convincing

certainty that Plaintiff's telephone line was tapped. Plaintiff proceeded to video record his results

to proffer to law enforcement proof of the Mafia conspiracy.

(52) After obtaining positive results that indicated with 100% certainty that his telephone

landline was tapped, on or around March 19, 2007 Plaintiff proceeded to dial emergency 911 to

file a complaint for the Mafia use of illegal communication devices to stalk, extort, and torture

him.

(53) On or around March 29, 2007, Plaintiff proceeded to file a complaint with the

STLPD's Intelligence Unit. Plaintiff's complaint included: (1) video recordings of his positive

bug sweep results and telephone tap tests using the CSD-21, (2) video recordings of positive bug

sweep results using the SBD-5H, (3) photos of wall and ceiling areas that Defendant BONINE

marked with a highlighter to indicate his bug detector signaled the presence of illegal

communication devices, (4) audio recordings of public harassment from the Mafia, (5)

allegations of Defendant BONINE stating he believed Plaintiff's residence was bugged, (6)

names and contact information of witnesses willing to testify to Plaintiff's credibility, and (7)

other evidence that proved the Mafia was stalking, extorting, and torturing Plaintiff.

(54) Notwithstanding clear and convincing evidence and probable cause of the Mafia stalking, extortion, and torture, Defendant BOSCHERT proceeded to avoid Plaintiff by ignoring 5 of his phone calls. Effectively, Defendant BOSHCERT willfully and knowingly allowed the Mafia stalking, extortion, and torture to continue.

(55) As a result of Defendant BOSCHERT neglecting Plaintiff, or around April 18, 2007 Plaintiff wrote a letter to BOSCHERT to ask if he intended to investigate his complaint. Plaintiff asked in his letter, "In regards to my last letter I sent you on March 27, 2007, could you please inform me whether you intend to speak with John Anderson, the advisor from the counter surveillance company for the bug detector I purchased (i.e., the CSD-21), or Jerry Clerc, my licensed clinical counselor? The individuals have testified to my claim's credibility and have informed me that they are willing to speak with you." Despite referring to witnesses and professionals who stated that they would testify to the credibility of Plaintiff's positive CSD-21 results and post-traumatic stress disorder being caused by the intentional neglect of the Defendants ignoring Plaintiff's Mafia stalking, extortion, and torture complaint, Defendant BOSCHERT continued avoiding Plaintiff's complaint so as to willfully and knowingly allow the Mafia crimes to continue.

(56) Plaintiff proceeded to file a second complaint with Defendant the STLPD's Bureau of Professional Responsibilities on or around May 2, 2007 for Defendant BOSCHERT's alleged

criminal neglect of the Mafia stalking, extortion, and torture. Plaintiff's complaint included his

complaint letter to Defendant BOSCHERT and other clear and convincing evidence of the Mafia

crimes. Notwithstanding probable cause of Defendant BOSCHERT's malicious neglect, the

bureau proceeded to act in concert with Defendant BOSCHERT by avoiding Plaintiff's phone

calls, refusing to respond to his contact attempts, and maliciously neglecting and depriving

Plaintiff of his rights so as to willfully and knowingly allow the Mafia stalking, extortion, and

torture to continue.

(57) On or around July 5, 2007, Plaintiff filed a third complaint with Defendant the

STLPD's Bureau of Professional Responsibilities to proffer additional evidence of the Mafia

stalking, extortion, and torture. The new evidence included: (1) an abbreviated transcript of

Defendant BONINE stating that he believed Plaintiff's residence was bugged and Plaintiff

should go the Police, (2) video recordings of bug sweeps using Plaintiff's CSD-21 at his St.

Louis County residence, (3) audio recordings of harassment from illegal communication devices

obtained in Plaintiff's Audi A4 Quattro, father's Chevy Malibu, brother's Dodge Saturn, and

sister's Mini Cooper, (4) video recordings of positive readings obtained from bug sweeps using

the CSD-21 and other bug detectors that confirmed the presence of illegal communication

devices at his sister's Venice, California apartment where, (5) audible recordings of harassment

from the areas where the positive bug sweep readings indicated the presence of illegal

communication devices at his sister's Venice, California residence, (6) photos of patched dry wall over 1 inch holes in areas where illegal communication devices were detected by Plaintiff's bug detectors that demonstrated entry points of the installment of the devices, (7) pictures of vandalism done by Victoria caused by the Mafia sleep depriving and torturing Plaintiff, (8) a video of a positive bug sweep confirmation using the SBD-5H in his Audi A4 Quattro, (9) a video of a positive telephone tap test using the CSD-21 that proved with clear and convincing certainty that Plaintiff's landline was tapped, and (10) other evidence. Despite probable cause of the Mafia using illegal communication devices to stalk, extort, and torture Plaintiff, the bureau willfully and knowingly violated, neglected, and deprived Plaintiff of his rights by avoiding Plaintiff's phone calls, refusing to respond to his complaint, and denying him assistance.

(58) Plaintiff proceeded to file a fourth complaint with Defendant the STLPD's Bureau of Professional Responsibility on or around August 22, 07 to provide additional evidence of Defendant BOSCHERT's alleged criminal neglect and Mafia crimes occurring. Notwithstanding Plaintiff's fourth complaint, the bureau persisted in acting in concert with the Mafia and Defendants the STLPD, BOSCHERT, WILLIAMS, the FBI, BONINE, and others by maliciously neglecting, violating, and depriving Plaintiff of his Constitutional rights and refusing to investigate so as to perpetuate the Mafia stalking, extortion, and torture.

(59) On or around August 27, 2007, Plaintiff contacted the STLPD County Counselor,

23

Luke Meiners, to obtain records of the STLPD's history of complaints against organized crime

groups, stalkers, and users of illegal communication devices. In violation of the Missouri

Sunshine Law, Meiners refused to provide Plaintiff with records so as to act in concert with the

Defendants in abetting the Mafia criminal conspiracy.

(60) Plaintiff proceeded to contact the Bureau of Professional Responsibilities via

telephone on or around September of 2007 and spoke with Sergeant Hampton to ask whether the

bureau intended to investigate the Mafia conspiracy and Defendant BOSCHERT's alleged

official misconduct. When Plaintiff stated that Defendant BONINE allegedly lied to conceal the

Mafia's use of illegal communication devices, Hampton replied, "People lie to the Police all the

time." When Plaintiff asked for help despite Hampton knowing that BONINE was lying,

Hampton proceeded to state that Plaintiff needed to file a civil lawsuit to sue BONINE for

making reckless statements to the Police and obstructing justice. As a direct and proximate result

of Defendant the STLPD's malicious neglect and violating Plaintiff's rights, the Mafia crimes

continued.

## V. Conspiracy To Neglect, Violate, and Deprive Plaintiff's Rights Involving Defendant

## D'Angelo Automotive

(61) While Plaintiff remained in contact with Defendant the STLPD to proffer evidence

of the continued Mafia stalking, extortion, and torture from illegal communication devices, no

24

earlier than December of 2006, Plaintiff began hearing a loud noise originating from the rear of his 1998 Audi A4 Quattro. To determine the cause of the loud noise, on or around January 17, 2007, Plaintiff brought his car to Defendant D'ANGELO AUTOMOTIVE (D'ANGELO) located at 1104 North Jefferson Street in Florissant, Missouri 63031 for an inspection.

(62) After inspecting Plaintiff's Audi, Defendant D'ANGELO stated that the cause of the loud noise was a loose wheel bearing on the rear passenger side. Plaintiff proceeded to accept D'ANGELO's diagnosis in good faith and agreed to pay D'ANGELO for 3 1/2 hours of labor to install the new part. Plaintiff believed that an end to the harassing noise coupled with a visual inspection of the defective loose wheel bearing part provided by D'ANGELO would prove that the harassing noise in his Audi was caused by the alleged loose wheel bearing.

(63) On February 14, 2007, Plaintiff picked up his Audi from Defendant D'ANGELO Plaintiff proceeded to request the defective wheel bearing part from a mechanic named Rick who began to act erratic by talking fast, raising his voice, and pressuring Plaintiff to leave so as to avoid further questions. Despite Defendant D'ANGELO's alleged repairs, approximately 10 seconds after leaving the shop the loud buzzing noise from the rear of Plaintiff's car persisted.

(64) No earlier than February 14, 2007, Plaintiff began hearing the same loud buzzing noise in vehicles that carried him **only when he was a passenger** so as to indicate that the cause of the loud sound was the illegal communication devices being used by the Mafia to stalk, extort,

25

and torment Plaintiff. The harassing noise from the rear of the cars was heard in his father's

Chevy Malibu in St. Louis, his mother's Honda Accord in St. Louis, his brother's Dodge Saturn

in Chicago, his sister's Mini Cooper in Los Angeles, his friend Billy Duran's Chevrolet in St.

Louis, and other vehicles that carried Plaintiff. The vehicles were not diagnosed as having loose

wheel bearings at the time they carried Plaintiff. Additionally, the owners of the said vehicles

stated that they never heard the loud noise until Plaintiff was a passenger.

(65) No earlier than February 21, 2007, Plaintiff began receiving harassment and taunts

from Mafia members using illegal communication devices planted in his Audi. The contents of

the threats included statements from the Mafia such as, "Ha! Ha!" "Fucker!" "I fucking hate

you!" and others. The Mafia members' proceeded to harass and taunt Plaintiff by intermittently

playing the loud buzzing noise for periods of time, laughing at him when it stopped, and then

continuously playing it again so as to prove the illegal communication devices were being used

to stalk, extort, and torture Plaintiff.

(66) On or around February 21, 2007, Plaintiff inspected the loose wheel bearing part

given to him in a box provided by Defendant D'ANGELO. The part included a wheel bearing

hub with 16 wheel bearing balls inside the hub, 1 defective washer, and one loose wheel bearing

ball freely rolling around the box. Plaintiff proceeded to take pictures to document the condition

of the parts provided by the Defendant on or around February 21, 2007.

26

(67) Plaintiff proceeded to conduct a bug sweep of his Audi on or around April of 2007 using the Counter Surveillance Pro-25 package that he purchased in March of 2007. During the bug sweeps, the CSD-21 meter proceeded to increase by 2 points near the rear bumper area, roof area, rear fender areas, and front fender areas so as to prove Plaintiff's Audi was emitting malicious radio frequencies indicative to illegal communication devices. In addition to the CSD-21 results, the SBD-5H bug detector's LED light activated near the driver's side dashboard so as to indicate the Mafia was using illegal communication devices to stalk, extort, and torture Plaintiff while driving his Audi.

(68) On or around June 30, 2007, Plaintiff closely examined the contents of the wheel bearing provided by Defendant D'ANGELO by opening the wheel bearing hub. On close inspection, Plaintiff discovered that the size of the loose wheel bearing hub was significantly smaller than a 1998 Audi A4 Quattro wheel bearing hub. Additionally, the loose wheel bearing ball freely rolling around in the box was a different size than the other 16 wheel bearing balls so as to prove Defendant D'ANGELO attempted to make the part appear defective. Concurrent with the evidence, Defendant D'ANGELO willfully and knowingly concealed the Audi's true condition and made the part appear defective so as to prevent Plaintiff and law enforcement from obtaining evidence of illegal communication devices being used to stalk, extort, and torture Plaintiff.

27

(69) Generally, if either party to a transaction conceals some fact which is material, which fact is within his knowledge, and which it is his duty to disclose, he is guilty of fraud, and if in addition to the party's silence there is any statement, word, or act on his part, which tends affirmatively to a suppression of truth, to a covering up or disguising the truth, or to a withdrawal or distraction of the other party's attention or observations from the real facts, the concealment becomes fraudulent. Feeney v. Cook, 242 S.W.2d 524 (Mo. 1951).

(70) On or around September of 2005, Rick from D'ANGELO proceeded to call Plaintiff at his residence to confess for defrauding Plaintiff. Rick stated to Plaintiff's mother, "We're sorry for what we did. We didn't think it was a lot of money." Concurrently, Defendant D'ANGELO admitted to intentionally misdiagnosing Plaintiff's vehicle and defrauding him.

(71) Defendant D'ANGELO's alleged fraudulent concealment, misdiagnosis, and perpetuation of the Mafia's use of illegal communication devices was done in concert with the actions and inactions of Defendants the STLPD, BOSCHERT, WILLIAMS, UNKNOWN FBI AGENTS, BONINE, A1 PRIVATE INVESTIGATIONS, and others who used unlawful means or shared a common goal to perpetuate the Mafia stalking, extortion, and torture. As a direct and proximate result of D'ANGELO'S alleged fraudulent concealment, Plaintiff suffered and continues to suffer from the Mafia stalking, extortion, and torture from illegal communication devices in his Audi and other places to the present day.

28

## VI. Plaintiff's Move to Los Angeles on 10/07 and the Continued Mafia Conspiracy

(72) Plaintiff proceeded to move back to Los Angeles to avoid the violating, neglect, and depriving of his Constitutional rights by law enforcement and Defendants in St. Louis on or around October 19, 2007.

(73) When Plaintiff arrived at his sister's Venice, California apartment to live in Los Angeles on or around October 23, 2007, he proceeded to use his Apple iPod Mini headphones to prevent the sleep deprivation from illegal communication devices planted in the walls, ceiling, and floor of his sister's apartment. The Apple iPod Mini was used to defend himself, his sister Clare, and his neighbors from the Mafia stalking, extortion, and torture attempts.

(74) On or around January 25, 2008, Plaintiff proceeded to receive Mafia death threats generated from an illegal communication device planted in his Apple iPod Mini headset. The death threats that woke Plaintiff in the morning stated, "I'm about to kill him. I'm about to kill him. I'm about to kill him..." and were played in tune with a song entitled, "Cafe Style 1," by the artist, Toka Project. Plaintiff proceeded to record the death threats on his cellular phone's video camera and digital recorder to prove that illegal communication devices were being used to stalk, extort, and torture Plaintiff in Los Angeles.

(75) Plaintiff proceeded to listen to the song again on his Apple iPod Shuffle, Apple iBook G4, and Sony entertainment system that he brought with him from his residence in St. Louis. Accordingly, on or around February of 2008, the Mafia members continued playing the death threats in tune with the song "Cafe Style 1" in an attempt to deceive Plaintiff and others to

29

believe that the death threats were part of the song.

(76) On or around February 3, 2008, Plaintiff moved from his sister's residence into his 1 bedroom apartment located at 9937 Young Drive in Beverly Hills, California 90212. No earlier than February 7, 2008, Plaintiff began receiving harassment and sleep deprivation from illegal communication devices planted in the walls, ceiling, and floor of his apartment.

(77) Plaintiff proceeded to conduct a bug sweep of his apartment using his CSD-21 on or around February 14, 2008. During the bug sweep, the CSD-21 bug detector's deflection meter significantly increased by 3 points on the scale when it was swept across the ceiling and wall so as to confirm the presence of illegal communication devices. Plaintiff proceeded to record the bug sweep using his cellular phone's video camera to proffer to law enforcement. Taken together, the bug sweeps and recordings of death threats proved that the Mafia conspiracy to stalk, extort, and torture Plaintiff using illegal communication devices continued from St. Louis to Los Angeles.

## VII. Conspiracy to Violate, Neglect, and Deprive Plaintiff's Constitutional Rights in Los Angeles Involving Defendant Unknown Agents of the FBI

(78) Plaintiff proceeded to file a complaint with the LAPD on or around March 20, 2008 to end the Mafia crimes that were continuing. The complaint included a history of complaints that were neglected by the STLPD and clear and convincing evidence of the Mafia conspiracy

continuing in Los Angeles. The evidence included: (1) recordings of torture from illegal

communication devices, such as ones originating from his iPod stating, "I'm about to kill him,"

(2) video recordings of bug sweeps using the LAPD bug detector, the CSD-21, (3) pictures of

patched dry wall in areas where the CSD-21 indicated the existence of illegal communication

devices, and (4) other evidence that established probable cause.

(79) Despite probable cause of the Mafia crimes, the LAPD proceeded to wrongfully

neglect Plaintiff's complaint by not answering their phone, refusing to return Plaintiff's phone

calls, and alleging that they lost Plaintiff's complaint.

(80) As a result of the LAPD's wanton neglect of Plaintiff's rights, Plaintiff proceeded to

file a complaint at Defendant the FBI's field office in Los Angeles on or around April 9, 2008

for the Mafia conspiracy continuing. Although the conspiracy crossed state boarders, Defendant

UNKNOWN FBI AGENT #4 proceeded to erroneously impugn the existence of a connection

between the Mafia conspiracy in St. Louis and the Mafia conspiracy in Los Angels. Defendant

also proceeded to carelessly refuse to accept Plaintiff's written complaint and evidence and

instructed him to wait until the LAPD submitted his complaint to the FBI. In the meantime, the

stalking, extortion, and torture continued.

(81) On or around April 18, 2008, Plaintiff proceeded to file a complaint with the Beverly

Hills Police Department (BHPD) to complain of the Mafia crimes occurring in Beverly Hills.

31

Prior to the interview, the Mafia proceeded to bug the BHPD interview room with illegal communication devices to publicly harass and stalk Plaintiff as he was being interviewed. In accord with the wrongful actions of Defendant the STLPD when officers maliciously neglected Plaintiff's complaint when illegal communication devices were used by the Mafia in their presence to stalk, extort, and torture Plaintiff, the interviewing BHPD officer, detective Chilson, proceeded to intentionally ignore the public stalking and harassment from illegal communication devices so as to demonstrate the Mafia's control over the BHPD.

(82) Plaintiff proceeded to record the BHPD interview and harassment from illegal communication devices. The harassment heard in the recording consisted of the same violent noise and ringing harassment Plaintiff recorded originating from illegal communication devices in his sister's Venice apartment, his Beverly Hills apartment, his workplace, and other public venues.

(83) When Chilson returned after reviewing Plaintiff's evidence he proceeded to refer him back to Defendant the FBI by stating, "At this time, there's nothing I can do for you... Have you contacted the FBI?... That's who I'd refer you to at this point. They can call me if they want. Tell them to give me a call if they need to." In effect, the BHPD denied responsibility of protecting Plaintiff's Constitutional rights and deferred responsibility to Defendant the FBI.

(84) On or around September 9, 2009, Plaintiff proceeded to forward his complaint that

32

was originally filed with the FBI to the US Prosecuting Attorney's Office in Los Angeles. The complaint was made in anticipation of Defendant the FBI's criminal neglect of Plaintiff's complaint and willful perpetuation of the Mafia crimes. Despite the criminal neglect of FBI Agents, the US Prosecuting Attorney's Office stated that Plaintiff was correct in filing a report with the FBI and wantonly neglected to take action against the Mafia conspirators.

(85) On or around September 23, 2008, Plaintiff proceeded to call the FBI field office in Los Angeles to follow up on his written complaint. When Plaintiff alleged that members of the Mafia were making death threats and bugging his residence, car, and workplace, Defendant UNKNOWN FBI AGENT #5 proceeded to act in concert with the Mafia and other Defendants by maliciously impugning Plaintiff's complaint so as to abet the Mafia stalking, extortion, and torture. The following exchange of words reveal the conversation after Plaintiff stated the Mafia was stalking him, threatening him, and bugging his residence and other public places:

UNKNOWN AGENT #5: "That's not something that the FBI is going to look into."

PLAINTIFF: "What do you mean?"

UNKNOWN AGENT #5: "That's basically an invasion of privacy but it's not a federal offense."

PLAINTIFF, "That is a federal offense."

UNKNOWN AGENT #5, "No it's not."

PLAINTIFF, "There's a statute. It's 18 USC 2511 on the use of illegal communications. That's a federal offense."

UKNOWN AGENT #5, "In what way is that a federal offense."

PLAINTIFF, "The fact that it's under the United States Code makes it a federal offense. It's also an interstate stalking claim.

UKNOWN AGENT #5, "Interstate? Do you know who's doing the stalking?"

PLAINTIFF, "This person who is an alleged Mafia figure."

UNKNOWN AGENT #5, "Excuse me? Oh it is? And who are you referring to?"

PLAINTIFF, "I don't know the guy's name. I'm not a Mafia member. I don't know everyone of their names like the back of my hand. This guy came to me and threatened me, said he was going to kill me if I didn't continue modeling for an agency in New York City, and I quit anyway…"

UKNOWN AGENT #5, "…So what did the Beverly Hills PD tell you?"

PLAINTIFF, "They said they don't have the technology to help me. 'It sounds like it's something the FBI can take care of'… (UNKNOWN AGENT begins laughing at the Plaintiff)… And the LAPD, I just got off the phone with them and they said the same thing."

UNKNOWN AGENT #5, "Umm, sorry to tell you but they basically just told you that to get you off the phone."

PLAINTIFF, "I'm sorry?"

UNKNOWN AGENT #5, "They basically just told you that to get you off the phone."

PLAINTIFF, "How do you know? Can you read their mind?"

UKNOWN AGENT #5, "That's basically something that the FBI is not going to look into..."

PLAINTIFF, "Wait a second, how do you know that's what they said because I was actually in front of them in person. This is just a case of me having my civil rights impugned over and over again."

UNKNOWN AGENT #5, "That happens everyday, but unfortunately that doesn't mean it's a federal violation."

PLAINTIFF, "I told you there are like 6 federal violations that have been committed here: interstate stalking, illegal communications, conspiracy...

UNKNOWN AGENT #5, "When you spoke to an agent a week ago, what information did you provide them?"

PLAINTIFF, "I just told them that I filed a complaint via a letter. And he said, 'It takes about 2 weeks for us to process it,' and he said, 'Call us back in a week.'"

UNKNWON AGENT #5, "Okay, actually it takes longer than that. Depending on the severity of your case, if they already read your complaint and they felt that there are no FBI

guidelines, they are not going to look, do an investigation on that."

PLAINTIFF, "Yeah, well that's in the event that there's nothing that falls within the FBI guidelines. This is a clear and convincing case... (UNKNOWN AGENT begins laughing at the Plaintiff) ...where it is blatantly a federal offense to stalk somebody especially when the person is in the alleged Italian Mafia."

UKNOWN AGENT #5, "And who are you referring to? You keep saying the Mafia, but who???"

PLAINTIFF, "Look, I don't know. His name's Bill. That was one of the guys who came to me and approached me. I don't think that is a very smart question to ask somebody because people just aren't members of..."

UNKNOWN AGENT #5, "You know what sir? I think you basically need to look into a physician. Good-bye" (hangs up on the phone on the Plaintiff).

(86) After Defendant UNKNOWN FBI AGENT #5 hung up on Plaintiff, Plaintiff proceeded to contact his licensed clinical counselor, Jerry Clerc, to receive counseling for the intentional infliction of emotional distress and neglect of his Constitutional rights. Plaintiff remained in contact with his counselor to seek therapy for the post traumatic stress disorder caused by Defendants' malicious neglect. In the meantime, Plaintiff continued being stalked, extorted, and tortured by members of the Mafia.

## VIII. Conspiracy to Violate Plaintiff's Constitutional Rights Involving Defendant Apple, Inc.

(87) In accord with positive redings of bug sweeps, telephone tap tests, and other evidence, the Mafia was allowed to discover Plaintiff's plans weeks in advance and whereabouts at all times because of illegal communication devices used to surveillance him. On or around January of 2009, Plaintiff obtained a new iPod Touch that was purchased at the Apple Store located at 1248 Third Street in Santa Monica, California 90401. Immediately after recording the opening of the iPod Touch on or around February 24, 2009, Plaintiff proceeded to upload the song, "Cafe Style 1." Concurrent with death threats transmitted by the Mafia to illegal communication devices planted in his iPod Mini, Shuffle, and other Apple products, the Mafia proceeded to transmit death threats to the iPod Touch stating, "I'm about to kill him."

(88) Plaintiff proceeded to write Defendant APPLE, INC. on or around March 20, 2009 to complain about APPLE, INC. selling him the bugged iPod Touch. The complaint included evidence such as the original sales receipt of the iPod Touch, pictures of the unopened iPod Touch taken on 2/24/09, video recordings of the iPod generating death threats in tune with the song, "Cafe Style 1," and the song's original contents without the threats. In response to Plaintiff's complaint, Defendant APPLE, INC. proceeded to ignore Plaintiff's complaint.

(89) On or around March 13, 2009, Plaintiff proceeded to call the Apple Store from his Beverly Hills apartment and inform them he intended to purchase an iPod Nano as alleged Mafia

37

members proceeded to eavesdrop on Plaintiff. Plaintiff purchased an iPod Nano from the Apple Store located in the Beverly Center in Los Angeles, California on March 23. After recording the opening of the iPod Nano, Plaintiff discovered that Defendant APPLE, INC. bugged the iPod Nano as death threats were transmitted to an illegal communication device planted in it. The iPod Nano was allegedly bugged prior to its sale at the Apple Store as associates conspired with the Mafia to sell it to Plaintiff.

(90) On or around April 28, 2009, Plaintiff proceeded to write Defendant APPLE, INC. via US Mail to settle the issue of Defendant APPLE, INC. abetting the Mafia stalking, extortion, and torture. Plaintiff requested a non-bugged iPod to replace his bugged iPods he purchased in an attempt to end the Mafia sleep deprivation, stalking, extortion, and torture from illegal communication devices at all times in his life. Notwithstanding Plaintiff's request, Defendant APPLE, INC. proceeded to act in concert with the Mafia and other Defendants by intentionally ignoring Plaintiff's complaint to perpetuate damages and injury suffered by Plaintiff.

## IX. Continued Conspiracy to Violate, Neglect, and Deprive Plaintiff's Rights Involving

## Defendant STLPD and USDOJ Section Chief Mark Kappelhoff

(91) In lieu of Defendant the FBI stating that the Mafia conspiracy was a state Police matter, on or around March 5, 2009, Plaintiff proceeded to file a complaint with Defendant the STLPD for the Mafia illegal communication device transmissions originating from St. Louis. In

38

accord with all of his complaints to law enforcement since September of 2000 to the present, the use of illegal communication devices began in St. Louis and continued when Plaintiff travelled and moved to different US cities.

(92) The STLPD complaint included audio and video recordings of death threats and other harassment transmitted by St. Louis Italian Mafia members allegedly using satellite radio to transmit illegal communications such as ones stating, "I'm about to kill him," "You're a fag," "Herpes," and others.

(93) On or around March 6, 2009, Plaintiff proceeded to forward his STLPD complaint to Defendant the FBI. Although Plaintiff's complaint included clear and convincing evidence of death threats and other harassment being generated from illegal communication devices, Defendants the STLPD and FBI proceeded to continue in their malicious pattern of neglect of Plaintiff's complaint and deprivation of his Constitutional rights.

(94) On or around March 7, 2009, Plaintiff proceeded to forward his complaint to the United States Department of Justice (USDOJ) Criminal Civil Rights Division to seek action against the Mafia, the LAPD, and Defendants the STLPD and FBI for violating, neglecting, and depriving him of his Constitutional rights.

(95) Plaintiff received a response to his complaint from Defendant KAPPELHOFF, Section Chief of the USDOJ, on or around May 1, 2009. The letter stated that the USDOJ's

39

Criminal Section of the Civil Rights Division did not intend to enforce criminal civil rights

statutes regarding the alleged misconduct of STLPD, FBI, and LAPD law enforcement officials

who maliciously neglected Plaintiff's rights and allowed the Mafia stalking, extortion, and

torture to continue. Defendant KAPPELHOFF had knowledge of law enforcement officials'

criminal neglect and the Mafia crimes, but nevertheless, denied Plaintiff's complaint. As a direct

and proximate result of Defendant KAPPELHOFF's decision to not correct officials'

misconduct, Defendant KAPPELHOFF intentionally allowed the Mafia stalking, extortion, and

torture of Plaintff and acted in concert with the other Defendants to violate Plaintiff's

constitutional rights in furtherance of the conspiracy that continues to the present day.

## CAUSES OF ACTION

## COUNT I: 42 USC 1983: CONSPIRACY TO VIOLATE CONSTITUTIONAL RIGHTS:

## AMENDMENT 1, 4, 8, and 14: (Plaintiff vs. Defendants the STLPD, BOSCHERT,

## WILLIAMS, UNKNOWN FBI AGENTS, and KAPPELHOFF).

(96) The Defendants are charged with liability in this Count ONE, in that their acting

under the color of law, suppressing of evidence, obstructing of justice, willful refusal to prevent

the Mafia stalking, extortion, and torture for 9 years despite probable cause and a lawful duty to

protect, and disregard for the injuries and damages sustained by Plaintiff amounted to an

unconstitutional, tacit and willful violation of Plaintiff's right to peacefully assemble, life,

40

liberty, privacy, safety, due process, and others afforded him by the First, Fourth, Eighth, and Fourteenth Amendments and laws of the United States. The utter impugning of Plaintiff's evidence and malevolent decision to allow the stalking, extortion, and torture was reckless, wanton, and malicious so as to shock the conscious and not comport with traditional beliefs of human decency.

## COUNT II: SECTION 1985, CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS:

## AMENDMENT 1, 4, 8, and 14: (Plaintiff vs. All Defendants).

(97) Plaintiff charges that the violations and injuries complained of in this Complaint were a direct and proximate result of some or all of the Defendants' actions whom intentionally and willfully conspired to deter by force, intimidation, and wanton malice in their respective professions, Plaintiff from attending, presenting, or testifying to the Court and other officials incidents regarding the Mafia stalking, extortion, and torture, so as to perpetuate the commission of the wrongs, injure his person and property, obstruct and defeat justice, and violate his constitutional rights.

## COUNT III: SECTION 1986, ACTION FOR NEGLECT TO PREVENT: AMENDMENT 1, 4,

## 8, and 14: (Plaintiff vs. All Defendants).

(98) Defendants willfully neglected to prevent or aided in the preventing the commission of the Mafia stalking, extortion, and torture conspired to be done so as to violate Plaintiff's

41

constitutional rights and laws of the United States. Plaintiff charges that the violations and injuries complained of were a direct and proximate result of some or all of the Defendants' wrongful actions and inactions. Defendants knew or ought to have known that a duty to act existed but nevertheless proceeded in their wanton and reckless disregard for Plaintiff's rights, health, and safety.

## COUNT IV: VIOLATION OF US CRIME VICTIMS' RIGHTS ACT, 18 USC 3771: (Plaintiff v. Defendants STLPD, BOSCHERT, WILLIAMS, UNKNOWN FBI AGENTS, and KAPPELHOFF).

(99) As a crime victim of the Mafia first-degree assault, stalking, extortion, torture, and other serious crimes, Plaintiff hereby asserts every right granted him by the US Crime Victims' Rights Act and prays for relief as warranted by law.

## COUNT V: VIOLATION OF 18 USC 2520, RECOVERY OF CIVIL DAMAGES AUTHORIZED: (Plaintiff v. All Defendants).

(100) Plaintiff re-alleges violations of the Communications Acts of 1934 as incorporated by every allegation of every paragraph set forth in this Complaint and prays for relief as warranted by law.

## COUNT VI: SECTION 1988, PROCEEDINGS IN VINDICATION OF CIVIL RIGHTS: (Plaintiff vs. All Defendants).

(101) An additional basis for liability and recovery of damages against the Defendants arise herein, and is subject to the Court's pendant jurisdiction, under Missouri tort law, as a

42

matter of negligence, conspiracy, aiding and abetting, intentional infliction of emotional distress, Missouri Merchandising and Practices Act, tortious interference of expected business income, fraudulent misrepresentations and omissions, negligent infliction of emotional distress, unjust enrichment/restitution, injunction, and other civil wrongs that entitle Plaintiff to relief. The Plaintiff charges that the violations and injuries complained of were a direct and proximate result of some or all of Defendants' actions whom wrongfully caused injuries and damages to Plaintiff.

COUNT VII: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS: (Plaintiff v.

Defendants BOSCHERT, WILLIAMS, UNKNOWN AGENTS OF THE FBI, KAPPELHOFF,

BONINE, A-1 PRIVATE INVESTIGATIONS, D'ANGELO).

(102) By engaging in the conduct set forth herein, Plaintiff alleges that the Defendants have breached their duty of care in the conduct alleged and caused severe emotional distress to Plaintiff for which the Defendants are joint and severally liable.

COUNT VIII: MISSOURI TORT LAW: INTENTIONAL INFLICTION OF EMOTIONAL

DISTRESS: (Plaintiff v. Defendants BOSCHERT, WILLIAMS, UNKNOWN AGENTS OF

THE FBI, KAPPELHOFF, BONINE, A-1 PRIVATE INVESTIGATIONS, D'ANGELO).

(103) The conduct set forth herein above by Defendants was extreme and outrageous. Said conduct was intended to cause and did cause severe emotional distress, or was done in conscious disregard of the probability of causing such distress.

(104) As a direct or proximate result of the aforesaid conduct of Defendants, Plaintiff

43

suffered and continues to suffer discomfort, anxiety, humiliation, sleep deprivation, stalking, extortion, torture, destruction of community, destruction of career, post traumatic stress disorder, and will continue to suffer serious emotional distress in the future.

### COUNT IX: MISSOURI TORT LAW: NEGLIGENCE: (Plaintiff vs. All Defendants).

(105) Defendants had a reasonable duty to exercise reasonable care in their professions to protect Plaintiff from injury. By engaging in the conduct set forth herein, Defendants have breached their duty so as to cause severe emotional distress, damages, and injury to Plaintiff.

### COUNT X: MISSOURI TORT LAW: MISSOURI MERCHANDISING PRACTICES

### ACT: (Plaintiff vs. Defendants BONINE, A1 PRIVATE INVESTIGATIONS, and

### D'ANGELO).

(106) Section 407.100, RSMo 1994 authorizes the Plaintiff to seek injunctive relief, restitution, civil penalties and other relief against persons who have engaged in or are engaging in violations of the MMPA.

(107) Section 407.130, RSMo 1994 provides that Plaintiff may recover as costs, in addition to normal Court costs, the cost of the investigation and prosecution of any action brought pursuant to the MMPA.

(108) Defendants have violated the MMPA by engaging in the unlawful practices specified in § 407.020 in connection with the wrongful conduct alleged in every paragraph of

44

this Complaint.

COUNT XI: MISSOURI TORT LAW: CIVIL CONSPIRACY: (Plaintiff vs. All Defendants).

(109) In the State of Missouri, overall agreement to commit an illegal act, which

establishes single conspiracy, can be inferred when participants shared a common aim or purpose

and mutual dependence and assistance existed. U.S. v. Morales, 113 F.3d 116, C.A.8 (Mo.)

1997. Additionally, a conspiracy may be shown by circumstantial evidence; it is not necessary to

prove by direct evidence an agreement to commit a crime in order to establish conspiracy. State

v. Menz, 106 S.W.2d 440, 341 (Mo.) 75, (Mo.) 1937.

(110) The Defendants intentionally and willfully combined, conspired and agreed with

one another for the purpose of accomplishing the unlawful ends alleged or accomplishing lawful

ends unlawfully as alleged in all other Counts of this Complaint, all of which are incorporated by

this reference, and for the purposes of performing the acts, among others, set forth above in the

Factual Allegations.

COUNT XII: MISSOURI TORT LAW: AIDING AND ABETTING: (Plaintiff vs. All

Defendants).

(111) Defendants knowingly aided and abetted each other and outside sources in

furtherance of the Mafia stalking, extortion, torture, and other law violations described in all

other Counts of this Complaint.

(112) The wrongful actions of Defendants were willful and in reckless disregard for the

45

Plaintiff's health, safety, and rights so as to cause damages and injury for which Defendants are joint and severally liable.

## COUNT XIII: MISSOURI TORT LAW: TORTIOUS INTERFERENCE OF AN EXPECTED BUSINESS INCOME: (Plaintiff vs. Defendants BOSCHERT, WILLIAMS, UNKNOWN FBI AGENTS).

(113) Plaintiff had a material relationship or reasonable business expectancy from 1999 to the present as a model and actor in New York City, New York and other US cities that was proven in his modeling and acting contracts with Bossmodels in New York City, Arlene Wilson Management in Chicago, Centro Models in St. Louis, West Model and Talent Management in St. Louis, Q Model Management in Los Angeles, and Pacific Talent and Model Management in Los Angeles.

(114) Plaintiff's material relationship or reasonable business expectancy was also demonstrated in his loss of income and attempts to continue modeling and acting since the time prior to the Mafia conspiracy and dates continuing thereafter.

(115) The Defendants wrongfully engaged in interfering with Plaintiff's expected business income by refusing to investigate and denying for 9 years Plaintiff's complaint of Mafia stalking, extortion, and torture. Defendants knew or should have known from Plaintiff's complaints that the wrongs committed by the Mafia had a detrimental impact on Plaintiff's

46

modeling, acting, and professional career. As demonstrated in Plaintiff's loss of modeling

income caused by Defendants acting outside their official capacities in allowing the Mafia

extortion, Defendants wrongfully induced a breach in Plaintiff's contractual relationship or

business expectancy as a model and actor. As a direct and proximate result, Plaintiff lost

modeling and acting income, job stability, community standing, and career standing for which

Defendants are joint and severally liable.

(116) As a direct or proximate result of Defendants who intentionally allowed the Mafia

stalking, extortion, and torture, Plaintiff lost modeling and acting income from 2000 to

2009. Plaintiff's estimated annual income was $550,000 per each year, or $4,950,000.00 for 9

years.

(117) Plaintiff has suffered and will continue to suffer injury and damages as set forth

above for which Defendants are joint and severally liable. Defendants acted with malice and with

willful, wanton, and reckless disregard for Plaintiff's rights, safety, and loss of income to the

extent that punitive damages are justified and appropriate.

### COUNT XIV: MISSOURI TORT LAW: FRAUDULENT MISREPRESENTATION AND

### OMISSION: (Plaintiff vs. Defendants BONINE, A1 PRIVATE INVESTIGATIONS,

### D'ANGELO, and APPLE, INC.).

(118) The Defendants through verbal communications, actions, and inactions, willfully

made material representations with the intent that Plaintiff rely on them. Defendants'

representations were knowingly false or they were ignorant of their falsity, and, Plaintiff had a

47

right to rely on these representations. As such, Plaintiff is entitled to relief under Fraudulent Misrepresentation and Ommission.

### COUNT XV: MISSOURI TORT LAW: UNJUST ENRICHMENT/RESTITUTION:

(Plaintiff vs. Defendants BONINE, D'ANGELO, APPLE INC.).

(119) Defendants, through their wrongful conduct, as described in the foregoing allegations and all of the Counts of this Complaint, have reaped unjust rewards for their wrongful conduct. As a direct and proximate result, Defendants have caused Plaintiff to suffer substantial economic loss and other costs directly attributable to the Counts alleged herein.

(120) In equity and good conscience, it would be unjust for Defendants to enrich themselves at the expense of Plaintiff. Further, in equity and in fairness, Defendants, and not the Plaintiff, should bear the costs associated as a direct and proximate cause of their wrongful actions and have a duty to do so. Defendants have wrongfully forced Plaintiff to pay additional costs for their wrongful actions alleged in every paragraph of this Complaint.

### COUNT XVI: PRELIMINARY INJUNCTION: (Plaintiff vs. All Defendants).

(121) Plaintiff re-alleges and incorporates by reference paragraphs 1 through 95 of the Complaint as if fully set forth herein. Plaintiff also incorporates into this cause of action every allegation set forth in every paragraph of this Complaint, except those that are inconsistent with a cause of action for injunctive relief.

48

(122) Pursuant to the rights afforded Plaintiff by the Constitution, US Crime Victims' Rights Act, and other laws and statutes of the United States, Plaintiff is entitled to preliminary relief to end the Mafia stalking, extortion, torture, and other wrongs that continue to violate his Constitutional rights to the present day.

(123) The continued Mafia conspiracy and wrongs committed by Defendants will also expose citizens of the United States, the Court, and others to its dangers so as to perpetuate in epidemic numbers the widespread corruption of individuals coerced or enticed to participate in the conspiracy so as to subject them to criminal and civil liability in multiple lawsuits.

(124) Plaintiff has suffered and will continue to suffer substantial injuries and damages for which he is entitled preliminary injunction and other Court orders necessary to protect his safety and Constitutional rights.

## PRAYER FOR RELIEF

(125) WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for compensatory damages in the amount of One Million Dollars from each Defendant for each violation of his Constitutional rights. Plaintiff reserves the right to augment his prayer for these damages if any Defendant is found to have helped proximately cause the stalking, extortion, and torture itself;

(126) Plaintiff prays in addition against Defendants, jointly and severally, for statutory damages in proper amounts for the Defendants' aiding and abetting the Mafia conspiracy and use

49

of illegal communication devices, which in accord with 18 U.S.C. 2511 is $100 each day or

$10,000, whichever is greater, since the beginning of the conspiracy on or around August 15,

2000 to the present and continuing.

(127) Plaintiff also prays against Defendants, jointly and severally, for compensatory

damages for lost income and wages in the amount of $550,000 per each year since the time when

the Mafia conspiracy began in August, 15 2000 and continuing to the present and future.

(128) Plaintiff prays in addition against Defendants, jointly and severally, for punitive

damages in proper amounts found by the Jury against each of the individual Defendants found to

have participated in impugning, neglecting, violating, oppressing, conspiring, or denying his

Constitutional rights and abetting the Mafia stalking, extortion, torture, and other wrongs

committed by Defendants.

(129) Plaintiff prays in addition against Defendants, jointly and severally, for treble

damages in proper amounts found by the Jury against each of the individual Defendants found to

have participated in impugning, neglecting, violating, oppressing, conspiring, or denying his

Constitutional rights and abetting the Mafia stalking, extortion, torture, and other wrongs

committed by Defendants;

(130) Plaintiff also prays for preliminary injunction enjoining Defendants the STLPD,

BOSCHERT, WILLIAMS, UNKNOWN FBI AGENTS, KAPPELHOFF, and their agents,

50

employees, representatives, successors, assigns and all other persons acting in concert with or participating with Defendants, who have actual or constructive notice of the Court's injunction, an investigation into the conduct of Defendants. Plaintiff prays that the investigation include the employment of all techniques for an aggressive investigation, including but not limited to: interrogation of witnesses and Defendants, search warrants, bug sweeps, traces of illegal satellite communications, imprisonment, protection of witnesses, the application of all US laws and statutes, and other methods designed to bring forth an action, punish conspirators, and end the Mafia stalking, extortion, torturing, and violating of Plaintiff's Constitutional rights.

(131) Plaintiff also prays for preliminary injunction enjoining all Defendants and their agents, employees, representatives, successors, assigns and all other persons acting in concert with or participating with Defendants, who have actual or constructive notice of the Court's injunction, from engaging in any of the unlawful practices alleged in all other counts of this Petition;

(132) Order all Defendants, jointly and severally, to provide full restitution to Plaintiff to whom they collected monies and who aggrieved Plaintiff by the unfair, unlawful and deceptive practices alleged herein;

(133) Award the costs of this action, including costs of investigation, reasonable attorney fees, and the costs associated with filing the lawsuits under 42 USC 1983, 1985, 1986, 1988 and

51

the cases; and;

(134) Award such further relief as is warranted by the facts and the law that the Court

deems equitable.

(135) Plaintiff demands Trial By Jury and respectfully asks the Court for such other relief

as may be just, including but not limited to declaratory relief, as aforesaid.

Respectfully submitted,

Gregory McKenna
Pro Se Plaintiff
9937 Young Drive, H
Beverly Hills, CA 90212
(310) 213-8851

52

Jay McKenzie
37 Yours Dr., H
, CA 90212

US District Court

Attn: Clerk's Office

111 South 10th St., Suite 3.300

St. Louis, MO 63102

RECEIVED
BY MAIL

NOV 2 0 2009

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS




This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Express Mail®. Misuse may be a violation of federal law. This packaging is not for resale. EP13F © U.S. Postal Service; May 2008. All rights reserved.

U.S. POSTAGE ★★★
17.50
POSTALIA 105196

BEVERLY HILLS
NOV 19.09
CA

0Z □ZZ52340 # 00000052340

EMS

When used internationally affix customs declarations (PS Form 2976, or 2976A).

SAVE MORE $ BY SHIPPING ONLINE
visit usps.com

USPS packaging products have been awarded Cradle to Cradle Certification℠ for their ecologically-intelligent design. For more information go to mbdc.com/usps
Cradle to Cradle CertifiedCM is a certification mark of MBDC.

Please recycle.

EP13F

Print postage online - Go to usps.com/postageonline
PLEA

PLEASE PRESS FIRMLY

**EXPRESS MAIL**
UNITED STATES POSTAL SERVICE

Flat Rate
Mailing Envelope
*For Domestic and International Use*

Visit us at usps.com

E B 9 8 7 4 8 3 4 9 3 U S

**ORIGIN (POSTAL SERVICE USE ONLY)**

PO ZIP Code: 90212

Date Accepted

Mo. 19   Day   Year

Time Accepted ☐ AM ☐ PM

Flat Rate ☐ or Weight

lbs.   ozs.

**Addressee Copy**
Label 11-B, March 2004

**Post Office To Addressee**

**EXPRESS MAIL**
UNITED STATES POSTAL SERVICE®

**DELIVERY (POSTAL USE ONLY)**

| Delivery Attempt | Time | | Employee Signature |
|---|---|---|---|
| Mo. | Day | ☐ AM ☐ PM | |
| Delivery Attempt | Time | | Employee Signature |
| Mo. | Day | ☐ AM ☐ PM | |
| Delivery Date | Time | | Employee Signature |
| Mo. | Day | ☐ AM ☐ PM | |

**CUSTOMER USE ONLY**

WAIVER OF SIGNATURE (Domestic Mail Only) Additional merchandise insurance is void if customer requests waiver of signature. I wish delivery to be made without obtaining signature of addressee or addressee's agent (if delivery employee judges that article can be left in secure location) and I authorize that delivery employee's signature constitutes valid proof of delivery.

☐ NO DELIVERY ☐ Weekend ☐ Holiday

Mailer Signature

ZIP + 4 (U.S. ADDRESSES ONLY, DO NOT USE FOR FOREIGN POSTAL CODES.)

6 3 1 0 2 +

FOR INTERNATIONAL DESTINATIONS, WRITE COUNTRY NAME BELOW.

U.S. DISTRICT COURT
District Court of MO
Clerk's Office
111 South 10th Street, Suite 3.300
St. Louis, MO 63102

RECEIVED
NOV 20 2009
U.S. DISTRICT COURT
EASTERN DISTRICT OF MO

B 10 213 REY NM

**CUSTOMER USE ONLY** (PLEASE PRINT) PHONE (     )

**ORIGIN (POSTAL SERVICE USE ONLY)**

Day of Delivery ☐ Next ☐ 2nd ☐ 2nd Day

Scheduled Date of Delivery
Month   Day

Scheduled Time of Delivery ☐ Noon ☐ 3 PM

Military ☐ 2nd Day ☐ 3rd Day

Int'l Alpha Country Code

Postage $

Return Receipt Fee $

COD Fee $

Insurance Fee $

Total Postage & Fees $

Acceptance Emp. Initials

**FROM:** (PLEASE PRINT) PHONE ( 310 ) 213 ____

Gregory McKenna
9957 Young Drive, H
Beverly Hills, CA 90212

**FOR PICKUP OR TRACKING**
Visit **WWW.USPS.COM**
Call 1-800-222-1811

EMS
We Deliver